# IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE EASTERN DISTRICT OF VIRGINIA
### Alexandria Division

| | | |
|---|---|---|
| In Re: | ) | |
| | ) | |
| **BEN POURBABAI,** | ) | **Case No. 18-13560-BFK** |
| | ) | **Chapter 13** |
| Debtor. | ) | |
| | ) | |
| **CHRISTINE POURBABAI and KYLE SKOPIC,** | ) | |
| | ) | |
| Movants, | ) | |
| | ) | |
| v. | ) | **Contested Matter** |
| | ) | |
| **BEN POURBABAI, and** | ) | |
| **THOMAS GORMAN, TRUSTEE,** | ) | |
| | ) | |
| Respondent. | ) | |

## AMENDED MOTION FOR RELIEF FROM THE AUTOMATIC STAY

COME NOW, Christine Pourbabai and Kyle Skopic ("Movants"), by counsel, and file

this Amended Motion for Relief from the Automatic Stay ("Motion") pursuant to 11 U.S.C. §

362(d) and Bankruptcy Rule 4001(a), to permit Movants to complete the sale of marital property

ordered to be sold pursuant to a Final Order of Divorce and related orders directing sale and

equitable distribution of marital property as between the Debtor and Christine Pourbabai.

The Debtor has filed this facially defective Chapter 13 petition in bad faith, and for the

sole and limited purpose of avoiding the impending sale of marital property found and ordered to

be sold pursuant to an equitable distribution of marital property made and adjudicated in

connection with a Final Order of Divorce from Christine Pourbabai on July 26, 2017. The state

Kevin M. O'Donnell, VSB #30086
Jeffery T. Martin, Jr., VSB # 71860
Henry & O'Donnell, P.C.
300 N. Washington St., Suite 204
Alexandria, Virginia 22314
(703) 548-2100
Counsel to Movants

court sitting in that divorce proceeding found certain real property to be marital property and appointed a Commissioner of Sale to liquidate such properties and to split proceeds consistent with rulings made in the Final Order of Divorce. The Debtor thereafter embarked upon a pattern of filing of dilatory motions and appeals to the Final Order, and having been rejected as to all such procedural devices and/or substantive challenges, now has filed this Chapter 13 proceeding in an attempt to avoid closing and settlement under at least two contracts of sale that were scheduled to close during the first half of November. The Movants' motion for relief from the automatic stay should be granted for the reasons stated hereinbelow.

1.     This is a proceeding seeking relief from the automatic stay and is a contested matter pursuant to Bankruptcy Rules 4001 and 9014, this matter is a core proceeding and this Court has jurisdiction properly founded upon 28 U.S.C. §§ 157 and 1334.

2.     The Debtor, Ben Pourbabai ("Mr. Pourbabai" or "Debtor"), filed a voluntary petition for relief under Chapter 13 of the Bankruptcy Code on October 23, 2018. Thomas Gorman ("Trustee") is the duly appointed and standing Chapter 13 Trustee herein.

3.      Christine Pourbabai is the Debtor's ex-wife and obtained a Final Order of Divorce ("Final Order") from the Debtor on July 26, 2017. A copy of the Final Order is attached hereto as **Exhibit A**. Kyle Skopic is an attorney admitted to the Virginia State Bar and appointed as a Commissioner of Sale to facilitate the sale of marital properties ordered under the Final Order.

4.     In connection with entry of the Final Order, the Circuit Court of Fairfax County, Virginia ("Circuit Court") adjudicated and declared the parties' rights in and to certain marital property, and specifically ordered that the following marital property be sold by the appointed Commissioner of Sale and net proceeds split between the Debtor and Christine Pourbabai:

a. 9896 Sunnybrook Dr., Great Falls, VA 22066

b. 1077 Paper Mill Court, N.W., Washington DC, 20007

c. 3628 Reservoir Road, N.W., Washington DC, 20007

d. 3661 Winfield Lane, N.W., Washington DC, 20007

e. 3629 Winfield Lane, N.W., Washington DC 20007

The properties listed herein are referred to collectively hereinafter as the "Marital Properties." Pursuant to the July 26, 2017 Final Order, "[T]he proceeds of sale of each property shall be divided equally between the parties after the deduction of all costs at the time of sale." (Ex. A, pg. 2).[1]

5.      Subsequent to the entry of the Final Order, the Debtor exercised his right of appeal and filed an appeal with the Court of Appeals of Virginia, making *eighteen (18) separate assignments of error as to the entry of the Final Order.* Each and every assignment of error was expressly evaluated and addressed by the Court of Appeals. On August 21, 2018, the Court of Appeals of Virginia issued a Memorandum Opinion rejecting each and every one of the Debtor's eighteen (18) assignments of error, and affirming the Final Order. A copy of the August 21, 2018 Memorandum Opinion is attached hereto as **<u>Exhibit B</u>**.

6.      In order to facilitate the sale of marital property as ordered in the Final Order, the Circuit Court entered an Order Appointing Commissioner of Sale on December 15, 2017 (the "Commissioner Order") appointing movant Kyle Skopic as Commissioner of Sale to facilitate and oversee the process of sale of marital property as ordered by the Final Order. A copy of the

---

[1] Notwithstanding the requirement in the Final Order that sale of the Marital Properties be effected by and through Kyle Skopic as Commissioner of Sale, the Debtor nonetheless individually sold and closed on the property at 6329 Winfield Lane, NW, Washington DC and has failed to account for the sales proceeds generated from that closing. Accordingly, sales of the remaining Marital Properties have been ordered to be made with proceeds paid into the Circuit Court pending further order from that Court, and presumably, after an accounting.

Commissioner Order is attached hereto as **Exhibit C**. Upon information and belief, the Commissioner Order was not appealed by the Debtor.

7.      Pursuant to the Final Order and the Commissioner Order, Kyle Skopic (hereinafter, the "Commissioner") has retained real estate brokers and commenced the listing and marketing of the marital properties for sale. On or about October 4, 2018, the Commissioner entered into a contract for sale of 1077 Paper Mill Court, N.W., Washington DC, 20007 (the Paper Mill Property") for the sale price of $847,000.00. A copy of the contract for sale of the Paper Mill Property is attached hereto as **Exhibit D**. On or about October 10, 2018, the Commissioner entered into a contract for sale of 3628 Reservoir Road, N.W., Washington DC, 20007 (the "Reservoir Property") for the sale price of $1,517,500.00. A copy of the contract for sale of the Reservoir Property is attached hereto as **Exhibit E**.

8.      On October 12 and 18, 2018, the Circuit Court, having expressly retained jurisdiction under the Final Order to enforce the equitable distribution and facilitate the sale of marital property, entered two separate orders confirming sale of the Paper Mill Property and Reservoir Property (collectively, the "Sale Orders"). Copies of the Sale Orders are attached collectively hereto as **Exhibit F**.  As noted in the Sale Orders, the mortgages and condo fees are currently delinquent on each of the Paper Mill and Reservoir Properties.

9.      Under the contracts for sale, closing under the contract for the Reservoir Property was to be held on or before November 9, 2018, and closing under the contract for the Paper Mill Property was to be held on or before November 16, 2018. Upon information and belief, both purchasers are prepared for and are requesting closing under the respective contracts.[2]

_____

[2] Failure to promptly close will likely cause one of the contract purchasers to lose an interest rate lock which is currently set to expire on Nov. 21, 2018. Should the purchasers incur additional interest expense or costs necessary to extend closing, those costs may be sought to be recovered from the seller. Additionally, the other purchasers must vacate their current premises, and will suffer significant harm if they cannot close and take occupancy as intended.

10.     On October 23, 2018, only five days after entry of the Circuit Court's Sale Orders, the Debtor filed his Chapter 13 petition with this Court seeking to stay the scheduled closings and to impermissibly interfere with the court ordered sales.

11.     The Chapter 13 filing is simply the latest in a series of dilatory and delaying tactics employed by the Debtor to avoid the sale of Marital Properties as ordered by the Circuit Court. The Commissioner has participated in not less than eighteen separate hearings before the Circuit Court under which the Debtor has sought to interpose delay or reversal of the property distribution ordered under the Final Order. The Debtor has failed to cooperate with the Commissioner in the active listing and marketing of the Marital Properties and has interfered with the sales process ordered by the Circuit Court. In one instance, seeking to thwart an earlier contract closing of the Reservoir Property, the Debtor had his own mother file a lawsuit against him claiming an interest in the property and included the filing a memorandum of *lis pendens* in order to cloud title sufficiently to prevent sale. As a result, an earlier contract for purchase of the Reservoir Property, accepted and approved by the Circuit Court, was terminated by the purchasers.

12.     Prior to entry of the Final Order, the Marital Properties were principally employed as rental properties generating material monthly rental income which was solely collected by the Debtor. Upon information and belief, and subsequent to the entry of the Final Order, the Debtor has continued in sole custody and control of the Marital Properties and has additionally continued to lease and rent some or all of the Marital Properties without accounting for the rents collected and/or related expenses of operating the properties. Notwithstanding that the Debtor was collecting rental income from the Marital Properties, he has failed to make payment of mortgages, condo or association fees, and other debts secured by the Marital Properties. As noted

in the Sale Orders, the mortgages are currently delinquent on both of the Paper Mill and Reservoir Properties, and condo fees are currently delinquent on the Paper Mill Property.

**The Chapter 13 Filing**

13.     The Debtor's filing of his Chapter 13 case with this Court is facially defective, and is interposed for no other purpose other than to effectuate another delay of the Circuit Court ordered sale of Marital Properties. The Debtor has spent most of the past eighteen (18) months interposing one delay or challenge after another, and now having failed completely on his appeal, post-trial motions and other procedural devices, has improperly sought the benefit of the automatic stay of 11 U.S.C. 362. Defects relating to the Debtor's Chapter 13 filing before this Court, include, but are not limited to the following:

   a.  Pursuant to the Debtor's own schedules filed within the past week, the Debtor does not even qualify under 11 U.S.C. 109(e) to be a Debtor under Chapter 13. The Debtor's acknowledged secured debts exceed $3.7 million pursuant to Schedule D filed by the Debtor herein.

   b.  The Debtor fails to identify or even acknowledge the existence of the Circuit Court divorce proceedings which are *still pending* and under which the Sale Orders were entered over the Debtor's express objections just days before the filing of his Chapter 13 petition. Given the plethora of litigation emanating from this case over the past 18 months, this omission is glaring and suggests an intent to mislead and/or deceive this Court.

   c.  The Debtor fails to identify the pendency of his appeal of the Final Order to the Court of Appeals of Virginia, which issued its Memorandum Opinion on August 21 of this year.

d.  The Debtor fails completely to identify or acknowledge Christine Pourbabai's interests in and to the Marital Properties as adjudicated by the Final Order. The Debtor lists himself as sole owner of all such properties on Schedule A/B.[3]

## Argument

i.  **Interests in and to the Marital Properties were finally adjudicated prior to the filing of Debtor's Chapter 13 proceeding.**

14.  The Circuit Court sitting in connection with the divorce proceedings between the Debtor and Christine Pourbabai, made final determinations in 2017 as to the identification and disposition of marital property pursuant to an equitable distribution hearing conducted in connection with the divorce case. Under the Final Order, the Marital Properties were each and all found to be marital property of both the Debtor and Christine Pourbabai and disposition of such properties was ordered to effectuate an equal division as between the parties. The Final Order is a final order in the parties' divorce proceedings. The Debtor has already lost his appeal of right, and although he claims to be pursuing a potential appeal to the Virginia Supreme Court, has not obtained a stay of the Final Order pending any such appeal.

15.  11 U.S.C. 541 provides in pertinent part that:

> [P]roperty in which the debtor holds, as of the commencement of the case, only legal title and not an equitable interest, … becomes property of the estate under subsection (a)(1) or (2) of this section only to the extent of the debtor's legal title to such property, but not to the extent of any equitable interest in such property that the debtor does not hold.

11 U.S.C. 541(d). To the extent that the Debtor is the title owner of any of the Marital Properties, he holds only legal title and not the equitable interests assigned to and determined to be the property of Christine Pourbabai.

---

[3] Title to the Paper Mill Property is held solely by Christine Pourbabai as evidenced by a May 9, 2007 Deed from the Debtor. Notwithstanding the 2007 transfer, Debtor lists himself as "sole owner" of the Paper Mill Property.

16.     The interests in the Marital Properties awarded to Christine Pourbabai under the

Final Order are not property of the Debtor's bankruptcy estate. Courts have held that:

> It is widely recognized that property awarded to a non-debtor spouse pursuant to a divorce decree finalized prior to the debtor spouse's bankruptcy is not part of the debtor's estate.
>
> …
>
> It is generally recognized that once the divorce decree becomes final, the property interests awarded are vested pursuant to the decree. As long as the property awarded existed at the time of the decree, even if it was cash, a prebankruptcy court order divesting the debtor spouse of an interest in the property will normally keep that property out of the debtor spouse's bankruptcy estate.

In re Purpura, 170 B.R. 202, 209 (Bankr. E.D.N.Y. 1994), citing, *inter alia,* Henry J. Sommer et

al., *Collier Family Law And The Bankruptcy Code* § 2.01 [5] at 2–11 (1994 ed.).

17.     Courts in this jurisdiction have held that:

> [t]he mere filing of a bankruptcy petition does not divest otherwise vested equitable distribution rights. … Thus, in a bankruptcy proceeding which is commenced after the vesting of equitable distribution rights, only the debtor's inchoate equitable interest in the marital estate becomes part of the bankruptcy estate. The interest is then made choate by the equitable distribution proceeding. To hold otherwise would make the Bankruptcy Code a draconian tool in divorce litigation, because one could then avoid an anticipated unfavorable equitable distribution award by filing bankruptcy.

In re Roberge, 188 B.R. 366, 369 (E.D. Va. 1995), aff'd sub nom. Roberge v. Buis, 95 F.3d 42

(4th Cir. 1996).

18.     This Court should grant relief from the automatic stay of 11 U.S.C. 362, for

cause, based upon the recognition that the equitable interests of Christine Pourbabai in and to the

Marital Properties are not property of this bankruptcy estate. The Debtor's Chapter 13 filing

should not be permitted to interpose any further delay in the closing of the existing sales

contracts.

## ii.    Relief should be granted to permit implementation of the Final Order.

19.    Courts generally hold that a state court's determination of rights in areas uniquely of state concern should not be disturbed by the federal courts. In the case of <u>Caswell v. Lang</u>, 757 F.2d 608 (4th Cir. 1985), the Fourth Circuit Court of Appeals held that:

> … it was not the "intent of the new Bankruptcy Code to convert the bankruptcy courts into family or domestic relations courts—courts that would in turn, willy-nilly, modify divorce decrees of state courts insofar as these courts had previously fixed the amount of alimony and child support obligations of debtors."

<u>Id.</u>, at 610–11.

20.    In the case of <u>In re Robbins</u>, 964 F.2d 342 (4th Cir. 1992), <u>as amended</u> (May 27, 1992), the Fourth Circuit Court of Appeals extended its general principals stated in <u>Caswell</u> to a case involving a motion for relief from the automatic stay to permit a state court to enter a final order as to a substantially completed equitable distribution award. The Fourth Circuit said that relief from the automatic stay requires an evaluation of the following factors:

> (1) whether the issues in the pending litigation involve only state law, so the expertise of the bankruptcy court is unnecessary;
> (2) whether modifying the stay will promote judicial economy and whether there would be greater interference with the bankruptcy case if the stay were not lifted because matters would have to be litigated in bankruptcy court; and
> (3) whether the estate can be protected properly by a requirement that creditors seek enforcement of any judgment through the bankruptcy court.

<u>Id.</u>, at 345. In Robbins, the equitable distribution determinations had been made by the state court, but entry of a special master's opinion disposing of the equitable distribution issues had not yet been entered. The Court of Appeals found all three factors stated above to weigh in favor of relief so that the final order of equitable distribution could be entered.

21.    In the instant case, it is clear that determination of marital property interests and the equitable distribution rights attendant upon a dissolution of marriage are uniquely matters of state law. The Court of Appeals in <u>Robbins</u> held that matters of equitable distribution are "…in

the category of cases in which state courts have a special expertise and for which federal courts owe significant deference." Id.  As in Robbins, the state court determination of equitable distribution had already been made. In this case, the Final Order was entered almost eighteen (18) months prior to the Debtor's bankruptcy filing.

22.     Judicial economy is likewise promoted by granting relief to permit closing under the Sale Contracts. As noted herein, the equitable distribution of marital property as between the Debtor and Christine Pourbabai was fully adjudicated and made by the Circuit Court pursuant to the entry of the Final Order in July of 2017. The equitable distribution involved the interpretation and application of Virginia law by both the Circuit Court *and* the Court of Appeals of Virginia in connection with the Debtor's appeal of the Final Order. There is simply no basis for re-litigating or failing to enforce the Circuit Court's determinations.

23.     Finally, providing relief from the automatic stay does not harm creditors of this estate. As noted above, the determinations of the respective rights of the Debtor and Christine Pourbabai in and to the Marital Properties was finally determined by the Circuit Court in July of 2017 pursuant to entry of the Final Order. Creditors of this case, having been filed on October 23, 2018, have no right or interest in and to the award of marital property made to Christine Pourbabai under the Final Order. Accordingly, sale of the Marital Properties may be permitted, with any proceeds payable to the Debtor directed to be paid into this Court or into the Debtor's bankruptcy estate.

### iii.     **Conclusion**

WHEREFORE, your movants pray that this Honorable Court grant relief from the automatic stay of 11 U.S.C. 362 to permit closing under the Sale Contracts  and completion of distribution of proceeds of sale in accordance with the orders of the Circuit Court, that the

fourteen (14) day provided for under Rule 4001(a)(3) be waived, and that your Movants have

such other and further relief as this Court may deem just.


Respectfully submitted,

CHRISTINE POURBABAI
KYLE SKOPIC
By Counsel



/s/ Kevin M. O'Donnell
Bruce W. Henry, VSB # 23951
Kevin M. O'Donnell, VSB #30086
Jeffery T. Martin, Jr., VSB # 71860
Henry & O'Donnell, P.C.
300 N. Washington St., Suite 204
Alexandria, Virginia 22314
(703) 548-2100
Counsel to the Movants

## CERTIFICATE OF SERVICE

I hereby certify that on this 13th day of November, 2018, a copy of the foregoing was served via first class mail, postage pre-paid, to the Debtor, Debtor's Attorney and Chapter 13 Trustee, and via the ecf system to Debtor's counsel and the Chapter 13 Trustee.


/s/ Kevin M. O'Donnell_____

# EXHIBIT A

**VIRGINIA:**

## IN THE CIRCUIT CIOURT OF FAIRFAX COUNTY

| | |
|---|---|
| CHRISTINE POURBABBAI, | ) |
| Plaintiff, | ) |
| v. | )     CASE No. CL 2015-16966 |
| BEN POURBABAI, | ) |
| Defendant. | ) |

### FINAL ORDER OF DIVORCE

**THIS CAUSE** came on to be heard upon the pleadings of the parties, and upon the sworn testimony of the Plaintiff, Defendant and their witness duly taken *ore tenus* and the evidence presented at the hearing in this matter;

**AND IT APPEARING TO THE COURT,** independently of the admissions of either party in the pleadings or otherwise, that the parties were married on December 22, 2002 in Loudoun County, Virginia; that there is three children was born of the aforesaid marriage, namely, ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇, born on January 16, 2005, ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇, born on February 1, 2008 and ▇▇▇▇▇▇▇▇▇▇▇▇▇▇, born on June 5, 2011; that both parties are over the age of eighteen (18) years and neither is a member on active duty with the Armed Forces of the United States; that Plaintiff is and has been actual *bona fide* resident and domiciliary of Fairfax County, Virginia, for at least six month preceding the commencement of this suit, that the parties hereto last cohabited as husband and wife at the marital residence in Fairfax County, Virginia; that the parties separated on or about December 1, 2015, at which time it was the intention of at least one of the parties to terminate the marital state, and since that date both have been living separate and apart without cohabitation, continuously and

without interruption; and that there is no prospect of reconciliation between the parties.. It is therefore,

**ADJUDGED, ORDERED AND DECREED** as follows:

1. That the Plaintiff, Christine Poubabai, be and he hereby is awarded a Final Order of Divorce *a vinculo matrimonii* from the Defendant, Ben Pourbabai, on the grounds of having lived separate and apart without cohabitation and without interruption for a period in excess of one year.

2. That the bonds of matrimony heretofore existing between the parties hereto are forever dissolved.

3. That after having considered all of the factors in §20-107.3(E) of the Code the court makes the following ruling with regards to the parties' marital property:

(A) Kyle Skopic, Esq. be and is hereby appointed as the commissioner to facilitate the sale of the following real property of the parties which is found to be marital:

a. The House located at 9896 Sunnybrook D., Great Falls, VA 22066

b. The House located at 1077 Papermill Court, N.W., Washington DC 20007

c. The House located at 328 Reservoir Rd., N.W., Washington DC 20007

d. The House located at 3661 Winfield Ln., N.W, Washington DC 20007

e. The House located at 6329 Winfield Ln., N.W. Washington DC, 20007

Both parties are ordered to fully cooperate with the commissioner in the preservation and to facilitate the sale of the properties and the court reserves jurisdiction to enter separate orders for each property to effectuate the sale. The proceeds of the sale of each property shall be divided equally between the parties after the deduction of all costs at the time of the sale. ~~Defendant~~ ~~Cannot further encumber the properties without the approval of the~~ (B) Plaintiff shall retain her Honda as he sole and separate property. ~~Commissioner~~

-2-

(C) Within 3 days of the entry of this order the parties shall divide the Persian rugs in Defendant's possession. Each party shall select one rug with the Plaintiff making the first choice until the rugs are fully divided. The last rug (if the division is uneven) shall be sold and the proceeds shall be divided equally between the parties.

(D) Plaintiff's student loans are marital and she shall be responsible for them.

4. After having considered all pertinent factors in the code, the court makes the following ruling as to support.

(A) Spousal support. The court finds that the Defendant is unemployed and awards no spousal support. There shall be a reservation of spousal support for 6 years and 3 months.

(B) Child support. The Court finds that Plaintiff's income is $1,143 per month and that Defendant's income is $0 per month. The number of dependent children is three. The cost of medical insurance for the children is $0 per month. The work-related childcare cost of the primary physical custodian of the children (Wife) is zero dollars per month. The presumptive amount of child support is $126/month. Husband shall pay to Wife $126/month in child support beginning on July 1, 2016 and continuing on the first of each month thereafter.

Child support shall continue to be paid for a child until that child reaches the age of eighteen (18) and shall continue to be paid for a child who is: (i) a full-time high school student, (ii) not self-supporting, and (iii) living in the home of the parent seeking or receiving support, until the child reaches the age of nineteen (19) or graduates from high school, whichever first occurs. The court may also order the continuation of support for any child over the age of 18 who is (a) severely and permanently mentally or physically disabled, and such disability existed prior to the child reaching the age of 18 or the age of 19 if the child met the

- 3 -

requirements of clauses (i), (ii), and (iii); (b) unable to live independently and support himself, and (c) residing in the home of the parent seeking or receiving child support.

Support payments are not ordered to be paid through the Department of Social Services, or to be paid via Wage Withholding Order, at this time. Instead, Husband shall pay child support directly to the Wife in such a manner that she receives it on or before the first day of each month. By agreement of the parties, there are no child support arrearages as of the date of entry of this Order.

(C)    Health Care Coverage.

(a)    For Spouse or Former Spouse. Neither party shall be responsible for maintaining health insurance for the benefit of the other.

(b)    For the Children. The children are currently on Medicaid and therefore neither party is responsible for continuing health insurance coverage.

(c)    Unreimbursed Medical Expenses. For so long as either party owes a duty of child support for the minor children, the parties shall share in proportion to their respective gross incomes as used for calculating child support then in effect any reasonable and necessary unreimbursed medical or dental expenses for the minor children. "Medical or dental expenses" shall include but not be limited to eyeglasses, prescription medication, prosthetics, orthodontics, and mental health or developmental disabilities services including but not limited to services provided by a social worker, psychologist, psychiatrist, counselor, or therapist. Any reimbursement due, one to the other, shall be paid within 30 days of the receipt of documentation substantiating the expenses that are subject to this Order. If the provider has applied directly to the health insurance carrier for reimbursement, the parties shall pay to the provider his or her share when the provider deems that a payment is due and owing. If either

-4-

parent receives reimbursement from the insurance company for expenses paid (in part or in whole) by the other parent, reimbursement to the other parent shall occur within 15 days.

5.     There are support arrearages in the amount of $1968 .

6.     No Attorney's fees are awarded, except that Defendant was previously ordered to pay plaintiff $750 in attorney's fees which stand

**NOTICES AND INFORMATION:**

Pursuant to Virginia Code ' 20-60.3, the following information is provided:

1.     Notice is hereby given that support payments may be withheld as they become due pursuant to ' 20-79.1 or ' 20-79.2, from income as defined in ' 63.2-1900, without further amendments of this order or having to file an application for services with the Department of Social Services.

2.     Notice is hereby given that support payments may be withheld pursuant to Chapter 19 (' 63.2-1900 *et seq*) of Title 63.2 without further amendments to the order upon application for services with the Department of Social Services.

3.     The name, date of birth and last four digits of the social security number of each child to whom a duty of support is then owed by the parent as follows.

| Name | D/O/B | Last Four of SSN |
|------|-------|------------------|
| ███████████ | ██████ | ██████ |
| ███████████ | ██████ | ██████ |
| ███████████ | ████ | ██████ |

4.     The name, date of birth, the last four digits of the social security number of each parent of the child and, unless otherwise ordered, each parent=s residential, and if different, mailing address, residential and employer telephone number, driver=s license number, and the name and address of his or her employer as follow:

-5-

| Plaintiff: | Christine Pourbabai |
|---|---|
| Date of Birth: | 09/23/1977 |
| Social Security Number: | See private addendum |
| Residential Address: | 10509 Cavalcade St., Great Falls, VA, 22066 |
| Residential Telephone #: | |
| Employer: | Strayer University |
| Employer Address: | 2303 Dulles Station Blvd Herndon, VA |
| Employer Telephone #: | |
| | |

| Defendant: | Ben Pourbabai |
|---|---|
| Date of Birth: | 09/23/1956 |
| Social Security Number: | 168546658 |
| Residential Address: | 3629 Winfield Lane NW Wash DC 2 |
| Residential Telephone #: | |
| Employer: | |
| Employer Address: | |
| Employer Telephone #: | |
| Driver's License #: | |

Defendant is responsible for paying sup

5.      Notice is hereby given that, pursuant to '20-124.2, support will continue to be paid for any child over the age of 18 who is (i) a full-time high school student, (ii) not self-supporting, and (iii) living in the home of the party seeking or receiving child support until such child reaches the age of 19 or graduates from high school, whichever occurs first, and that the court may also order the continuation of support for any child over the age of 18 who is (a) severely and permanently mentally or physically disabled, (b) unable to live independently and support himself, and (c) residing in the home of the parent seeking or receiving child support.

6.      Notice is hereby given that a petition may be filed for suspension of any license, certificate, registration or other authorization to engage in a profession, trade, business, occupation or recreational activity issued to the obligor by the Commonwealth of Virginia to a parent as provided in '63.2-1937 upon the occurrence of a delinquency for a period of ninety

(90) days or more or in an amount of $5,000.00 or more. At the date hereof neither party holds such a license or certification.

7.     The amount of periodic support expressed in fixed sums, together with the payment interval, the date payments are due, and the date the first payment is due, is set forth in the support provisions of this Order. Neither part is responsible for paying child support to the other.

8.     a. This Order contains a provision for health care coverage, including the health insurance policy information, for dependent children pursuant to Code §§20-108.1 and 108.2, if available at a reasonable cost as defined in Code §63.2-1900. Health insurance is not required for a former spouse.

       b.     This Order contains a statement whether any unreimbursed medical expenses are to be paid or reimbursed to a party pursuant to Subsections D and G of Code §20-108.2, and if such expenses are ordered, then the provisions governing how such payment is to be made.

9. The Order of this Court as to the amount and terms of any arrearages in support are set forth in the arrearage provision of this Order, including (i) to whom an arrearage is owed and the amount of the arrearage, (ii) the period of time for which such an arrearage is calculated, and (iii) a direction that payments are to be credited to current obligations first, with any payments in excess of the current obligation applied to arrearages. No arrearages exist as of the entry of this Order.

10.     The child support payments are to be paid to the Plaintiff and unless the Court for good cause shown orders otherwise, the parties shall give each other and the court and, when payments are to be made through the Department, the Department of Social Services at

-7-

least thirty (30) days= written notice, in advance, of any change of address and any change of telephone number within thirty (30) days after the change.

11.    In the event that child support payments are ordered to be paid to the Department of Social Services, the obligor must keep the court and the Department of Social Services informed of the name, address and telephone number of his/her current employer, or if the payments are ordered to be paid directly to the obligee, the obligor must keep the court informed of the name, address and telephone number of his/her current employer.

12.    In the event that child support payments are ordered to be paid to the Department of Social Services, the party obligated to provide health care coverage shall keep the Department of Social Services informed of any changed in the availability of health care coverage for the minor child or children, or if payments are ordered to be paid directly to the obligee, the party obligated to provide health care coverage shall keep the other party informed of any changes in the availability of the health care coverage for the minor child or minor children.

13.    The separate amount due to each person under this Order for child support, for spousal support or for a unitary award, or the affirmation of a separation agreement, are set forth in the support provision of this Order.

14.    Notice is hereby provided that in determination of a support obligation, the support obligation as it becomes due and unpaid creates a judgment by operation of law. Notice is further provided, pursuant to § 20-78.2, that any judgment shall accrue interest on the arrearage at the judgment rate of interest established by '6.1-330.54 unless the obligee, in a writing submitted to the court, waives the collection of interest.

- 8 -

15.    Notice is hereby given that the Department of Social Services may, pursuant to Chapter 19 ('63.2-1900) of Title 63.2 and in accordance with '20-108.2 and '63.2-1921, initiate a review of the amount of support ordered by any court.

16.    If any arrearages for child support, including interest or fees, exist at the time the youngest child included in the order emancipates, a payment shall continue in the total amount due (current support plus amount applied toward arrearages) at the time of emancipation until all arrearages are paid.

17.    Notice is hereby given that in cases enforced by the Department of Social Services, the Department of Motor Vehicles may suspend or refuse to renew the driver's license of any person upon receipt of notice from the Department of Social Services that the person (i) is delinquent in the payment of child support by 90 days or in an amount of $5,000 or more or (ii) has failed to comply with a subpoena, summons, or warrant relating to paternity or child support proceedings.

Pursuant to Code of Virginia, 1950 as amended, § 20-111.1, the parties are hereby notified of the following provisions of Virginia law: Beneficiary designations for any death benefit, as defined in subsection B of § 20-111.1 of the Code of Virginia, made payable to a former spouse may or may not be automatically revoked by operation of law upon the entry of a final decree of annulment or divorce. If a party intends to revoke any beneficiary designation made payable to a former spouse following the annulment or divorce, the party is responsible for following any and all instructions to change such beneficiary designation given by the provider of the death benefit. Otherwise, existing beneficiary designations may remain in full force and effect after the entry of a final decree of annulment or divorce.

The Virginia Code requires the Notice pursuant to §20-111.1 to be in bold print. Exhibit A is attached and incorporated by reference herein.

-9-

Pursuant to § 20-124.5 of the Code of Virginia either party who intends to move must give 30 days advance written notice of the intended move or any intended change of address to the court and to the other party.

ENTERED THIS 26th DAY OF _____, 2017.

_____
JUDGE

Seen and Agreed:

LAW OFFICES OF FRED M. REJALI
Counsel for Plaintiff
1750 Tysons Boulevard, #1500
McLean, Virginia 22102
(703) 383-4848 telephone
(703) 677-3148 facsimile
fredrejali@gmail.com

By: _____
     Fred M. Rejali, VSB No. 38127

Seen and *OBJECTED* as stated in Defendant's attached Exceptions and Objections (18 pages). Also Defendant gave Plaintiff $3,000 for child support in cash and Therefore disputes any arrears

_____
Jonathan A. Moseley, VSB# 41058
3823 Wagon Wheel Lane
Woodbridge, VA 22192
Tel. (703) 656-1230
Fax. (703) 783-0449
Contact@Jonmoseley.com
Counsel for Defendant

- 10 -

# EXHIBIT B

Present:   Judges Petty, Malveaux and Senior Judge Annunziata
Argued at Alexandria, Virginia

BEN POURBABAI

v.      Record No. 1532-17-4

CHRISTINE POURBABAI

MEMORANDUM OPINION* BY
JUDGE ROSEMARIE ANNUNZIATA
AUGUST 21, 2018

FROM THE CIRCUIT COURT OF FAIRFAX COUNTY
Jan L. Brodie, Judge

Jonathon A. Moseley for appellant.

Fred M. Rejali for appellee.

Ben Pourbabai (husband) appeals the circuit court's orders relating to his divorce from

Christine Pourbabai (wife).  Husband argues that the circuit court erred by (1) finding that the

parties separated on or about December 1, 2015; (2) finding that the circuit court had jurisdiction

over the divorce because the parties were not actual bona fide residents and domiciliaries of

Virginia for at least six months preceding the filing of the divorce suit; (3) misinterpreting Code

§ 20-97 and its requirement that a party be a domiciliary and a bona fide resident of Virginia;

(4) finding that "storing personal property in a room makes a residence;" (5) finding that the circuit

court had subject matter jurisdiction over child custody and visitation; (6) relitigating equitable

distribution when the Court of Familial Pleas of the Islamic Republic of Iran already had decided

equitable distribution on October 16, 2016; (7) not admitting the Iranian court order into evidence

and "not reconsidering that decision;" (8) failing to consider the equitable distribution factors and

that on October 16, 2016, the Iranian court already had ordered husband to pay wife "$500,000 to

_____

* Pursuant to Code § 17.1-413, this opinion is not designated for publication.

$700,000;" (9) failing to consider the equitable distribution factors and that wife's "$3.5 million inheritance inside Iran, which was converted into a marital asset when . . . [h]usband sold real estate and borrowed against real estate at [w]ife's request to pay [w]ife's 35% inheritance tax in Iran in return for [w]ife's promise to share the inheritance with [h]usband;" (10) ordering the sale of all of the real estate in Virginia and Washington, D.C. as opposed to "(a) entering a monetary award or (b) granting [wife's] request to sell some real estate while leaving the rest to [husband];" (11) determining that all of the real estate was marital property; (12) "refusing to order a new trial on equitable distribution after [husband] had to fire his attorney for failing to present his evidence;" (13) not admitting husband's exhibits and evidence or "accommodating" his request to re-open his case after firing his attorney; (14) denying his request to present evidence from his accountant, who was subpoenaed but did not appear at the hearing, after the trial was concluded; (15) not enforcing the post-nuptial agreement between the parties "or at least considering it in equitable distribution;" (16) awarding sole custody of the children to wife and "refusing to admit other evidence of [w]ife's suicide attempts, psychological problems, false police reports concocting non-existent altercations, and mental instability;" (17) "denying [husband] visitation with his children conditioned on an anger management evaluation (A) restricted to a particular consultant (B) which [husband] cannot afford (C) without any evidence to justify such a requirement;" and (18) limiting husband's ability to present his case.[1]  We find no error, and affirm the decision of the circuit court.

## BACKGROUND

"When reviewing a trial court's decision on appeal, we view the evidence in the light most favorable to the prevailing party, granting it the benefit of any reasonable inferences."

---

[1] On July 9, 2018, husband filed "Appellant's Supplementary Affidavit on Transcript of Circuit Court's Reasons for Order."  As this pleading was not timely filed, the Court will not consider it.

Menninger v. Menninger, 64 Va. App. 616, 618, 770 S.E.2d 232, 233 (2015) (quoting Congdon v. Congdon, 40 Va. App. 255, 258, 578 S.E.2d 833, 834 (2003)).

Husband and wife married on December 22, 2002, and three children were born of the marriage. On December 15, 2015, wife filed a complaint for divorce, requesting a divorce based on the grounds of cruelty and constructive desertion. In the complaint, wife alleged that she and husband were bona fide residents and domiciliaries of Virginia and that husband had been a bona fide resident and domiciliary of Virginia for more than six months preceding the filing of the complaint. On January 29, 2016, husband filed an answer to the complaint for divorce and admitted the statements that they were bona fide residents and domiciliaries of Virginia. On February 12, 2016, husband filed a counterclaim for divorce and stated that he was a bona fide resident and domiciliary of Virginia and had been for more than six months preceding the filing of the suit.

On February 7, 2017, the parties appeared before the circuit court to determine custody and visitation. After hearing the evidence and argument, the circuit court issued its ruling from the bench on February 8, 2017. The circuit court considered the Code § 20-124.3 factors and awarded sole legal and physical custody of the children to wife. The circuit court expressed its "grave concerns about the psychological well-being" of husband and ordered him "to undergo a full-scale psychological evaluation by Dr. Edward Farber." The circuit court did not order visitation, but indicated that husband could file a motion for visitation after the court received the psychological evaluation and a report from the guardian *ad litem*, who was appointed at the hearing. The circuit court ordered that husband would be responsible for the costs associated with the psychological evaluation and the guardian *ad litem*. On March 17, 2017, the circuit court entered an order reflecting its ruling.

On March 17, 2017, husband filed a motion to dismiss the case, arguing that the court did not have subject matter jurisdiction because the parties were not residents of Virginia for at least six months prior to the filing of the complaint for divorce. Husband filed amended motions, and on May 8, 2017, the circuit court heard husband's motion to dismiss. Husband argued that in September 2013, the parties moved to Canada for wife to obtain her master's degree in business administration from the University of Toronto. Husband explained that he and wife found renters to live in the former marital residence in Virginia from April 1, 2014 until April 1, 2016. However, the renters vacated the property before the lease expired, and the house was vacant when the parties returned to Virginia in June 2015. Wife testified that they kept personal property in one of the rooms in the house while they were in Canada. Furthermore, wife asserted that husband maintained his residence in Virginia while she and the children lived in Canada. Wife explained that husband spent "more than two weeks a month" in Virginia because he had to manage their rental properties. On cross-examination, husband admitted that he frequently traveled in and out of Canada while wife attended school.

Wife presented evidence of their intent to maintain their domicile and residence in Virginia. While they were in Canada, both husband and wife maintained Virginia driver's licenses. Wife continued to receive mail at the former marital residence in Virginia. While wife attended school in Canada, husband and wife paid taxes to the Commonwealth of Virginia and the United States. On their tax returns, both parties claimed to be Virginia residents. Husband admitted that he never filed a Canadian tax return because "[w]e weren't residents or Canadian citizen[s]." Wife testified that she never asked for residency in Canada and explained that, when she went to the University of Toronto, she received a student visa and her children received visitor's visas.

The parties offered contradictory testimony about their future plans after wife graduated. Husband testified that they intended to stay in Canada after wife graduated, while wife testified that she intended to return to the United States for employment and that she declined the employment offers in Canada she received as a result. When wife completed her coursework in October 2014 and the parties' children finished the school year, the parties left Canada and returned to the former marital residence in Virginia on June 30, 2015, bringing with them all their furniture.

From July 5, 2015 through August 27, 2015, wife and the children visited Iran. Husband testified that wife went to Iran to "look for job opportunities" and "explore living conditions," a view contradicted by a contemporaneous email husband wrote, stating the family was going to Iran for "summer vacation." Wife also testified that she went for a vacation, as evidenced by her purchase of round-trip airline tickets with a return date before school started. Furthermore, husband admitted that since July 1, 2015, he has lived in and been a resident of the Commonwealth of Virginia. Wife testified that she has considered herself a resident and domiciliary of Virginia for the last fourteen years.

After hearing the parties' evidence and argument, the circuit court found that "both parties maintained their home in Great Falls as their permanent abode;" in short that both husband and wife are permanent citizens of the United States and that they were residents and domiciliaries of Virginia in the six months preceding the filing of the divorce suit. The circuit court noted that both parties filed Virginia and federal tax returns and, on those tax returns, they listed the former marital residence as their address. The circuit court accepted wife's testimony that they went to Canada temporarily and, that "once the wife finished her class work, the plan was to stay until the children finished school and returned the day after school ended." Based on the evidence presented, the circuit court, at the conclusion of the hearing on May 8, 2017,

entered an order dismissing husband's motion to dismiss for lack of jurisdiction. Husband filed a motion to reconsider, which the circuit court denied by order entered on July 24, 2017.

On June 20 and 21, 2017, the circuit court heard evidence on the outstanding issues of grounds for divorce, equitable distribution, spousal support, child support, and attorney's fees. After hearing the evidence and the parties' arguments, the circuit court took the matter under advisement.

On June 26, 2017, the circuit court issued its ruling from the bench.[2] After reviewing the factors in Code § 20-107.3, the circuit court found that the real estate in Virginia and Washington, D.C. was marital property and ordered its sale. The circuit court appointed a commissioner to facilitate the sale of the real estate and ordered that the net proceeds be divided equally between the parties. The circuit court further ordered a reservation of spousal support to wife for six years and three months and awarded her child support pursuant to the statutory guidelines. On July 26, 2017, the circuit court entered the final decree of divorce reflecting its rulings and attached husband's objections, filed July 21, 2017.

On July 19, 2017, husband filed several post-trial motions, including a "Motion to Dismiss due to Res Judicata, Lack of Jurisdiction, Fraud upon the Court, and for Award of Attorneys' Fees and Memorandum of Points & Authorities in Support Thereof," a "Motion to Proffer Evidence and Re-Open the Record and for Admission of Evidence Excluded by Court's Technical Malfunction and Memorandum of Points & Authorities," and a "Motion for New Trial on Equitable Distribution and Memorandum of Points & Authorities in Support Thereof." On July 20, 2017, husband filed a "Motion to Reconsider Jurisdiction of the Court over Child

---

[2] The transcript from the June 26, 2017 hearing was included in the record, but not the appendix.

Custody and Visitation Aspects of Divorce and Memorandum of Points & Authorities in Support Thereof" and a "Motion for Clarification of Equitable Distribution Decision."

On August 1, 2017, the circuit court suspended the judgment to address husband's post-trial motions. Wife filed responsive pleadings, and husband filed amended pleadings.

In his motion to dismiss, husband argued that wife had instituted divorce proceedings in Iran in 2016. He alleged that an Iranian court had issued an equitable distribution ruling, and therefore, Virginia did not have jurisdiction over the parties' divorce. On August 31, 2017, the circuit court heard argument on husband's motion to dismiss. On the same day, the circuit court entered an order denying husband's motion to dismiss and ending the stay. On September 19, 2017, husband filed a motion to reconsider.

On September 5, 2017, the circuit court entered orders addressing two of husband's other motions; it held that husband's motion for clarification was moot and denied husband's motion for a new trial. On September 8, 2017, the circuit court denied husband's motion to proffer evidence and re-open the record regarding the custody and visitation matters. On September 19, 2017, husband filed a motion to reconsider the custody and visitation matters, which the circuit court denied on September 27, 2017. On September 20, 2017, husband also filed a motion for a new trial and alleged that the parties had a post-nuptial agreement.

On September 21, 2017, husband filed a notice of appeal, and on September 22, 2017, he filed an amended notice of appeal. On October 2, 2017, the circuit court denied husband's motions for reconsideration and for a new trial because the circuit court no longer had jurisdiction over the matters following husband's appeal.

<center>ANALYSIS</center>

<center>*Jurisdiction - Date of Separation*</center>

Husband argues that the circuit court erred in granting the divorce because the parties had not lived separate and apart for more than one year prior to the filing of the suit.

On December 15, 2015, wife filed the complaint for divorce and requested that she be "awarded a divorce *a mensa et thoro* ('from bed and board') upon the stated grounds of cruelty and constructive desertion to be merged in one year into a divorce *a vinculo matrimonii* ('from the bonds of matrimony')." At the equitable distribution hearing on June 20, 2017, wife indicated that she no longer sought a divorce based on fault grounds. Instead, wife made an oral motion to amend the complaint and asked for a divorce based on living separate and apart for more than one year. Husband did not object. Wife presented evidence that she and husband had been living separate and apart since December 2015. After considering all the evidence, the circuit court entered the final decree of divorce on July 27, 2017, and granted wife a divorce based on living separate and apart for more than one year.

Code § 20-95 provides that a person may seek a divorce from bed and board based on "cruelty, reasonable apprehension of bodily hurt, willful desertion or abandonment." That statute does not require any period of pre-filing separation. Thus, the circuit court had subject matter jurisdiction over the divorce proceedings. Code § 20-91(9) provides that a person may seek a divorce from his or her spouse after they have lived separate and apart for more than one year. Code § 20-121.02 provides that a party may move for a divorce based on living separate and apart without amending the complaint for divorce. Nothing in these code sections requires that the one-year separation period must occur prior to the filing of the complaint in order for the circuit court to have jurisdiction to enter a final decree of divorce. Code § 20-91(9) provides that a circuit court may decree a divorce "*if and when* the husband and wife have lived separate and

<center>- 8 -</center>

apart without any cohabitation and without interruption for one year." (Emphasis added.)

Moreover, Code § 20-121.02 allows a party to amend the grounds for divorce. Here, when the

circuit court entered the final decree awarding wife a divorce, the parties had been separated for

more than one year.

*Jurisdiction - Bona fide resident and domiciliary of Virginia*[3]

Husband argues that the circuit court erred in finding that it had jurisdiction over the

divorce, including the equitable distribution and custody and visitation matters, because the

parties had not been bona fide residents and domiciliaries of Virginia for six months preceding

the filing of the complaint for divorce. Husband asserts that they had lived in Canada from

September 2, 2013 until June 30, 2015, and that wife filed her complaint for divorce on

December 15, 2015. He contends that they had only lived in Virginia for five and a half months

prior to the filing of the complaint.

Code § 20-97 provides, in pertinent part, that "[n]o suit for . . . divorce shall be

maintainable, unless one of the parties was at the time of the filing of the suit and had been for at

least six months preceding the filing of the suit an actual bona fide resident and domiciliary of

this Commonwealth . . . ."

"The issue of subject matter jurisdiction in a divorce proceeding requires a determination

of both domicile and bona fide residency. That determination presents a mixed question of law

and fact, reviewable on appeal." Blackson v. Blackson, 40 Va. App. 507, 517, 579 S.E.2d 704,

---

[3] In his fifth assignment of error, husband argues that the circuit court "lack[ed] subject matter jurisdiction over child custody and visitation under the Uniform Child Custody Jurisdiction and Enforcement Act." In the argument section of his brief, husband argued the first five assignments of error together; however, he did not address the specifics of the assignment of error concerning the UCCJEA and why the circuit court lacked jurisdiction under the UCCJEA. Therefore, we find that husband waived this assignment of error. See Muhammad v. Commonwealth, 269 Va. 451, 478, 619 S.E.2d 16, 31 (2005) ("Failure to adequately brief an assignment of error is considered a waiver.").

- 9 -

709 (2003). "On appeal, the fact finding component of that determination is given deference."

<u>Adoteye v. Adoteye</u>, 32 Va. App. 221, 226, 527 S.E.2d 453, 456 (2000).

"To have been an 'actual bona fide resident of this State' . . . means to have had in this State throughout that period an actual bona fide permanent abode, as contradistinguished from a sojourn, or transitory abode . . . ." <u>Id.</u> at 225, 527 S.E.2d at 455 (quoting <u>Hiles v. Hiles</u>, 164 Va. 131, 137, 178 S.E. 913, 915-16 (1935)).

> If a person, who has theretofore in good faith established and is then maintaining a permanent abode in the State, goes from the State, and while absent therefrom continuously in good faith maintains that, or some other place or locality in the State, as and for his permanent abode, the establishment of a sojourn, or transitory abode, outside the State will not (so long as his physical residence elsewhere is essentially transitory or a sojourning) put an end to his being an "actual *bona fide* resident of this State" within the meaning of [Code § 20-97]. This is true even though his absence from the State be of long duration.

<u>Blackson</u>, 40 Va. App. at 518, 579 S.E.2d at 709 (quoting <u>Hiles</u>, 164 Va. at 137-38, 178 S.E. at 916).

"There must be some evidence of concurring acts or forbearances to act which tend to show the *actual* continued maintenance in good faith of some place or locality in Virginia as and for his permanent abode." <u>Adoteye</u>, 32 Va. App. at 226, 527 S.E.2d at 455 (quoting <u>Hiles</u>, 164 Va. at 138, 178 S.E. at 916). "Neither the unexpressed nor the mere expressed intention to so maintain a place or locality in Virginia as his permanent abode, is alone sufficient to constitute the maintenance thereof as such." <u>Id.</u> (quoting <u>Hiles</u>, 164 Va. at 138, 178 S.E. at 916).

"Domicile contemplates living in a place with the intent to remain there permanently or for an indefinite period of time." <u>Id.</u> at 226, 527 S.E.2d at 455-56 (quoting <u>Rock v. Rock</u>, 7 Va. App. 198, 202, 372 S.E.2d 211, 213 (1988)). "Mere change of place is not change of domicile. Mere absence from a fixed home, however long continued, cannot work the change. There must be the [intention] to change the prior domicile for another. . . . Until the new

domicile is acquired, the old one remains . . . ." Blackson, 40 Va. App. at 517-18, 579 S.E.2d at

709 (quoting Cooper's Adm'r v. Commonwealth, 121 Va. 338, 347, 93 S.E. 680, 682 (1917)).

Here, the circuit court found that both parties were bona fide residents and domiciliaries

of Virginia and that they had "maintained their home in Great Falls as their permanent abode."

The circuit court held that their absence from Virginia, while wife studied in Canada, was a

"temporary sojourn." The circuit court concluded that the parties' intent was that Virginia

remain their permanent abode, as evidenced by retaining the former marital residence and paying

taxes in Virginia and the United States. They listed the former marital residence as their address

on their tax returns. The circuit court credited wife's testimony that she went to Canada on a

two-year student visa and, once the children finished school, her intent was to return to Virginia,

which she did.[4] Wife also testified that husband visited them in Canada, but that he returned to

Virginia for more than two weeks each month to maintain their rental properties. Furthermore,

the circuit court found that the parties kept some of their personal property in the former marital

residence, even when it was rented. In addition, the parties maintained their Virginia driver's

licenses, and wife continued to receive mail at the former marital residence. The totality of this

evidence supports the circuit court's conclusion that the parties were bona fide residents and

domiciliaries of Virginia for at least six months preceding the filing of the complaint for divorce.

*Iranian court order*

Husband argues that the circuit court erred by failing to admit into evidence a proffered

document purporting to be an order of an Iranian court and by relitigating equitable distribution

---

[4] Husband asserts that the parties submitted applications for permanent residency in Canada, but wife testified that it was not her signature on the applications. The circuit court found that wife did not sign the document and held that it was not giving any weight to the applications. See Layman v. Layman, 62 Va. App. 134, 137, 742 S.E.2d 890, 891 (2013) ("It is well established that the trier of fact ascertains a witness' credibility, determines the weight to be given to their testimony, and has discretion to accept or reject any of the witness' testimony." (quoting Street v. Street, 25 Va. App. 380, 387, 488 S.E.2d 665, 668 (1997) (*en banc*))).

after the equitable distribution issue had already been decided in Iran.  On July 19, 2017, husband filed a motion to dismiss and a memorandum, in which he alleged that the equitable distribution aspect of this case was barred by *res judicata* because on October 16, 2016, a court in Iran had awarded wife the equivalent of $500,000 based on their separation.  Husband filed with the circuit court several documents purporting to be the Iranian court order, as well as several translations.  The circuit court heard argument on husband's motion to dismiss on August 31, 2017.  At the beginning of the hearing, the circuit court asked husband if he had certified copies of the Iranian court order and explained that the "ones that were attached [to the pleadings] only had the certification of the translation, not the accuracy nor the authenticity of the documents."  Husband admitted that he did not have anything other than what was previously attached to his pleadings.  Husband also attempted to introduce into evidence a copy of a document in a foreign language that was purported to be the Iranian court order.  The document was in a foreign language, and the certification from the Pakistani Embassy, not the court from which the order came, indicated that no original document had been produced.  On those grounds, the circuit court sustained wife's objection to the admission of the document.[5]  At the conclusion of the hearing, the circuit court specifically addressed husband's claim relating to property in Iran, noting husband's testimony to that effect.  However, no evidence was presented by either party relating to property in Iran and no orders regarding Iranian property had been made in the course of the proceedings.  No basis for granting husband's motion to dismiss having been proved, the motion was denied.[6]

---

[5] That document was not included in the record as a refused exhibit.

[6] On September 19, 2017, husband filed a motion to reconsider and submitted another copy of the Iranian court order with a certification from the U.S. Interests Section of the Swiss Embassy in Tehran.  The circuit court did not consider this latest document and certification because as stated in its October 2, 2017 order, it lost jurisdiction over the matter after husband appealed.

"Generally, the admissibility of evidence 'is within the broad discretion of the trial court, and an [evidentiary] ruling will not be disturbed on appeal in the absence of an abuse of discretion.'" Surles v. Mayer, 48 Va. App. 146, 177, 628 S.E.2d 563, 578 (2006) (quoting Blain v. Commonwealth, 7 Va. App. 10, 16, 371 S.E.2d 838, 842 (1988)) (brackets in original).

Several statutes are pertinent to the resolution of this issue. "The records of any judicial proceeding and any other official record of any court of another . . . country . . . , shall be received as prima facie evidence provided that such records are certified by the clerk of the court where preserved to be a true record." Code § 8.01-389(A1).

Code § 8.01-389(E) provides:

> The use of the term "copy teste," "true copy," or "certified copy" or a substantially similar term on a certification affixed or annexed to a copy of an official record maintained by a clerk of court that bears the signature of the clerk or any deputy clerk, and that has the name of the court where such record is preserved on the document or on the certification, shall be prima facie proof that such record is certified by such clerk to be a true copy of the official record kept in the office of the clerk. Nothing herein shall be construed to require or prevent a clerk from using an official seal or prevent a clerk from using any other acceptable method of certification for a court record.

Furthermore, Code § 8.01-391(B) states:

> If any department, division, institution, agency, board, or commission of this Commonwealth, of another state or country, or of the United States, or of any political subdivision or agency of the same, acting pursuant to the law of the respective jurisdiction or other proper authority, has copied any record made in the performance of its official duties, such copy shall be as admissible into evidence as the original, whether the original is in existence or not, provided that such copy is authenticated as a true copy either by the custodian of said record or by the person to whom said custodian reports, if they are different, and is accompanied by a certificate that such person does in fact have the custody.

In this case, the circuit court held that the proffered Iranian court order was not properly certified. The documents attached to husband's pleadings do not comply with Code §§ 8.01-389

or -391.  The documents do not include a certification by the clerk of court that they are a "true record," as required by Code § 8.01-389(A1).  Furthermore, the documents are not true copies as defined by Code § 8.01-389(E), and were not authenticated as true copies by the custodian of the record as required by Code § 8.01-391(B).  Therefore, the circuit court did not abuse its discretion in refusing to admit the proffered Iranian court order into evidence.  Since the circuit court did not abuse its discretion in refusing to admit the Iranian court order, it could not consider the document for *res judicata* or equitable distribution purposes, and neither can this Court.[7]

*Equitable distribution*

Husband challenges several of the circuit court's rulings regarding equitable distribution.  "On appeal, 'decisions concerning equitable distribution rest within the sound discretion of the trial court and will not be reversed unless plainly wrong or unsupported by the evidence.'"  Layman v. Layman, 62 Va. App. 134, 137, 742 S.E.2d 890, 891 (2013) (quoting McDavid v. McDavid, 19 Va. App. 406, 407-08, 451 S.E.2d 713, 715 (1994)).

Husband argues that the circuit court failed to consider the equitable distribution factors and, specifically, the fact that wife received a $3.5 million inheritance during the marriage and he paid the inheritance tax wife owed under Iranian law by selling and borrowing against real estate he owned.

During the equitable distribution hearing, husband testified that after wife's father died in 2013, wife and her mother "inherited a multi-million-dollar portfolio of real estate" and, pursuant to Iranian law, they had to pay a "35% inheritance tax immediately, or lose it."  Husband

---

[7] Moreover, the circuit court noted that it never addressed property in Iran and that neither party presented any evidence about Iranian property.  Furthermore, wife's counsel informed the circuit court that nothing was provided in discovery that indicated that there was property in Iran.

explained that he sold one of his real estate properties in 2014 and used the proceeds to pay toward the inheritance tax. Husband did not offer into evidence any documentation to support his statements, nor did he question wife about the inheritance.

In addition to the inheritance issue and husband's claim the circuit court erred in not considering it in making its equitable distribution award, husband argues that the circuit court also erred in classifying the Virginia and Washington, D.C. real estate as marital property. The circuit court's order to sell all the real estate it classified as marital, instead of entering a monetary award or granting wife's request to sell some of the real estate and award the remaining parcels to husband, is also challenged by husband. Husband contends that "a forced sale will result in a net loss after paying commissions and costs."

During the equitable distribution hearing, both parties presented evidence about the real estate properties, which included wife's demonstrative exhibits. During her closing argument, wife suggested that two of the properties be sold and that husband receive the remaining three properties. The circuit court asked husband multiple times during his closing argument for his position about the real estate, but he never responded to the court's questions.

The circuit court ruled from the bench on June 26, 2017. After considering each of the Code § 20-107.3(E) factors and discussing the factors with the parties, the circuit court explained, "If I don't mention a factor, it's not because I haven't considered it, and if after I've finished delivering my decision, if you have any questions about the weight that I gave a particular factor, please don't hesitate to ask me."

The circuit court summarized the evidence presented regarding the five real estate properties and personal property. For each property, the circuit court determined when the property was purchased, how it was titled, its fair market value, its outstanding mortgage balance, and estimated equity. The circuit court then appointed a commissioner of sale to

facilitate the sale of all of the real estate properties. The circuit court ordered that the sales proceeds be divided equally and that any rental profits, likewise, be divided equally. While recognizing that the parties' income was "fairly consistent" from 2011 to 2014, the circuit court noted that, in 2015, the parties' tax return indicated "they operated at a loss with no income showing on the tax return." The circuit court ordered the sale of the properties "because it's unclear if there is some game playing here or whether all the properties are rented at their maximum value."

"In reviewing an equitable distribution award on appeal, we have recognized that the trial court's job is a difficult one, and we rely heavily on the discretion of the trial judge in weighing the many considerations and circumstances that are presented in each case." Fadness v. Fadness, 52 Va. App. 833, 841, 667 S.E.2d 857, 861 (2008) (quoting Klein v. Klein, 11 Va. App. 155, 161, 396 S.E.2d 866, 870 (1990)). "The General Assembly has given circuit courts the discretion to determine the equitable distribution of marital assets in connection with a divorce. Its discretion is limited only in that the circuit court must consider all of the factors in Code § 20-107.3(E)." Id. at 842, 667 S.E.2d at 862.

In this case, the circuit court reviewed all the evidence regarding the parties' property, including husband's testimony about wife's inheritance. The circuit court found wife's evidence was more credible and rejected husband's testimony regarding the inheritance, stating, "For the most part, I did not find [husband] to be credible or forthcoming . . . ."

"It is well established that the trier of fact ascertains a witness' credibility, determines the weight to be given to their testimony, and has discretion to accept or reject any of the witness' testimony." Layman, 62 Va. App. at 137, 742 S.E.2d at 891 (quoting Street v. Street, 25 Va. App. 380, 387, 488 S.E.2d 665, 668 (1997) (en banc)). The circuit court did not abuse its discretion in rejecting husband's testimony about the inheritance.

Husband also challenges the equitable distribution award on the ground that the circuit court improperly failed to consider his evidence. As discussed above, the circuit court did not err in refusing to admit husband's evidence. Rather, as the circuit court advised husband, "Your evidence did not come in because it was not presented. It's not because I kept it out, sir. You did not present it properly nor did your attorney." In short, husband had the opportunity to present his case and, in fact, testified at length at the equitable distribution hearing.

The record clearly indicates that the circuit court considered the Code § 20-107.3(E) factors and reviewed the factors with the parties. The circuit court explained that it found their monetary and nonmonetary contributions to the family and to the acquisition, care, and maintenance of the marital property to be equal. The circuit court considered the duration of the marriage and the parties' ages. It found that the parties appeared to be in good physical and mental health, although husband had "trouble following the court's admonishment" and was ordered to submit to a psychological evaluation before he would be allowed to have visitation with the children. The circuit court reviewed the circumstances of the dissolution of the marriage and found that "this marriage was not built on love or trust." Then, the circuit court classified and valued the marital property and debt. The circuit court indicated that it considered the liquid and nonliquid character of the property and found there was no evidence presented as to the tax consequences. Based on the facts and circumstances of the case, the circuit court decided to sell the real estate. It gave husband several opportunities to tell the court his position on the real estate, but he never responded to the court's questions. Therefore, in consideration of the assignments of error presented, the circuit court did not err.

*Motion for new trial and to re-open the evidence*[8]

Husband argues that the circuit court erred when it refused to order a new equitable distribution trial and admit his exhibits and evidence after he informed the court on the second day of the trial that he had fired his attorney.

The circuit court scheduled a two-day equitable distribution trial. On June 20, 2017, the parties presented their evidence and, at the end of the day, both parties rested their cases. On June 21, 2017, the parties returned to present their closing arguments. At the beginning of the hearing, husband's counsel informed the circuit court that husband wished to proceed *pro se* and make his own closing argument. Husband did not request a continuance or move for a new trial.

Before husband began his closing argument, the circuit court reminded him that "there [was] no new evidence at this stage, that this is only argument on what evidence has been presented." Husband was permitted to present his closing argument, and the circuit court asked him several times for his position about the real estate. Husband refused to answer the question and insisted upon presenting additional evidence, which the circuit court denied. The circuit court explained that husband was "going to have to argue with the evidence that has been presented." Husband repeatedly tried to tell the court why he fired his attorney, but the circuit court told him that it did not need to know his reasoning because it was a matter between him and his attorney.

---

[8] In his fifteenth assignment of error, husband argues that the circuit court abused its discretion "by not enforcing the post-nuptial agreement between the parties or at least considering it in equitable distribution." In the argument section of his brief, husband presented the twelfth, thirteenth, fourteenth, and fifteenth assignments of error together; however, he did not address the specifics of the fifteenth assignment of error and why the circuit court abused its discretion by not enforcing the post-nuptial agreement or considering it during equitable distribution. Therefore, we find that husband waived this assignment of error. See Muhammad, 269 Va. at 478, 619 S.E.2d at 31.

Husband complained that, on the previous day, he had not been allowed to present the 116 documents he identified as exhibits; however, his counsel had not moved the exhibits into evidence. Husband's request to reopen the hearing, arguing that the court had "to have a hearing on this [sic] 116 exhibits," was denied, the court reiterating that the evidentiary hearing had concluded. Husband responded, "That is your choice, Your Honor, I am not questioning Your choice, Your Honor."

Shortly thereafter, husband again attempted to present his 116 exhibits, but the circuit court repeated that the trial was over and asked him one last time for his position about the five properties that were at issue in its determination of the equitable distribution issues. When husband did not answer the question, the circuit court concluded the hearing and stated that it would announce its decision from the bench on June 26, 2017. Husband then asked the circuit court if it would allow him to speak and present his exhibits. The circuit court stated, "Sir, let me explain something, you are not a lawyer and you don't understand the rules of the Circuit Court. We have had the hearing, we have gone all the way through rebuttal, and this was for closing arguments only, not presentation of evidence." Husband complained that none of his witnesses had appeared the previous day. The circuit court responded, "Sir, it was tried, and you didn't do it well either. We are in recess." The circuit court pronounced its judgment on June 26, 2017 and memorialized the ruling in an order entered on July 26, 2017.

On July 19, 2017, husband filed a post-trial motion for a new trial so that he could present additional evidence. On September 5, 2017, the circuit court denied husband's motion for a new trial.

"Motions to reopen a hearing to take further evidence are matters within the court's discretion." Shooltz v. Shooltz, 27 Va. App. 264, 269, 498 S.E.2d 437, 439 (1998). "Usually, such motions are based upon error apparent on the face of the record, or for the purpose of

introducing after-discovered evidence." Id. at 269, 498 S.E.2d at 439-40 (quoting Kirn v.

Bembury, 163 Va. 891, 901, 178 S.E. 53, 56 (1935)). "[C]ourts have also included among the

factors to be applied in the analysis whether a party seeking rehearing had 'ample opportunity to

present evidence' at the initial hearing . . . ." Id. at 269 n.1, 498 S.E.2d at 440 n.1 (quoting Rowe

v. Rowe, 24 Va. App. 123, 144, 480 S.E.2d 760, 770 (1997)); see also Holmes v. Holmes, 7

Va. App. 472, 480, 375 S.E.2d 387, 392 (1988).

In this case, husband had "ample opportunity" to present his evidence on June 20, 2017.

The circuit court did not abuse its discretion by refusing to allow husband to present additional

evidence on June 21, 2017, after both parties had rested their cases and were scheduled to present

closing arguments.

In addition, husband argues that the circuit court abused its discretion by not scheduling a

new trial to allow his accountant to testify. However, husband told the circuit court that the

accountant had not been present for the trial, and he rested his case without asking for a

continuance. Husband did not proffer the accountant's testimony. "In Virginia, when 'testimony

is rejected before it is delivered, an appellate court has no basis for adjudication unless the record

reflects a proper proffer.'" Ray v. Commonwealth, 55 Va. App. 647, 649, 688 S.E.2d 879, 880

(2010) (quoting Whittaker v. Commonwealth, 217 Va. 966, 968, 234 S.E.2d 79, 81 (1977)).

"When an appellant claims a trial court abused its discretion in excluding evidence, we cannot

competently determine error – much less reversible error – without a proper showing of what

that testimony would have been." Id. (quoting Tynes v. Commonwealth, 49 Va. App. 17, 21,

635 S.E.2d 688, 689 (2006)). Since husband did not proffer the accountant's testimony, this

Court is unable to review this argument.

*Custody and visitation*

Husband argues that the circuit court erred by awarding sole custody of the children to wife and denying him visitation with his children until he undergoes a psychological evaluation by Dr. Farber.[9]

"[T]here is a presumption on appeal that the trial court thoroughly weighed all the evidence, considered the statutory requirements, and made its determination based on the child's best interests." D'Ambrosio v. D'Ambrosio, 45 Va. App. 323, 335, 610 S.E.2d 876, 882 (2005). "As long as evidence in the record supports the trial court's ruling and the trial court has not abused its discretion, its ruling must be affirmed on appeal." Brown v. Brown, 30 Va. App. 532, 538, 518 S.E.2d 336, 338 (1999).

The circuit court heard evidence on February 7 and 8, 2017, to determine custody and visitation. At the conclusion of the hearing, the circuit court reviewed the Code § 20-124.3 factors. The circuit court found husband to be "extremely agitated and frequently . . . unable to answer questions of the attorneys in a direct, calm and coherent way." The circuit court explained that the "videos and emails entered into evidence demonstrate that [husband] is capable of extreme hostility towards [wife], and does not communicate with her in a civil way about the children." The circuit court also found that while wife has a "loving and nurturing relationship with her children," husband "exhibits anger and hostility in the presence of his children and rants about their mother." In addition, the circuit court found that there was no evidence that husband was trying to foster a relationship between wife and the children. The

---

[9] Wife argues that husband did not preserve this issue pursuant to Rule 5A:18 because he did not note any objections to the final order. However, husband raised the issue in closing argument, and he filed a motion to reconsider. In a bench trial, an appellant can preserve his issues for appeal in a motion to strike, in closing argument, in a motion to set aside the verdict, or in a motion to reconsider. Lee v. Lee, 12 Va. App. 512, 515, 404 S.E.2d 736, 738 (1991) (*en banc*). Therefore, we find that husband preserved his arguments for appeal.

- 21 -

circuit court expressed "grave concerns about the psychological well-being of [husband] at this time based on his demeanor in Court, the videos in evidence and the emails in evidence." The circuit court awarded sole legal and physical custody of the children to wife. It also ordered husband to undergo a "full-scale psychological evaluation" and appointed a guardian *ad litem*. The circuit court did not award husband any visitation, but advised husband that he could file a motion for visitation after the court received the psychological evaluation and the guardian *ad litem*'s report.

Husband argues that the circuit court's findings were "clearly erroneous [and] against the weight of the evidence." Husband challenges the credibility of wife's testimony and claims that the circuit court did not consider all of his evidence. The circuit court did not credit husband's testimony. See Layman, 62 Va. App. at 137, 742 S.E.2d at 891. "This Court is bound by the credibility findings of the circuit court." Tackett v. Arlington Cty. Dep't of Human Servs., 62 Va. App. 296, 339, 746 S.E.2d 509, 530 (2013).

Contrary to husband's arguments, the record supports the circuit court's rulings. We find that the circuit court did not abuse its discretion in awarding sole custody to wife and not awarding visitation to husband.

Finally, husband does not provide any legal authority to support his argument that the circuit court erred in ordering him to undergo a psychological evaluation by a particular therapist and to pay for the evaluation. Rule 5A:20(e) mandates that appellant's opening brief include "[t]he standard of review and the argument (including principles of law and authorities) relating to each assignment of error." Husband did not comply with Rule 5A:20(e) because his opening brief does not contain any principles of law or citation to legal authorities to fully develop his argument. Husband has the burden of showing that reversible error was committed. See Burke v. Catawba Hosp., 59 Va. App. 828, 838, 722 S.E.2d 684, 689 (2012). "Unsupported assertions

of error do not merit appellate consideration." Fox v. Fox, 61 Va. App. 185, 199-200, 734

S.E.2d 662, 669 (2012) (quoting Jones v. Commonwealth, 51 Va. App. 730, 734, 660 S.E.2d

343, 345 (2008)). We find that husband's failure to comply with Rule 5A:20(e) is significant, so

we will not consider this argument. See Fadness, 52 Va. App. at 851, 667 S.E.2d at 866 ("If the

parties believed that the circuit court erred, it was their duty to present that error to us with legal

authority to support their contention."); Parks v. Parks, 52 Va. App. 663, 664, 666 S.E.2d 547,

548 (2008).

*Husband's testimony*

Husband argues that the circuit court erred by "pervasively prevent[ing] [husband] from

testifying by improperly limiting his attempts to lay a foundation and place his answers in

context, while giving [wife] wide latitude." Husband asserts that some of his testimony was

"improperly clouded by improper objections that the testimony was 'non-responsive.'" He also

claims that he was "badgered with inconsistent objections of not laying a foundation yet then

having his answers struck when he was laying that foundation." Furthermore, he argues that "it

is impossible to read through the testimony without being struck by the inconsistent treatment of

[his] testimony." Husband does not provide any specific examples or citations to the record.

"Virginia courts have consistently held that 'the conduct of a trial is committed to the

sound discretion of the trial court.'" Via v. Commonwealth, 42 Va. App. 164, 181, 590 S.E.2d

583, 591 (2004) (quoting Justus v. Commonwealth, 222 Va. 667, 676, 283 S.E.2d 905, 910

(1981), cert. denied, 455 U.S. 983 (1982)). "[C]ases should not be reversed merely because the

judge was impatient, or because he of his own motion ruled out improper testimony and objected

to unnecessary repetition; even tilts with counsel are not sufficient." Id. at 182, 590 S.E.2d at

591-92 (quoting Parsons v. Commonwealth, 154 Va. 832, 852-53, 152 S.E. 547, 554 (1930)).

"To warrant a reversal [the error] must be substantial; otherwise litigation would be

interminable." Id. at 182, 590 S.E.2d at 592 (quoting Parsons, 154 Va. at 852-53, 152 S.E. at 554). "This court has no duty to deduce bias from the record." Cunningham v. Commonwealth, 2 Va. App. 358, 365, 344 S.E.2d 389, 393 (1986).

As we did in Via, "[w]e find no such substantial prejudice here, nor has [husband] alleged any specific prejudice." Via, 42 Va. App. at 182, 590 S.E.2d at 592. Moreover, husband has not proffered the testimony that was excluded from testimony; therefore, we cannot determine if the circuit court made any error in sustaining the objections. Ray, 55 Va. App. at 649, 688 S.E.2d at 880. In reviewing the totality of the record, we do not find that that there was any bias or inconsistent treatment of husband.

*Attorney's fees*

Wife asks this Court to award her attorney's fees incurred on appeal. See O'Loughlin v. O'Loughlin, 23 Va. App. 690, 695, 479 S.E.2d 98, 100 (1996). Having reviewed and considered the entire record in this case, we hold that wife is entitled to a reasonable amount of attorney's fees, and we remand for the circuit court to set a reasonable award of attorney's fees and costs incurred by wife in this appeal. Rule 5A:30(b).

## CONCLUSION

For the foregoing reasons, the circuit court's ruling is affirmed. We remand this case to the trial court for determination and award of the appropriate appellate attorney's fees, which also should include any additional attorney's fees incurred at the remand hearing.

Affirmed and remanded.

# EXHIBIT C

**V I R G I N I A:**

## IN THE CIRCUIT COURT OF FAIRFAX COUNTY

CHRISTINE POURBABAI, )
)
    Plaintiff, )
v. )    CL No. 2015-16966
)
BEN POURBABAI, )
)
    Defendant. )

### ORDER APPOINTING COMMISSIONER OF SALE

THIS MATTER came before the Honorable Court for entry of an Order appointing a Commissioner of Sale to oversee the sale of the properties identified herein in accordance with the Order of this Court entered on July 26, 2017; and

IT APPEARING TO THE COURT that the Commissioner of Sale appointed herein shall supervise the sale of the following properties titled in the name of Ben Pourbabai: *to effect The division of The former spouses' property* *(u3)*

    1.  House located at 1077 Papermill Court, N.W., Washington, D.C. 20007; and

    2.  House located at 328 Reservoir Road, N.W., Washington D.C. 20007; and

    3.  House located at 3661 Winfield Lane, N.W., Washington D.C. 20007; and

    4.  House located at 6329 Winfield Lane, N.W., Washington D.C. 20007.

ADJUDGED, ORDERED and DECREED that Kyle E. Skopic, Esquire is hereby appointed as Commissioner of Sale to effectuate the sale of the aforementioned properties and in furtherance thereof:

    1.    The Commissioner of Sale is hereby granted the sole and exclusive authority to offer the aforementioned properties for sale by soliciting offers for purchase privately, publicly, or through the use of a real estate broker of her selection and choosing provided that the broker is licensed to engage in the sale of real property in the jurisdiction where the property is located.

12/1/2017    CC - conforming copy

All listing agreements shall state that all offers to purchase and/or sales contracts shall be subject to approval by the Circuit Court of Fairfax County.

2.      The Commissioner of Sale shall offer the properties for sale at or above fair market value.

3.      The properties shall be sold "as is" without warranties of any kind, and conveyance shall be by Special Warranty Deed, and all listing agreements shall set forth said terms.

4.      The Commissioner of Sale shall timely move the Court for consideration of all reasonable offers to purchase any of the properties and shall procure an Order either accepting or rejecting any reasonable offer to purchase the property.

5.      The Commissioner of Sale is hereby authorized and empowered to sign all documents necessary to market the above-listed properties.

6.      The Commissioner of Sale shall make periodic reports to the Court as to the efforts to sell the properties.

7.      The Commissioner of Sale shall have standing in this cause to apply to the Court for Orders necessary to further the sale of the subject properties; and it is further

ADJUDGED, ORDERED and DECREED that the owners and occupants of the subject properties are hereby directed to cooperate with the Commissioner of Sale and that:

1.      The Commissioner of Sale and her agents (including, but not limited to, real estate agents, inspectors, repair persons, etc.) are hereby granted reasonable access to the subject properties.

2.      Ben Pourbabai shall provide the Commissioner of Sale with a key(s) to allow access to each property no later than close of business on December 8, 2017. If key(s) are not

timely provided, then the Commissioner of Sale is hereby authorized to retain the services of a locksmith, and if necessary, to change the locks to allow access to the subject properties.

3.     The owner(s) and occupant(s) of the each property are hereby commanded to cooperate with the reasonable requests of the Commissioner of Sale in furtherance and in fulfillment of her duties and responsibilities in connection with the sale of the subject properties (for example, allowing prospective purchasers access to each property, allowing the placement of a realtor's lock-box and "For Sale" sign(s) on the property, etc.).

THIS MATTER IS HEREBY CONTINUED.

Entered this _13_ day of _December_, 2017.

_____
JUDGE

I ASK FOR THIS:

_____
Kyle E. Skopic, Esquire (VSB 27836)
Law Office of Kyle E. Skopic, PLLC
10511 Judicial Drive, Suite 107
Fairfax, Virginia 22030
Phone:  (703) 246-9530; Fax: 246-9531
Email: Kyle@Skopiclaw.com
Commissioner of Sale

SEEN AND AGREED:

_____
Fred M. Rejali, Esquire (VSB #38127)
Law Offices of Fred M. Rejali
1750 Tysons Boulevard, #1500
McLean, Virginia 22102
(703) 383-4848
Fax: (703) 677-3148
fredrejali@gmail.com
Counsel for Plaintiff

. SEEN AND ~~AGREED:~~ OBJECTED to, including to respect The rights under The lease of tenants as much as possible

_Jonathon A. Moseley, Esquire (VSB #41058)_
3823 Wagon Wheel Lane
Woodbridge, Virginia 22192
(703) 656-1230
Fax: (703) 783-0449
Contact@Jonmoseley.com
Counsel for Defendant

A COPY TESTE:
JOHN T. FREY, CLERK

BY: _____ _nrk Wh__
Deputy Clerk
Date: __2/6/2017__
Original retained in the office of
the Clerk of the Circuit Court of
Fairfax County, Virginia

# EXHIBIT D

DocuSign Envelope ID: C76DD035-0804-4E55-8799-5313DEBA9F88

  

# GCAAR Sales Contract
## TIME IS OF THE ESSENCE AS TO ALL TERMS OF THIS CONTRACT.

This SALES CONTRACT ("Contract") is made on 10/04/2018 _____ ("Date of Offer")
between Calvin Minasian and Hasmik Martirosyan _____ ("Buyer")
and Christine P Pourbabai *by Kyle E · SKOPIC, Commissioner of Sale* _____ ("Seller") who,
among other things, hereby confirm and acknowledge by their initials and signatures herein that by prior
disclosure in this real estate transaction Compass Real Estate _____ ("Listing
Company") represents Seller, and
Keller Williams Capital Properties _____
("Selling Company") represents ☑ **Buyer** OR ☐ **Seller**. The Listing Company and Selling Company are
collectively referred to as "Broker." (If the Broker is acting as a dual representative for both Seller and Buyer,
then the appropriate disclosure form is attached to and made a part of this Contract.) In consideration of the
mutual promises and covenants set forth below, and other good and valuable consideration the receipt and
sufficiency of which is acknowledged, the parties agree as follows:

**1. REAL PROPERTY:** Buyer will buy and Seller will sell for the sales price ("Sales Price"), Seller's entire
interest in the real property (with all improvements, rights and appurtenances) described as follows ("Property"):
Street Address 1077 Paper Mill Court NW _____
Unit #1077 ___ City Washington _____ State DC _____ Zip Code 20007 _____
Condominium/Cooperative Project Name Georgetown _____
Parking Space(s) # incl (1) _____ Storage Unit # _____
Legal Description: Lot(s) 2055 _____ Block/Square 1187 _____ Section _____
Subdivision Georgetown _____ Tax Account # 1187//2055 _____

**2. JURISDICTIONAL ADDENDUM:** The following Jurisdictional Addendum, if ratified and attached, is made
a part of this Contract. Jurisdictional Addendum for ☑ **DC** ☐ **MD/County:** _____

**3. PRICE AND FINANCING:** (All percentages refer to percent of Sales Price.)

| | | | |
|---|---|---|---|
| **A. Down Payment** | | $300,000.00 | % |
| **B. Financing** | 1. First Trust (if applicable) | $510,000.00 | % |
| | 2. Second Trust (if applicable) | | % |
| | 3. Seller Held Trust | | % |
| | (if applicable, addendum attached) | *$847,000* | |
| | **TOTAL FINANCING** | $510,000.00 | % |
| | **SALES PRICE** | $810,000.00 | |

**C. First Deed of Trust** Buyer will ☑ **Obtain** OR ☐ **Assume** a ☐ **Fixed** OR an ☐ **Adjustable** rate
First Deed of Trust loan of the following type:

☑ **Conventional**    See Addendum Attached     ☐ **This contract is not contingent on Financing.**
☐ **FHA**           See Addendum Attached     ☐ **Other:** _____
☐ **VA**             See Addendum Attached

**D. Second Deed of Trust** Buyer will ☐ **Obtain** OR ☐ **Assume** a ☐ **Fixed** OR an ☐ **Adjustable** rate
Second Deed of Trust loan.

**E. Assumption Only** Assumption fee, if any, and all charges related to the assumption will be paid by Buyer.
If Buyer assumes Seller's loan(s): (i) Buyer and Seller ☐ will OR ☐ will not obtain a release of Seller's
liability to the financial institution or U.S. Government for the repayment of the loan by Settlement, (ii) Buyer
and Seller ☐ will OR ☐ will not obtain substitution of Seller's VA entitlement by Settlement. Balances of
any assumed loans, secondary financing and cash down payments are approximate.

**4. DEPOSIT:** Buyer's deposit ("Deposit") in the amount of $25,000.00 _____ shall be held by CLA Title _____ ("Escrow Agent"). Buyer ☐ has delivered the Deposit OR ☑ Buyer will deliver the Deposit within 3 ___ days after Date of Ratification. (If the Property is in Maryland and Broker is the Escrow Agent, the Deposit must be delivered to Escrow Agent within 3 days of the Date of Ratification.) The Deposit will be placed in an escrow account of the Escrow Agent after Date of Ratification in conformance with the laws and regulations of the appropriate jurisdiction and/or, if VA financing applies, as required by Title 38 of the U.S. Code. This account may be interest bearing and all parties waive any claim to interest resulting from the Deposit. The Deposit will be held in escrow until: (i) credited toward the Sales Price at Settlement; (ii) all parties have agreed in writing as to its disposition; (iii) a court of competent jurisdiction orders disbursement and all appeal periods have expired; or, (iv) disposed of in any other manner authorized by the laws and regulations of the appropriate jurisdiction. Seller and Buyer agree that Escrow Agent will have no liability to any party on account of disbursement of the Deposit or on account of failure to disburse the Deposit, except in the event of the Escrow Agent's gross negligence or willful misconduct.

**5. FUNDS DUE AT SETTLEMENT:** The balance of the funds due at Settlement from Buyer and/or Seller will be paid on or before the Settlement Date. Buyer and/or Seller shall verify with Settlement Agent how funds due at Settlement are to be paid. An assignment of funds shall not be used without prior written consent of all parties to the transaction.

**6. SETTLEMENT:** Seller and Buyer will perform in accordance with the terms of this Contract ("Settlement") on 11/16/2018 _____ ("Settlement Date") except as otherwise provided in this Contract. Buyer selects CLA Title _____ ("Settlement Agent") to conduct the Settlement. Buyer agrees to contact the Settlement Agent within 10 Days after the Date of Ratification to schedule Settlement and to place a title order.

**7. PROPERTY MAINTENANCE AND CONDITION:** Except as otherwise specified herein, Seller will deliver the Property at Settlement vacant, free and clear of trash and debris, broom clean and in substantially the same physical condition to be determined as of ☐ **Date of Offer** OR ☑ **Date of home inspection** OR ☐ **Other:** _____. Seller will have all utilities in service through Settlement or as otherwise agreed. Buyer and Seller will not hold the Broker liable for any breach of this paragraph.

Buyer acknowledges, subject to Seller acceptance, that this Contract may be contingent upon home inspection(s) and/or other inspections to ascertain the physical condition of the Property. If Buyer desires one or more inspection contingencies, such contingencies must be included in an addendum to this Contract.

☑ This Contract is contingent upon home inspection(s) and/or other inspections. (Addendum Attached)
OR
☐ Buyer declines the opportunity to make Contract contingent upon home inspection(s) and/or other inspections.

Buyer acknowledges that except as otherwise specified in this Contract, the Property, including electrical, plumbing, existing appliances, heating, air conditioning, equipment and fixtures shall convey in its **AS-IS CONDITION** as of the date specified above. Buyer further acknowledges that neither the Brokers and/or their agents nor subagents are responsible for Property defects.

**8. ACCESS TO PROPERTY:** Seller will provide the Broker, Buyer, inspectors representing Buyer and representatives of lending institutions for Appraisal purposes reasonable access to the Property to comply with this Contract. In addition, Buyer and/or Buyer's representative will have the right to make a final inspection within 5 days prior to Settlement and/or occupancy, unless otherwise agreed to by Buyer and Seller.

**9. INCLUSIONS/EXCLUSIONS:** The Property includes the personal property and fixtures as defined and identified in the attached Inclusions/Exclusions Disclosure and Addendum.

**10. HOME WARRANTY:** ☐ Yes OR ☑ No
Home warranty policy paid for and provided at Settlement by: ☐ **Buyer** OR ☐ **Seller**
Cost not to exceed $ _____. Warranty provider to be _____

**11. BUYER'S REPRESENTATIONS:** Buyer ☑ **will** OR ☐ **will not** occupy the Property as Buyer's principal residence. **Unless specified in a written contingency, neither this Contract nor the financing is dependent or contingent on the sale and settlement or lease of other real property.** The Selling Company ☑ **is** OR ☐ **is not** authorized to disclose to the Listing Company, Seller and any lender the appropriate financial or credit information statement provided to the Selling Company by Buyer. Buyer acknowledges that Seller is relying upon all of Buyer's representations, including without limitation, the accuracy of financial or credit information given to Seller, Broker or the Lender by Buyer.

**12. WOOD-DESTROYING INSECT INSPECTION:** Buyer at Buyer's expense (except under VA financing, then at Seller's expense) may choose to obtain a wood-destroying insect inspection of the Property by a licensed pest control firm. If Buyer elects to do so, Buyer will furnish to Seller a written report from the licensed pest control firm dated not more than 60 days prior to Settlement showing that all dwelling(s) and/or garage(s) within the Property are free of visible evidence of any wood-destroying insects, and free from visible insect damage. Any treatment and/or repairs for damage recommended in the licensed pest control firm's report will be made at Seller's expense. Said treatment shall be completed by a licensed pest control firm and said repairs shall be completed by a contractor licensed in the appropriate jurisdiction.

**13. LEAD-BASED PAINT REGULATIONS:** Federal law requires sellers of properties built before 1978 to provide buyers with the required federal disclosure regarding lead paint (GCAAR form "Lead Paint--Federal Disclosure") and the EPA pamphlet "Protect Your Family from Lead in Your Home". In addition, for District of Columbia properties built before 1978, sellers are required to provide buyers the District of Columbia Lead Disclosure (GCAAR form "Lead Paint--DC Disclosure"). A seller who fails to provide the required local and federal lead-based paint forms, including the EPA pamphlet, may be liable under the law for three times the amount of damages and may be subject to both civil and criminal penalties. Seller and any agent involved in the transaction are required to retain a copy of the completed lead-based paint disclosure forms for a period of six (6) years following the date of Settlement. If the dwelling(s) was built prior to 1978 or if the building date is uncertain and the Property is not exempt from the Residential Federal Lead-Based Paint Hazard Reduction Act of 1992, this Contract is voidable by Buyer until Buyer acknowledges receipt of the required federal lead-based paint form, including the EPA pamphlet, and DC Lead Disclosure if applicable, and has either taken the opportunity to incorporate a Lead-Based Paint Inspection contingency or waived such right. Buyer retains the right to unconditionally, and without risk of loss of Deposit or other adverse effects, declare Contract void until said acknowledgement occurs. Seller and Buyer acknowledge by their respective initials below that they have read and understand the provisions of this paragraph.

[VB] / _____ Seller's Initials __CH__ / __WH__ Buyer's Initials
                                   10/04/18   10/04/18
                                   2:14PM EDT  2:17PM EDT
                                   dotloop verified  dotloop verified

**Completed Lead-Based Paint forms are attached.** ☑ **Yes** ☐ **No** ☐ **N/A**

In accordance with the Lead Renovation, Repair and Painting Rule ("RRP") as adopted by the Environmental Protection Agency ("the EPA"), effective April 22, 2010, if the improvements on the Property were built before 1978, contractor(s) engaged by Seller to renovate, repair or paint the Property must be certified by the EPA where such work will disturb more than six square feet of lead-based paint per room for interior projects, more than 20 square feet of lead-based paint for any exterior project, or includes window replacement or demolition ("Covered Work"). Before and during any Covered Work, contractor(s) must comply with all requirements of the RRP. A seller who personally performs any Covered Work on a rental property is required to be certified by the EPA prior to performing such Covered Work. No certification is required for a seller who personally performs Covered Work on a seller's principal residence. However, seller has the ultimate responsibility for the safety of seller's family or children while performing such Covered Work. For detailed information regarding the RRP, Seller should visit http://www2.epa.gov/lead/renovation-repair-and-painting-program. The Seller and Buyer acknowledge that they have read and understand the provisions of this section.

[VB] / _____ Seller's Initials __CH__ / __WH__ Buyer's Initials
                                   10/04/18   10/04/18
                                   2:14PM EDT  2:17PM EDT
                                   dotloop verified  dotloop verified

**14. FINANCING APPLICATION:** If this Contract is contingent on financing, Buyer will make written application for the Specified Financing and any Lender required property insurance no later than 7 days after the Date of Ratification. Buyer grants permission for the Selling Company and the Lender to disclose to the Listing Company and Seller general information about the progress of the loan application and loan approval process. If Buyer fails to settle except due to any Default by Seller, then the provisions of the DEFAULT paragraph shall apply. Seller agrees to comply with reasonable Lender requirements except as otherwise provided in the LENDER REQUIRED REPAIRS paragraph of the applicable financing contingency addendum.

**15. ALTERNATE FINANCING:** Buyer may substitute alternate financing and/or an alternate lender for Specified Financing provided: (a) Buyer is qualified for alternative financing; (b) there is no additional expense to Seller; (c) the Settlement Date is not delayed; and (d) if Buyer fails to perform at Settlement except due to any Default by Seller, then the provisions of the DEFAULT paragraph shall apply.

**16. DAMAGE OR LOSS:** The risk of damage or loss to the Property by fire, act of God, or other casualty remains with Seller until the execution and delivery of the Deed of conveyance to Buyer at Settlement.

**17. TITLE:** The title report and survey, if required, will be ordered pursuant to the terms in Settlement paragraph and, if not available on the Settlement Date, then Settlement may be delayed for up to 10 Business Days to obtain the title report and survey after which this Contract, at the option of Seller, may be terminated and the Deposit will be refunded in full to Buyer according to the terms of the DEPOSIT paragraph. Fee simple title to the Property, and everything that conveys with it, will be sold free of liens except for any loans assumed by Buyer. Title is to be good and marketable, and insurable by a licensed title insurance company with no additional risk premium. Title may be subject to commonly acceptable easements, covenants, conditions and restrictions of record, if any; otherwise, Buyer may declare this Contract void, unless the defects are of such character that they may be remedied within 30 Days beyond the Settlement Date. In case action is required to perfect the title, such action must be taken promptly by Seller at Seller's expense. The Broker is hereby expressly released from all liability for damages by reason of any defect in the title. Seller will convey the Property by Special Warranty Deed or by Personal Representative's Deed in the event Seller is a decedent's estate ("Deed"). Seller will sign such affidavits, lien waivers, tax certifications, and other documents as may be required by the Lender, title insurance company, Settlement Agent, or government authority, and authorizes the Settlement Agent to obtain pay-off or assumption information from any existing lenders. The manner of taking title may have significant legal and tax consequences. Buyer is advised to seek the appropriate professional advice concerning the manner of taking title. Unless otherwise agreed to in writing, Seller will pay any special assessments and will comply with all orders or notices of violations of any county or local authority, condominium unit owners' association, and/or homeowners' association or actions in any court on account thereof, against or affecting the Property on the Settlement Date. The parties authorize and direct the Settlement Agent to provide a copy of the Combined Settlement Statement to Seller, Buyer, Listing Company, Selling Company, Homeowner/Condominium Association, Relocation Company and/or any third-party payees reflected on the Settlement Statement."

**18. POSSESSION DATE:** Unless otherwise agreed to in writing between Seller and Buyer, Seller will give possession of the Property at Settlement, including delivery of keys, if any. If Seller fails to do so and occupies the Property beyond Settlement, Seller will be a tenant at sufferance of Buyer and hereby expressly waives all notice to quit as provided by law. Buyer will have the right to proceed by any legal means available to obtain possession of the Property. Seller will pay any damages and costs incurred by Buyer including reasonable Legal Expenses.

**19. FEES:** Fees for the preparation of the Deed, that portion of the Settlement Agent's fee billed to Seller, costs of releasing existing encumbrances, Seller's legal fees and any other proper charges assessed to Seller will be paid by Seller. Fees for the title exam (except as otherwise provided), survey, recording (including those for any purchase money trusts) and that portion of the Settlement Agent's fee billed to Buyer, Buyer's legal fees and any other proper charges assessed to Buyer will be paid by Buyer. Fees to be charged will be reasonable and customary for the jurisdiction in which the Property is located. (Recording and Transfer Taxes are covered in the appropriate jurisdictional addendum.)



**20. BROKER'S FEE:** Seller irrevocably instructs the Settlement Agent to pay the Broker compensation ("Broker's Fee") at Settlement as set forth in the listing agreement and to disburse the Broker's Fee offered by the Listing Company to the Selling Company as set forth in the multiple listing service as of the Date of Offer, and any remaining amount of Broker's Fee to the Listing Company.

**21. ADJUSTMENTS:** Adjustments, including but not limited to, rents, taxes, water and sewer charges, front foot benefit and house connection charges, condominium/cooperative unit owners' association and/or homeowners' association regular periodic assessments (if any), are to be adjusted to the day of Settlement. Any heating or cooking fuels remaining in supply tank(s) at Settlement will become the property of Buyer. Taxes are to be adjusted according to the information provided by the collector of taxes except that recorded assessments for improvements completed prior to Settlement, whether assessments have been levied or not, will be paid by Seller. If a loan is assumed, interest will be adjusted to the Settlement Date and Buyer will reimburse Seller for any existing escrow accounts.

**22. DISPUTES:** In the event of any dispute between Seller and Broker and/or Buyer and Broker resulting in Broker or any agents, subagents or employees of Broker being made a party to such dispute, including but not limited to, any litigation, arbitration, or complaint and claim before the applicable Real Estate Commission, whether as defendant, cross-defendant, third-party defendant or respondent, Seller and Buyer, jointly and severally, agree to indemnify and hold Broker and any agents, subagents and employees of Broker harmless from any liability, loss, cost, damage or expense (including but not limited to, filing fees, service of process fees, transcript fees and Legal Expenses), resulting therefrom, provided that such dispute does not result in a judgment or decision against Broker, Broker's agents, subagents or employees for acting improperly.

**23. LEGAL EXPENSES:**
A. In any action or proceeding between Buyer and Seller based, in whole or in part, upon the performance or non-performance of the terms and conditions of this Contract, including but not limited to, breach of contract, negligence, misrepresentation or fraud, the prevailing party in such action or proceeding shall be entitled to receive reasonable Legal Expenses from the other party as determined by the Court or arbitrator.
B. In the event a dispute arises resulting in the Broker (as used in this paragraph to include any agent, licensee, or employee of the Broker) being made a party to any litigation by Buyer or by Seller, the parties agree that the party who brought the Broker into litigation shall indemnify the Broker for all of its reasonable Legal Expenses incurred, unless the litigation results in a judgment against the Broker.

**24. PERFORMANCE:** Delivery of the required funds and executed documents to the Settlement Agent will constitute sufficient tender of performance. Funds from this transaction at Settlement may be used to pay off any existing liens and encumbrances, including interest, as required by lender(s) or lienholders.

**25. SELLER RESPONSIBILITY:** Seller agrees to keep existing mortgages free of default through Settlement. All violations of requirements noted or issued by any governmental authority, or actions in any court on account thereof, against or affecting the Property at Settlement, shall be complied with by Seller and the Property conveyed free thereof.

**26. DEFAULT: Buyer and Seller are required and agree to perform at Settlement in accordance with the terms of this Contract and acknowledge that failure to do so constitutes a breach hereof.** If Buyer fails to complete Settlement for any reason other than Default by Seller, at the option of Seller, the Deposit may be forfeited as liquidated damages (not as a penalty) in which event Buyer will be relieved from further liability to Seller. If Seller does not elect to accept the Deposit as liquidated damages, the Deposit may not be the limit of Buyer's liability in the event of a Default. If the Deposit is forfeited, or if there is an award of damages by a court or a compromise agreement between Seller and Buyer, the Broker may accept and Seller agrees to pay the Broker one-half of the Deposit in lieu of the Broker's Fee, (provided Broker's share of any forfeited Deposit will not exceed the amount due under the listing agreement).

If Seller fails to perform or comply with any of the terms and conditions of this Contract or fails to complete Settlement for any reason other than Default by Buyer, Buyer will have the right to pursue all legal or equitable remedies, including specific performance and/or damages.

If either Seller or Buyer refuses to execute a release of Deposit ("Release") when requested to do so in writing and a court finds that such party should have executed the Release, the party who so refused to execute the Release will pay the expenses, including without limitation, reasonable Legal Expenses, incurred by the other party in the litigation. Seller and Buyer agree that Escrow Agent will have no liability to any party on account of disbursement of the Deposit or on account of failure to disburse the Deposit, except in the event of the Escrow Agent's gross negligence or willful misconduct. The parties further agree that the Escrow Agent will not be liable for the failure of any depository in which the Deposit is placed and that Seller and Buyer each will indemnify, defend and save harmless the Escrow Agent from any loss or expense arising out of the holding, disbursement or failure to disburse the Deposit, except in the case of the Escrow Agent's gross negligence or willful misconduct.

If either Buyer or Seller is in Default, then in addition to all other damages, the defaulting party will immediately pay the Broker's Fee in full, as well as the costs incurred for the title examination, Appraisal, and survey.

**27. DISCLOSURES TO THE PARTIES: Buyer and Seller should carefully read this Contract to be sure that the terms accurately express their respective understanding as to their intentions and agreements. By signing this Contract, Buyer and Seller acknowledge that they have not relied on any representations made by the Brokers, or any agents, subagents or employees of the Brokers, except those representations expressly set forth in this Contract. Further, Brokers, their agents, subagents and employees do not assume any responsibility for the performance of this Contract by any or all parties hereto. The Broker can counsel on real estate matters, but if legal advice is desired by either party, such party is advised to seek legal counsel. Buyer and Seller are further advised to seek appropriate professional advice concerning the condition of the Property or tax and insurance matters.** The following provisions disclose some matters which the parties may investigate further. These disclosures are not intended to create a contingency. Any contingency must be specified by adding appropriate terms to this Contract. The parties acknowledge the disclosures contained herein and that the Brokers, their agents, subagents and employees, make no representations nor assume any responsibility with respect to the following:

A. **PROPERTY CONDITION** Various inspection services and home warranty insurance programs are available. The Broker is not advising the parties as to certain other issues, including without limitation: condition of real or personal property, water quality and quantity (including but not limited to, lead and other contaminants); sewer or septic; public utilities; lot size and exact location; soil condition; flood hazard areas; possible restrictions of the use of the Property due to restrictive covenants, zoning, subdivision, or environmental laws, easements; airport or aircraft noise; planned land use, roads or highways; and construction materials and/or hazardous materials, including without limitation, flame-retardant treated plywood (FRT), radon, urea formaldehyde foam insulation (UFFI), mold, polybutylene pipes, synthetic stucco (EIFS), underground storage tanks, defective Chinese drywall, asbestos and lead-based paint. Information relating to these issues may be available from appropriate government authorities.

B. **LEGAL REQUIREMENTS** All contracts for the sale of real property must be in writing to be enforceable. Upon ratification and Delivery, this Contract becomes a legally binding agreement. Any changes to this Contract must be made in writing, agreed to by all parties to the Contract, and Delivered to all parties for such changes to be enforceable.

C. **FINANCING** Mortgage rates and associated charges vary with financial institutions and the marketplace. Buyer has the opportunity to select the lender and the right to negotiate terms and conditions of the financing subject to the terms of this Contract.

D. **BROKER** Buyer and Seller acknowledge that the Broker is being retained solely as a real estate agent and not as an attorney, tax advisor, lender, appraiser, surveyor, structural engineer, mold or air quality expert, home inspector or other professional service provider. The Broker may from time to time engage in the general insurance, title insurance, mortgage loan, real estate settlement, home warranty and other real estate-related businesses and services. Therefore, in addition to the Broker's Fee specified herein, the Broker may receive compensation related to other services provided in the course of this transaction pursuant to the terms of a separate agreement/disclosure.

E. **PROPERTY TAXES** Your property tax bill could substantially increase following Settlement. For more information on property taxes, contact the appropriate taxing authority in the jurisdiction where the Property is located.

F. **PROPERTY INSURANCE** Obtaining property insurance is typically a requirement of the lender in order to secure financing. Insurance rates and availability are determined in part by the number and nature of claims and inquiries made on a property's policy as well as the number and nature of claims made by a prospective

buyer. Property insurance has become difficult to secure in some cases. Seller should consult an insurance professional regarding maintaining and/or terminating insurance coverage.

**G. TITLE INSURANCE** Buyer may, at Buyer's expense, purchase owner's title insurance. The coverage afforded by such title insurance would be governed by the terms and conditions thereof, and the premium for obtaining such title insurance coverage will be determined by the extent of its coverage. Buyer may purchase title insurance at either "standard" or "enhanced" coverage and rates. For purposes of owner's policy premium rate disclosure by Buyer's Lender(s), if any, Buyer and Seller require that enhanced rates be quoted by Buyer's Lender(s). Buyer understands that nothing herein obligates Buyer to obtain any owner's title insurance coverage at any time, including at Settlement, and that the availability of enhanced coverage is subject to underwriting criteria of the title insurer.

**28. ASSIGNABILITY:** This Contract may not be assigned without the written consent of Buyer and Seller. If Buyer and Seller agree in writing to an assignment of this Contract, the original parties to this Contract remain obligated hereunder until Settlement.

**29. FOREIGN INVESTMENT TAXES – FIRPTA:** Section 1445 of the United States Internal Revenue Code of 1986 provides that a buyer of a residential real property located in the United States must withhold federal income taxes from the payment of the purchase price if (a) the purchase price exceeds Three Hundred Thousand Dollars ($300,000.00) or the purchase price is less than or equal to Three Hundred Thousand Dollars ($300,000.00) and the property will not be owner occupied, and (b) seller is a foreign person for purposes of U.S. income taxation. A foreign person includes, but is not limited to, a non-resident alien, foreign corporation, foreign partnership, foreign trust or foreign estate (as those terms are defined by the Internal Revenue Code and applicable regulations). In the event Seller is a foreign person (as described above), the Seller will be subject to the withholding provisions of FIRPTA. If Seller is not a foreign person, Seller agrees to execute an affidavit to this effect at Settlement.

**30. DEFINITIONS:**
**A.** "Appraisal" means a written appraised valuation of the Property.
**B.** "Day(s)" or "day(s)" means calendar day(s) unless otherwise specified in this Contract.
**C.** "Business Days," whenever used, means Monday through Friday, excluding federal holidays.
**D.** For the purpose of computing time periods, the first Day will be the Day following Delivery and the time period will end at 6 p.m. on the Day specified.
**E.** If the Settlement Date falls on a Saturday, Sunday, or legal holiday, then the Settlement will be on the prior Business Day.
**F.** "Date of Ratification" This Contract shall be deemed ratified when the Contract, all addenda and any modifications thereto have been signed and initialed, where required, by all parties, and Delivered to the other party pursuant to the Notices paragraph.
**G.** The masculine includes the feminine and the singular includes the plural. "Buyer" means "Purchaser" and vice versa.
**H.** "Legal Expenses" means attorney fees, court costs, and litigation expenses, if any, including but not limited to, expert witness fees and court reporter fees.
**I.** "Specified Financing" means the financing as set forth in the financing addendum attached hereto.

**31. NOTICES:** Notice means a unilateral communication from one party to another. All Notices required under this Contract will be in writing. Notices to Seller shall be effective when Delivered to Seller or an agent of Seller named in the Contract or that agent's supervising Manager. Notices to Buyer shall be effective when Delivered to Buyer or an agent of Buyer named in the Contract or that agent's supervising Manager. "Delivery" means sent by wired or electronic medium which produces a tangible record of the transmission (such as "fax" or email which includes an attachment with an actual copy of the executed instruments being transmitted), hand carried, sent by overnight delivery service or U.S. Postal mailing. In the event of overnight delivery service, Delivery will be deemed to have been made on the next Business Day following the sending, unless earlier receipt is acknowledged in writing. In the event of U.S. Postal mailing, Delivery will be deemed to have been made on the third Business Day following the mailing, unless earlier receipt is acknowledged in writing. The provisions of this paragraph regarding Delivery of Notices shall also be applicable to Delivery of resale packages for condominiums, co-operatives and/or homeowners associations as may be required in a separate addendum. Resale

packages may also be Delivered to the parties identified above by Seller or agent of Seller through an electronic link provided by the management association.

**32. MISCELLANEOUS:** This Contract may be signed in one or more counterparts, each of which is deemed to be an original, and all of which together constitute one and the same instrument. Documents obtained via fax or as a PDF attachment to an email will also be considered as originals. Typewritten or handwritten provisions included in this Contract will supersede all pre-printed provisions that are in conflict.

**33. VOID CONTRACT:** If this Contract becomes void and of no further force and effect, without Default by either party, both parties will immediately execute a Release directing that the Deposit be refunded in full to Buyer according to the terms of the DEPOSIT paragraph.

**34. ENTIRE AGREEMENT:** This Contract will be binding upon the parties and each of their respective heirs, executors, administrators, successors and permitted assigns. The provisions not satisfied at Settlement will survive the delivery of the Deed and will not be merged therein. This Contract, unless amended in writing, contains the final and entire agreement of the parties and the parties will not be bound by any terms, conditions, oral statements, warranties or representations not herein contained. The interpretation of this Contract will be governed by the laws of the jurisdiction where the Property is located.

| | | |
|---|---|---|
| _Kyle Cupec as_ | | _Calvin Minasian_  dotloop verified 10/04/18 2:14PM EDT CWN6-DGGV-6CMF-DU9E |
| _Commissioner of Sale_ | | |
| Seller _____ Date | | Buyer _____ Date |
| | | _Hrasnik Martirosyan_  dotloop verified 10/04/18 2:17PM EDT 5OSW-MXF9-SNAS-DKKC |
| Seller _____ Date | | Buyer _____ Date |

> **Date of Ratification (see DEFINITIONS)**
> October 5, 2018

**\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\***

**For informational purposes only:**

Seller's Address _____  Buyer's Address Onyx Apartments, 1100 First St SE, Washington, DC 20003

Seller's Email Address _____  Buyer's Email Address calvinminasian@aol.com

Seller's Telephone Number _____  Buyer's Telephone Number _____

Listing Company's Name and Address:    Selling Company's Name and Address:

Compass Real Estate    Keller Williams Capital Properties

3001 Washington Blvd. Ste. 400, Arlington, VA 22201    4646 40th St NW, Washington, DC 20016

Office # _____  Office # 202-847-4466

Agent Name Nicholas Dorcon    Agent Name Jordan Stuart

Agent Cell # _____  Agent Cell # 202-316-5575

Agent Email Address nick.dorcon@compass.com    Agent Email Address j.stuart@kw.com

Agent License # and Jurisdiction _____  Agent License # and Jurisdiction SP600402 - DC

Broker License # and Jurisdiction CO98375134 - DC    Broker License # and Jurisdiction _____

Team Leader/Agent _____  Team Leader/Agent _____



©2017 This is a suggested form owned by certain REALTOR® Associations ("Associations"). This form has been created and printed exclusively for the use of REALTORS® and members of the Associations, who may copy or otherwise reproduce this form in identical form with the addition of their company logo and with any other changes being set forth in a clearly marked separate addendum. Any other use of this form is prohibited without prior written authorized consent of the Associations.


EQUAL HOUSING OPPORTUNITY

DocuSign Envelope ID: C76DD93F-9BA4-4BEB-8799-5313DEBA9F88







# CONVENTIONAL FINANCING ADDENDUM

*(For use in Montgomery County, Maryland and Washington, DC)*

The Contract of Sale with an Offer Date of 10/04/2018 between Calvin George Minasian and Hasmik Martirosyan *(Buyer)* and Christine P Pourbabai c/o Commissioner of Sale *(Seller)* for the purchase of the real property located at Address 1077 PAPER MILL CT NW Unit # 1077 City Washington State DC Zip Code 20007, is hereby amended by the incorporation of this Addendum, which shall supersede any provisions to the contrary in the Contract.

A. **SPECIFIED FINANCING:** The following loan(s) shall be the "Specified Financing":

**FIRST DEED OF TRUST:** Buyer will ☑ obtain **OR** ☐ assume a First Deed of Trust loan from the lender that issued the pre-approval letter, or from the lender to whom Buyer made or will make written application within 7 days of Date of Ratification as required by this Contract ("Lender"), in the amount of $510,000.00 % of Sales Price amortized over TBD years at a ☑ Fixed **OR** an ☐ Adjustable rate bearing (initial) interest of MKT % per year or market rate available.

**SECOND DEED OF TRUST:** Buyer will ☐ obtain **OR** ☐ assume a Second Deed of Trust loan from the Lender, in the amount of ______ % of Sales Price amortized over ______ years at a ☐ Fixed **OR** an ☐ Adjustable rate bearing (initial) interest of ______ % per year or market rate available.

B. **FINANCING CONTINGENCY:** This Contract is contingent *("Financing Contingency")* on Buyer's ability to obtain Specified Financing.

C. **ALTERNATE FINANCING:** Buyer, at Buyer's election, may also apply for alternative financing which includes but may not be limited to any change in loan terms or change in Lender from Specified Financing ("Alternate Financing"). **This Financing Contingency shall not apply to any Alternate Financing.**

D. **SELLER'S OPTION TO VOID CONTRACT:** Buyer shall Deliver by 6:00 p.m. 24 Days after Date of Ratification *("Financing Deadline")* a **conditional commitment for financing** from Lender *("Conditional Commitment")*. The Conditional Commitment shall include any outstanding conditions after initial underwriter review, such as final underwriting review/audit, final title review and other underwriting requirements, if any. The Conditional Commitment shall **not** contain any conditions for the verification of income, assets, employment, and/or obtaining a credit report, but may contain conditions for the re-verification of same.

Following the Financing Deadline, but until Buyer Delivers the Conditional Commitment to Seller, the Financing Contingency will continue and **Seller may Deliver Notice to Buyer declaring this Contract Void.**

**Upon Delivery of the Conditional Commitment, the Financing Contingency will continue**, and Seller may no longer Deliver Notice declaring the Contract Void under the Financing Contingency until the Settlement Date has passed.

**If Settlement does not occur on or before the Settlement Date, and the Financing Contingency has not been removed, and the Buyer is not in Default, Settlement may occur any time thereafter. However, once the Settlement Date has passed and until Settlement has been completed, Seller may deliver Notice declaring this Contract Void, except in the case of Default by Seller.**

E. **REMOVAL OF CONTINGENCY:** At any time prior to Seller Delivering Notice declaring the Contract Void, Buyer may remove this contingency: 1) By delivering to Seller evidence of Buyer's ability to complete settlement without obtaining the Specified Financing; OR 2) delivering notice to Seller, Buyer has made application for alternate financing or has made application with lender more than 7 days after Date of Ratification. **If Buyer removes the Financing Contingency but fails to complete Settlement by the Settlement Date for any reason not permitted by this Contract or as a result of any Default by Seller, then the provisions of the DEFAULT paragraph shall apply.**

© 2017 The Greater Capital Area Association of REALTORS®, Inc.
This Recommended Form is property of the Greater Capital Area Association of REALTORS®, Inc. and is for use by members only.
Previous editions of this Form should be destroyed.

F. **FINANCING REJECTION**: Buyer may Deliver Notice declaring the Contract Void if Buyer receives a written rejection for the Specified Financing from Lender and Delivers a copy of the written rejection to Seller.

G. **APPRAISAL**: In the event the Specified Financing is declined based upon the Appraisal, Buyer will not be in Default. This provision will apply even if the Contract contains a separate Appraisal Contingency, and that Appraisal Contingency expired or has been removed.

H. **BUYER DEFAULT PROVISIONS**: Buyer will be in Default if Settlement does not occur on the Settlement Date as a result of any of the following actions by Buyer:

1) Failure to lock-in the interest rate(s) and the rate(s) increase so that Buyer does not qualify for such financing; **OR**
2) Failure to comply with Lender's reasonable requirements in a timely and diligent manner; **OR**
3) Application is made with an alternative lender other than the Lender as defined herein and that alternative lender fails to meet the Settlement Date; **OR**
4) Does not have the down payment, closing fees and any other required funds; **OR**
5) Makes any deliberate misrepresentations, material omissions or inaccuracies in financial information that results in the Buyer's inability to secure the financing; **OR**
6) Failure to make application to Lender for the Specified Financing, or application for property insurance, within 7 days of Date of Ratification; **OR**
7) Does or fails to do any act following the Date of Ratification that prevents Buyer from completing Settlement.

I. **SALE/SETTLEMENT/LEASE OF OTHER PROPERTY**: Unless specified in a written contingency, neither this Contract nor the financing is dependent or contingent on the sale and settlement or lease of other real property.

J. **LENDER-REQUIRED REPAIRS**: If, as a condition of providing financing under this Contract, Lender requires repairs to be made to the Property that have not otherwise been agreed to be Seller's responsibility, then the following procedure will be followed:

Buyer will Deliver Notice to Seller of Lender's required repairs and a request that Seller complete the repairs prior to settlement. Within 5 Days after Delivery of Buyer's Notice, Seller will Deliver Notice to Buyer as to whether or not Seller will make the repairs. Failure of Seller to Deliver Notice to Buyer within said timeframe shall be deemed an election by Seller to **NOT** make the repairs. If Seller Delivers Notice to Buyer electing to not make the repairs *(or is deemed to have elected to not make the repairs)*, within 5 days Buyer shall Deliver Notice to Seller as to whether or not Buyer will make the repairs. If neither Seller nor Buyer has Delivered Notice within said timeframe agreeing to make the repairs, then this Contract will become void.

| | | | |
|---|---|---|---|
| *Kyle E Carper as* | 10/5/18 | *Calvin Minasian* | dotloop verified 10/04/18 2:14PM EDT GYTU-ODPY-7YWF-0AZT |
| Seller *Commissioner of Sale* | Date | Buyer | Date |
| | | *Hasmik Martirosyan* | dotloop verified 10/04/18 2:17PM EDT X8FW-UVAD-BR5C-WWCO |
| Seller | Date | Buyer | Date |

© 2017 The Greater Capital Area Association of REALTORS®, Inc.
This Recommended Form is property of the Greater Capital Area Association of REALTORS®, Inc. and is for use by members only.
Previous editions of this Form should be destroyed.

DocuSign Envelope ID: C76DD035-9B44-4BEB-8799-5313DEBA9F88





# Addendum of Clauses—A
## (For use with GCAAR Sales Contract and MAR Residential Contract of Sale)

The Contract of Sale dated 10/04/2018 between Calvin George Minasian and Hasmik Martirosyan (Buyer)
and Christine P Pourbabai ~~Boiler Skopic Commr of Sale~~ (Seller) for the purchase of the real property located at
Address 1077 PAPER MILL CT NW Unit # 1077
City Washington State DC Zip Code 2000 Parking Space(s) # incl (1) Storage Unit #
with the legal description of Lot 2055 Block/Square 1187 Section
Subdivision/Project Name Georgetown Tax Account # 1187//2055
is hereby amended by the incorporation of this Addendum, which shall supersede any provisions to the contrary in
this Contract.

**It is agreed that only the numbered paragraphs which are checked and initialed by all parties shall be made a part of said
Contract.**

☐ **1. SELLER'S CREDIT(S) TO BUYER:** In addition to any other amount(s) Seller has agreed to pay under other provisions of this
Contract, Seller shall credit Buyer at the time of Settlement with the sum of $_____ towards Buyer's settlement costs. It is
Buyer's responsibility to confirm with Lender, if applicable, that the entire credit provided for herein may be utilized. If Lender prohibits
Seller from payment of any portion of this credit, then said credit shall be reduced to the amount allowed by Lender.

☑ **2. INSPECTION CONTINGENCY:** The Contract is contingent until 6 p.m. on the 7th Day after the Date of
Ratification *("Deadline")* for inspections of the Property, not including radon, lead-based paint, well or septic inspections (*which require
separate contingencies*), by Buyer, a home inspection firm and/or other representative(s) at Buyer's discretion and expense. Seller will
have all utilities in service at the time of inspection(s).

**Select option(s) A, B OR BOTH below. Failure to select either A or B below will result in BOTH being selected.**

☐ **A. RIGHT TO NEGOTIATE:** This right will terminate at the Deadline unless by the Deadline Buyer Delivers to
Seller a copy of the report(s) from the inspection(s) of the Property together with a Home Inspection Notice
*(such as GCAAR Form 1344: Inspection Notice and/or Addendum)* listing home inspection conditions or items that
Buyer requires Seller to repair, and/or stipulating a dollar credit, as allowed by Lender, to be paid at Settlement by Seller toward
Buyer's charges to buy the Property. Upon such Delivery, **2.B**, if selected below, shall **NO LONGER** be an option.

If the Seller elects not to perform in accordance with the Home Inspection Notice or makes another offer, Seller
will Deliver Notice to Buyer of such decision within 3 Days after Delivery of the Home Inspection Notice.

Within 3 Days after Delivery of a Notice from one party, the other party may:
**1.** Deliver Notice accepting the terms contained in the other party's Notice; **OR**
**2.** Deliver Notice continuing negotiations by making another offer; **OR**
3. Deliver Notice that this Contract will become void at 6 p.m. on the 3rd Day following Delivery, **UNLESS** the
recipient Delivers to the other party Notice of the acceptance of the last Delivered offer prior to that date
and time, in which case the Contract will remain in full force and effect. Seller may not exercise this option
as the first response to Buyer.

Failure of either party to respond within 3 Days after Delivery of Notice from the other party will result in acceptance by both
parties of the terms of the most recent Notice.

☑ **B. RIGHT TO CANCEL:** This right will terminate at the Deadline unless by the Deadline Buyer Delivers to Seller a Notice
declaring the Contract void.

©2017 The Greater Capital Area Association of REALTORS®, Inc.
This Recommended Form is the property of the Greater Capital Area Association of REALTORS®, Inc. and is for use by members only.
Previous editions of this Form should be destroyed.

**3. ADDITIONAL "AS-IS" PROVISIONS:** All clauses in this Contract pertaining to termites and wood-destroying insects, private well and/or private sewage systems, and compliance with city, state or county regulations are hereby deleted from this Contract. Smoke detectors will be installed as required by the laws or regulations of the appropriate jurisdictions. The provisions of the Property Maintenance and Condition Paragraph will remain in full force and effect.

**4. RADON INSPECTION CONTINGENCY:** The Contract is contingent until 6 p.m. on the_____Day after the Date of Ratification ("Deadline") to allow Buyer, at Buyer's discretion and expense, to have the Property inspected for the presence of radon by a testing firm listed with the National Radon Safety Board ("NRSB") or the National Environmental Health Association ("NEHA") using a U.S. Environmental Protection Agency ("EPA") approved testing method. Testing and retesting devices, if applicable, to be placed and retrieved by an NRSB or NEHA-listed technician or their authorized subcontractor. This contingency will terminate at the Deadline unless by the Deadline, Buyer Delivers to Seller a copy of the radon testing report which confirms the presence of radon that equals or exceeds the action level established by the EPA together with either **A** or **B**:

**A.** Radon Testing Notice (GCAAR Form "Radon Testing Notice and/or Addendum/Release") requiring Seller at Seller's expense prior to Settlement to remediate the radon condition; or stipulating a dollar credit, as allowed by the Lender, to be paid at Settlement by Seller towards Buyer's charges to buy the Property. In the event that Seller agrees to remediate the radon condition, such work shall be performed by a NRSB or NEHA-listed remediation firm who will provide written verification that the required remediation has been performed, including test results demonstrating that the presence of radon is below the action level established by EPA.

If Seller elects not to perform in accordance with the Radon Testing Notice or makes another offer, Seller will Deliver Notice to Buyer of such decision within 3 Days after Delivery of the Radon Testing Notice.

Within 3 Days after Delivery of Notice from one party, the other party may:
  1) Deliver Notice accepting the terms contained in the other party's Notice; OR
  2) Deliver Notice continuing negotiations by making another offer; OR
  3) Deliver Notice that this Contract will become void at 6 p.m. on the 3rd Day following Delivery, unless the recipient Delivers to the other party Notice of the acceptance of the last Delivered offer prior to that date and time, in which case the Contract will remain in full force and effect. Seller may not exercise this option as the first response to Buyer.

Failure of either party to respond within 3 Days after Delivery of a Notice from the other party will result in acceptance by both parties of the terms of the most recent Notice.

**B.** Notice declaring the Contract void.

**5. APPRAISAL CONTINGENCY:** *NOT TO BE USED WITH FHA OR VA FINANCING.* **IF THE CONTRACT IS CONTINGENT UPON FINANCING AND SUCH FINANCING IS DECLINED BASED UPON THE APPRAISAL, THE BUYER WILL NOT BE IN DEFAULT, EVEN IF THIS APPRAISAL CONTINGENCY HAS BEEN REMOVED.**

The Contract is contingent until 6:00 p.m. on the 14th_____day after the Date of Ratification ("Deadline") for Buyer to obtain a written appraised valuation of the Property ("Appraisal") certifying the value of the Property to be no less than the Sales Price (check with your Lender, if applicable, to confirm that the Appraisal will be completed by the Deadline). If Buyer is obtaining financing, Lender shall select the appraiser. If this is a cash sale, Buyer shall select the appraiser. The appraiser shall be licensed to perform Appraisals in the jurisdiction in which the Property is located. Seller shall make the Property available for inspection by such appraiser.

In the event that the Appraisal is lower than the Sales Price, Buyer has the option of proceeding with the Contract at the stated Sales Price without regard to the Appraisal. However, should Buyer decline to proceed with the Contract at the stated Sales Price (due to the Appraisal being lower than the stated Sales Price), Buyer shall Deliver to Seller, by the Deadline, a Notice (GCAAR Form "Appraisal Notices and/or Addendum"), requesting that the Sales Price be reduced to a specified lower amount of not less than the appraised value, together with a copy of the written Appraisal ("Buyer's Appraisal Notice"). This Contingency will terminate at the Deadline, unless by the Deadline Buyer Delivers to Seller Buyer's Appraisal Notice.

All Notices Delivered under this Appraisal Contingency shall be treated as follows:

Within 3 Days after Delivery of a Notice from one party, the other party may:
  **A.** Deliver Notice accepting the terms contained in the other party's Notice: OR
  **B.** Deliver Notice continuing negotiations by making another offer; OR
  **C.** Deliver Notice that this Contract will become void at 6:00 p.m. on the 3rd Day following Delivery, unless the recipient Delivers to the other party Notice of the acceptance of the last Delivered offer prior to that date and time, in which case, this Contract will remain in full force and effect.

**FAILURE OF EITHER PARTY TO RESPOND WITHIN 3 DAYS AFTER NOTICE DELIVERY WILL RESULT IN THE CONTRACT BECOMING VOID.**

**6. HOLDING DEPOSIT CHECK** *WARNING: THIS CLAUSE MAY NOT BE USED FOR A MARYLAND TRANSACTION WHEN A REAL ESTATE BROKER IS THE ESCROW AGENT.* It is understood and agreed by all parties that the Buyer has instructed the Escrow Agent to hold and not deposit the above described deposit check until_____Days after Ratification at which time said check shall be deposited.

**7. PRIVATE WELL AND SEPTIC:** If the property is on well and/or septic system, ☐ Buyer, at Buyer's expense, OR ☐ Seller, at Seller's expense will:

  **A.** Provide Buyer on or before Settlement with a certificate, dated not more than 30 days prior to Settlement, from a private water testing laboratory certified by the Maryland Department of Health and Mental Hygiene that the well water is potable. If Buyer is obtaining FHA or VA financing, chemical and lead tests will be required.

  **B.** Provide Buyer on or before Settlement with a report, dated not more than 30 days prior to Settlement, from a private company, which has followed the Maryland Department of Environment standardized procedure for the inspection of the septic system(s), that the septic system is not malfunctioning, is functioning satisfactorily, or is in operating condition.

  **C.** If either system does not meet the requirements of A or B above, Seller, at Seller's expense, will take appropriate remedial action to rectify the deficiency and provide Buyer with above required documents outlined in A and B on or before Settlement.

**8. POST-SETTLEMENT OCCUPANCY ADDENDUM:** The parties agree that the Seller shall occupy the property for a period of _____ days beginning at Settlement at the rate of $_____per day. Seller shall pay a security deposit of $_____ at Settlement. Seller and Buyer acknowledge that they have read and executed, or will execute at Settlement, the GCAAR Post-Settlement Occupancy Addendum and agree to be bound by its terms and provisions. In the event that this is a Maryland transaction and any mortgage on the property is 60 days or more in default, Seller has the right to rescind the Contract within 5 days of all parties signing a Statement About Tenancy (GCAAR Form "Statement About Tenancy").

**9. LICENSEE RELATIONSHIP DISCLOSURE:** The parties acknowledge that _____ is a licensed real estate agent in_____(MD/DC/VA) associated with _____(Company) and is the ☐ Buyer ☐ Seller or is ☐ related to one of the parties hereto in the following way:_____and may share in the Broker's Fee.

**10. ADDITIONAL PROVISIONS:**

A. Conveyance shall be by Special Warranty deed.

B. Contract contingent on acceptance by Circuit Court of Fairfax County, VA. Commissioner of Sale shall seek approval on 10/12/18, or as soon thereafter as reasonably possible.

All other terms of the Contract remain in full force and effect.

PARTIES ACKNOWLEDGE THEY HAVE BEEN AFFORDED THE OPPORTUNITY TO REVIEW AND INCORPORATE THE ADDITIONAL PROVISIONS CONTAINED IN ADDENDUM OF CLAUSES-B AND HAVE AGREED TO INCORPORATE ONLY THOSE PROVISIONS ATTACHED HERETO.

| | | |
|---|---|---|
| _Kyle O Dupie_ 10/5/18 | _Calvin Minasian_ | dotloop verified 10/04/18 2:14PM EDT JKSK-Z3MI-ZEUV-AINM |
| Seller *Commissioner of Sale* Date | Buyer Date | |
| | | |
| | _Hasmik Martirosyan_ | dotloop verified 10/04/18 2:17PM EDT QB2S-HXZI-PBVR-CVIZ |
| Seller Date | Buyer Date | |

DocuSign Envelope ID: C76DD93F-9BA4-4BEB-8799-5313DEBA9F88



REALTOR®



EQUAL HOUSING
OPPORTUNITY

**THIS NOTICE IS REQUIRED BY LAW AND IS NOT A CONTRACT.**

**THIS DISCLOSURE DOES NOT CREATE A BROKERAGE RELATIONSHIP.**

## Disclosure of Brokerage Relationship
## District of Columbia

Prior to providing specific real estate assistance, District of Columbia law requires that a licensee disclose to any party who the licensee does **NOT** represent the identity of the party to the proposed transaction which the licensee does represent. Even though a licensee may not represent you, that licensee must still treat you honestly in the transaction.

We, the undersigned ☐ Buyer(s)/Tenant(s) or ☑ Seller(s)/Landlord(s) acknowledge receipt of this Disclosure, and understand we are **NOT** represented by the licensee identified below.

Jordan Stuart - SP600402                    and Keller Williams Capital Properties
 (Licensee & License #)                        (Brokerage Firm)

The licensee and brokerage firm named above represent the following party in the real estate transaction:

☐ **Seller(s)/Landlord(s)** (The licensee has entered into a written listing agreement with the seller(s) or landlord(s) or is acting as a sub-agent of the listing broker.)

☑ **Buyer(s)/Tenant(s)** (The licensee has entered into a written agency agreement with the buyer/tenant.)

☐ **Designated Agent of the** ☐ Buyer(s)/Tenant(s) or ☐ Seller(s)/Landlord(s) (Both the buyers and sellers have previously consented to "Designated Agency", and the licensee listed above is indicating the parties represented.

| Kylie Dryer Commissioning Sale | 10/5/18 |
|---|---|
| Acknowledged | Date |
| | |
| Acknowledged | Date |

Name of Person(s): Jordan Stuart

I certify on this date that I, the real estate agent, have delivered a copy of this disclosure to the person(s) identified above.

Jordan Stuart                                    dotloop verified
                                                 10/04/18 2:00PM EDT
                                                 3LW0-EYXV-1B25-PGCW
Signed (Licensee)                   Date

Previous editions of this form should be destroyed.

dotloop signature verification: dtlo.us/YPUl-LVll-6N0Z

DocuSign Envelope ID: C76DD03F-0BA4-4BEB-8799-5313DEBA9F88

 **DEPARTMENT OF ENERGY & ENVIRONMENT**

# DC Lead Disclosure Form
*Information about Lead-Based Paint in this Property*

---

**Purpose:** Inform potential renters and homebuyers of the presence of lead-based paint and related hazards in the property they are considering.

**Housing built before 1978 may contain lead-based paint.** Lead from paint, paint chips, and dust can be a health hazard, especially for young children and pregnant women. Owners or managers of these properties must provide information about lead-based paint in the property that they want to rent or sell. DC requires the renter or buyer to have this information **before** they decide to rent or purchase the property.

**This form does not replace the Federal Lead Disclosure form.** DC law provides additional protections for the renter or purchaser. A DC Lead Disclosure form is not required for properties built in 1978 or later.

---

**Are you a POTENTIAL TENANT or BUYER?**
*Review this page carefully before following instructions on page two.*

**Are you a PROPERTY OWNER or MANAGER?**
*You will need the following information to complete this form:*

- Copies of any lead-based paint reports, assessments, or surveys related to the property.
- The latest version of the EPA Protect Your Family From Lead in Your Home pamphlet.
- Knowledge about lead-contaminated dust/soil and condition of the paint on the property.
- Knowledge about any lead-based paint related legal actions taken against the property.

**Property owners and managers: keep the signed original of this form on record for at least 6 years,** as you may be audited by the DC Department of Energy and Environment.

---

**What to look for inside the property or in the property's common areas:**

- Peeling, chipping, chalking, cracking, or damaged paint.
- Lead-based paint on windows, doors, stairs, railings, banisters, porches, or other high-wear surfaces that children might chew.
- Lead that is present in bare soil.
- Lead dust that forms when lead-based paint is scraped, sanded, or heated, or when painted surfaces with lead in them bump or rub together.
- Surfaces with lead paint chips/dust, or settled dust that reenters the air through vacuuming or sweeping.

---

For more information see The District of Columbia "Lead-Hazard Prevention and Elimination Act of 2008," as amended (the "Act"), D.C. Official Code § 8-231.01 et seq., and the Federal Lead Warning Statement, 24 CFR Part 35: http://bit.ly/federallead

If you need help in your language, please call 202-535-2600. | በአማርኛ እርዳታ ከፈለጉ በ 202-535-2600 ይደውሉ | Si necesita ayuda en Español, por favor llame al 202-535-2600. | Si vous avez besoin d'aide en Français appelez-le 202-535-2600. | 如果您需要中文服務，請致電 202-535-2600 | 한국어로 도움이 필요합니까? 무료 한국어통역: 202-535-2600 | Nếu quý vị cần giúp đỡ bằng tiếng Việt, xin gọi 202-535-2600.

 **DC Department of Energy & Environment | 202.535.2600 | doee.dc.gov/lead**

Arlington Office, 3001 Washington Blvd, Suite 400 Arlington VA 22201
Phone: 703.850.9100            Fax:                    Nicholas Dorcon

1077 Paper Mill Ct

Produced with zipForm® by zipLogix 18070 Fifteen Mile Road, Fraser, Michigan 48026    www.zipLogix.com

dotloop signature verification: dotloop.com/my/verification/DL-450295790-1-5K0Z

DocuSign Envelope ID: C76DD835-9BA4-4BEB-8799-5313DEBA9F88

| If you are: | You need to: |
|---|---|
| The property owner or manager | • Complete Sections A and B.<br>• Provide a copy to the tenant/buyer. |
| The potential tenant or buyer | • Carefully review Section B.<br>• Sign Section C. |

## SECTION A: Property Owner/Manager's Signature

| Property Address: 1077 Paper Mill Ct NW | Unit: | Washington, DC | ZIP: 20007-3619 |
|---|---|---|---|

I am the (check one) ☒ owner ☐ manager of this property and will truthfully give the answers to the following questions about lead-based paint/hazards in or around this property.

Owner/Manager Name: *Christine Burbidge Ben Pourbabai, owner, by* Kyle E Skopic *Commissioner 4 Sale*    Signature: *Kyle E Skopic*

## SECTION B: Information About the Lead-Based Paint in this Property

**Lead-based paint is assumed to be present in properties built before 1978. To the best of your knowledge, is there peeling or chipping paint, lead-contaminated dust/soil, or other lead-based paint hazards inside or around the property?**

[X] No ☐ Yes, in the following location(s): *For more space attach a summary*

**Does DC Government have any pending actions related to lead-based paint for this property?**
*Check all that apply*

☐ Yes, a notice of violation
☐ Yes, a notice of lead-based paint hazards
☐ Yes, an administrative order to eliminate lead-based paint hazards
☐ Yes, other notices or orders related to lead-based paint. Please list:
[X] No

**Are there any reports or documents about lead-based paint or hazards in or around this property?**
*This includes reports or documents provided to you by a previous or current owner, property manager, DC Government agency, or contractor.*

[X] No ☐ Yes **and** I understand I must provide a copy of those documents to the tenant/buyer if they ask.

## SECTION C: Tenant/Buyer's Acknowledgement

**I was provided this form and the Protect Your Family from Lead in Your Home pamphlet before I signed a lease or purchase agreement.**

☐ Yes ☒ No, I have already signed a lease or purchase agreement.

**I understand I have the right to ask the owner or manager for any reports or documents about lead-based paint or hazards in or around this property.**

| Name: | Calvin Minasian | *Calvin Minasian* | dotloop verified<br>10/04/18 5:03PM EDT<br>PA84-R3PK-TGKV-3JQ0 | te: |
|---|---|---|---|---|
| | Hasmik Martirosyan | *Hasmik Martirosyan* | dotloop verified<br>10/04/18 5:03PM EDT<br>ZPDC-YJPX-G0VI-JSLC | |

DC Department of Energy & Environment | 202

Produced with zipForm® by zipLogix 18070 Fifteen Mile Road, Fraser, Michigan 48026   www.zipLogix.com

1077 Paper Mill Ct

dotloop signature verification: dtlp.us/YPGI-LVIL-6NOZ

DocuSign Envelope ID: C76DD03F-9B44-4BEB-8799-5313DEBA9F88

COMPASS



 

## Lead Paint - Federal Disclosure of Lead-Based Paint and Lead-Based Paint Hazards for SALES

*(Required for the SALE of all properties in the U.S. with any existing part built prior to 1978)*

PROPERTY ADDRESS: <u>1077 Paper Mill Ct NW, Washington, DC  20007-3619</u>

☒ There are parts of the property that still exist that were built prior to 1978 OR ☐ **No parts of the property** were built prior to 1978 OR ☐ Construction dates are unknown. **If any part of the property was constructed prior to 1978 or if construction dates are unknown, this disclosure is required. If the entire property was built in 1978 or later, this disclosure is not required.**

**LEAD WARNING STATEMENT FOR BUYERS:** Every purchaser of any interest in residential real property on which a residential dwelling was built prior to 1978 is notified that such property may present exposure to lead from lead-based paint that may place young children at risk of developing lead poisoning. Lead poisoning in young children may produce permanent neurological damage, including learning disabilities, reduced intelligence quotient, behavioral problems, and impaired memory. Lead poisoning also poses a particular risk to pregnant women. The seller of any interest in residential real property is required to provide the buyer with any information on lead-based paint hazards from risk assessments or inspections in the seller's possession and notify the buyer of any known lead-based paint hazards. A risk assessment or inspection for possible lead-based paint hazards is recommended prior to purchase.

### SELLER'S DISCLOSURE:

**(A)** Presence of lead-based paint and/or lead-based paint hazards

☐ **Known lead-based paint and/or lead-based paint hazards** are present in the housing (explain):

_____ **OR**

☒ **Seller has no knowledge of lead-based paint and/or lead-based paint hazards** in the housing.

**(B)** Records and reports available to the Seller:

☐ **Seller has provided Buyer with all available records** and reports pertaining to lead-based paint and/or lead-based paint hazards in the housing (list documents below):

_____ **OR**

☒ **Seller has no reports or records** pertaining to lead-based paint and/or lead-based paint hazards in the housing.

### BUYER'S ACKNOWLEDGMENT:

*(Buyer to initial all lines as appropriate)*

(C) [CM] [HM] ...er has read the Lead Warning Statement

(D) [CM] [HM] ...has read Paragraph B and acknowledges receipt of copies of any information listed therein, if any.

(E) [CM] [HM] ...er has received the pamphlet Protect Your Family From Lead in Your Home (required)

(F) [CM] [HM] ...er has (check one below):

☐ Received a 10-day opportunity (or mutually agreed upon period) to conduct a risk assessment or inspection for the presence of lead-based paint and/or lead-based paint hazards; OR

☑ Waived the opportunity to conduct a risk assessment or inspection for the presence of lead-based paint and/or lead-based paint hazards.

**AGENT'S ACKNOWLEDGMENT:** *(Agent to initial)*

(G) [ND] Agent has informed the Seller of the Seller's obligations under 42 U.S.C. 4852d and is aware of his/her responsibility to ensure compliance.

**CERTIFICATION OF ACCURACY:** The following parties have reviewed the information above and certify, to the best of their knowledge, that the information provided by the signatory is true and accurate.

| | | | |
|---|---|---|---|
| *Kyle E Skopic as* / 10/4/18 | | *Calvin Minasian* dotloop verified 10/04/18 5:03PM EDT 8FMD-ASYT-AKBJ-ARVV | |
| Seller / *Commissioner of Sale* Date | | Buyer Date | |
| Kyle E Skopic | | | |
| | | *Hasmik Martirosyan* dotloop verified 10/04/18 5:03PM EDT PNPJ-XAPP-IJ2P-3MOD | |
| Seller Date | | Buyer Date | |
| *Nicholas Dorcon* 10/07/2018 | | *Jordan Stuart* dotloop verified 10/04/18 4:56PM EDT EFGW-CBTX-MV8Z-EEIV | |
| Agent for Seller, if any Date NICHOLAS DORCON | | Agent for Buyer, if any Date | |

GCAAR # 907A: Federal Lead     2016, The Greater Capital Area Association of REALTORS®, Inc.                    2/2016
Paint Sales Disclosure - MC &     This Recommended Form is the property of the Greater Capital Area Association of REALTORS®, Inc.
DC                                                 and is for use by REALTOR members only. Previous editions of this Form should be destroyed.

Arlington Office, 3001 Washington Blvd, Suite 400 Arlington VA 22201          Phone 703.850.9100          Fax          1077 Paper Mill Ct
Nicholas Dorcon                                 Produced with ZipForm™ by RE FormsNet, LLC 18025 Fifteen Mile Road, Clinton Township, Michigan 48035  www.zipform.com

dotloop signature verification: dtlp.us/SY9I-LVlI-6NxZ
DocuSign Envelope ID: C76DD03F-0BA4-4BEB-8799-5313DEBA9F88
Authentisign ID: 277D2C84-D082-4D1D-8AE1-72E0FE8E2E8F

dotloop signature verification: dtlp.us/fP0l-LVll-6NOZ
DocuSign Envelope ID: C76DD831-0B04-4BE8-8799-5313DEBA9F88



COMPASS



REALTOR®    EQUAL HOUSING OPPORTUNITY

## Jurisdictional Disclosure and Addendum to the Sales Contract for District of Columbia
### *(Required for the Listing Agreement and required for the GCAAR Sales Contract)*

The Contract of Sale dated __10/4/2018__ between __Calvin Minasian and Hasmik Martirosyan__
_____ (Buyer) and _Ben Pourtabib by_ __Kyle E Skopic, Commissina g Sale__ (Seller)
for the purchase of the real property located at Address __1077 Paper Mill Ct NW__
Unit# _____ City __Washington__ State __DC__ Zip Code __20007-3619__ , Parking Space(s) #
_____ Storage Unit # _____ with the legal description of Lot __2055__ Block/Square __1187__
Section _____ Subdivision/Project Name __Georgetown__ Tax Account # __1187//2055__
is hereby amended by the incorporation of this Addendum, which shall supersede any provisions to the contrary in this Contract.

---

### PART I. SELLER DISCLOSURE - AT TIME OF LISTING:
The information contained in this Disclosure was completed by Seller, is based on the Seller's actual knowledge and belief, and is current as of the date hereof.

**1. SELLER DISCLOSURE:** Pursuant to D.C. Code §42-1301, Seller is exempt from property condition disclosure.
☐ Yes ☒ No

**2. DC SOIL DISCLOSURE REQUIREMENTS:** The characteristic of the soil on the Property as described by the Soil Conservation Service of the United States Department of Agriculture in the Soil Survey of the District of Columbia published in 1976 and as shown on the Soil Maps of the District of Columbia at the back of that publication is _____.

For further information, Buyer can contact a soil testing laboratory, the District of Columbia Department of Environmental Services, or the Soil Conservation Service of the Department of Agriculture.

**3. TENANCY:** Seller represents that property ☐ is/was OR ☒ is not/was not subject to an existing residential lease or tenancy at the time Seller decided to sell. District of Columbia broadly defines a tenant as "a tenant, subtenant, lessee, sublessee, or other person entitled to the possession, occupancy, or the benefits of any rental unit within a housing accommodation." If applicable, the following required Addendum shall be incorporated into the Contract.
☐ Tenancy Addendum for District of Columbia (Single-Family Accommodation)
☐ Tenancy Addendum for District of Columbia (2 to 4 Rental Units)
☐ Multi-Unit or Non-Residential Addendum

**4. CONDOMINIUM/CO-OPERATIVE/HOMEOWNERS ASSOCIATION:** Seller represents that this Property ☒ is OR
☐ is not subject to a condominium, co-operative or homeowners association. If applicable, the following required addendum is attached:
☒ Condominium Seller Disclosure/Resale Addendum for District of Columbia,
☐ Co-operative Seller Disclosure/Resale Addendum for Maryland and District of Columbia, or HOA
☐ Seller Disclosure/Resale Addendum for District of Columbia

**5. UNDERGROUND STORAGE TANK DISCLOSURE: (Applicable to single family home sales only)**
In accordance with the requirements of the District of Columbia Underground Storage Tank Management Act of 1990 [D.C. Code §8-113.02(g)], as amended by the District of Columbia Underground Storage Tank Management Act of 1990 Amendment Act of 1992 (the "Act") and the regulations adopted thereunder by the District of Columbia (the "Regulations"), Seller hereby informs Buyer that Seller has no knowledge of the existence or removal during Seller's ownership of the Property of any underground storage tanks as that term is defined in the Act and the Regulations, except as follows: _____
_____.

**6. PROPERTY TAXES:** Future property taxes may change. To determine the applicable rate, see https://www.taxpayerservicecenter.com/RP_Search.jsp?search_type=Assessment . Additional information regarding property tax relief and tax credit information (tax reductions for seniors, homestead exemptions, property tax abatements and others) can be found at: http://otr.cfo.dc.gov/page/real-property-tax-credits-frequently-asked-questions-faqs .

---

©2018 The Greater Capital Area Association of REALTORS®, Inc.
This Recommended Form is property of the Greater Capital Area Association of REALTORS®, Inc. and is for use by members only.
Previous editions of this Form should be destroyed.

Arlington Office, 3001 Washington Blvd, Suite 400 Arlington VA 22201                          Phone: 703.850.9100          Fax:          1077 Paper Mill Ct
Nicholas Dorcon
Produced with zipForm® by zipLogix 18070 Fifteen Mile Road, Fraser, Michigan 48026   www.ziplogix.com

DocuSign signature verification: [illegible]
DocuSign Envelope ID: C76DD93F-9BA4-4B5B-8799-5313DEBA9F88

**PART II. RESALE ADDENDUM**

The Contract of Sale dated  10/04/2018  , between Seller _Poundabai by Kyle Skypic, Commissioner of Sale_
and Buyer _ Calvin Minasian         Hasmik Martirosyan _ is hereby amended by the incorporation of
Parts I and II herein, which shall supersede any provisions to the contrary in the Contract.

**1.**  **SELLER DISCLOSURE:** Pursuant to D.C. Code §42-1302, prior to the submission of the offer, Buyer is entitled to a
Seller's Disclosure Statement (if Seller is not exempt) and hereby acknowledges receipt of same.  [X] Yes  [ ] No
[ ] Not applicable

**2.**  **RECORDATION AND TRANSFER TAXES:** Rates vary with the sales price and based on property type. See
http://otr.cfo.dc.gov/service/recorder-deeds-frequently-asked-questions-faqs . In limited circumstances, an exemption from
Recordation Tax may be available to Buyer, if Buyer meets the requirements for the Lower Income Home Ownership Exemption
Program ("Tax Abatement Program"). See below for additional information.
Unless otherwise negotiated, the following will apply:

    **A. Real Property:** Recordation Tax will be paid by Buyer and Transfer Tax will be paid by Seller.
    **B. Co-operatives:** The Economic Interest Deed Recordation Tax will be split equally between Buyer and Seller. There is
no Transfer Tax for Co-operatives.
    **C. Tax Abatement Program:** Additional information (including the required Application Form) for the Tax Abatement
Program can be obtained at: http://otr.cfo.dc.gov/sites/default/files/dc/sites/otr/publication/attachments/sharp%40dc.gov_
20140909_110358.pdf . If Buyer meets the requirements of this program, Buyer will be exempt from Recordation Tax.
Additionally, Seller shall credit Buyer an amount equal to what would normally be paid to the District of Columbia as
Seller's Transfer Tax to be applied towards Buyer's settlement costs. This credit shall be in addition to any other amount(s)
Seller has agreed to pay under the provisions of this Contract. It is Buyer's responsibility to confirm with Lender, if
applicable, that the entire credit provided for herein may be utilized. If Lender prohibits Seller from payment of any portion
of this credit, then said credit shall be reduced to the amount allowed by Lender.
Buyer [ ] is OR [X] is not applying for the Tax Abatement Program.
    **D. First-Time Homebuyer Recordation Tax Credit:** Buyer [X] is OR [ ] is not a District of Columbia First-Time
Homebuyer and may be eligible for a reduced recordation tax. It is the Buyer's responsibility to confirm their eligibility
(See https://otr.cfo.dc.gov/node/1272871 ).

**3.**  The principals to the Contract mutually agree that the provisions hereof shall survive the execution and delivery of the Deed
and shall not be merged herein.

_Kyle Y Snyder_                    10/4/18          _Calvin Minasian_    dotloop verified
Seller  _Commissioner of Sale_        Date          Buyer              10/04/18 5:03PM EDT
                                                                        EJ8Q-IJZN-I27M-GD0U
                                                                                            Date

                                                          _Hasmik Martirosyan_   dotloop verified
Seller                                Date          Buyer              10/04/18 5:03PM EDT
                                                                        QA6A-O0QY-HLRT-FJV2
                                                                                            Date

©2018 The Greater Capital Area Association of REALTORS®, Inc.
This Recommended Form is property of the Greater Capital Area Association of REALTORS®, Inc. and is for use by members only.
Previous editions of this Form should be destroyed.

Produced with zipForm® by zipLogix 18070 Fifteen Mile Road, Fraser, Michigan 48026   www.zipLogix.com

1077 Paper Mill Ct

dotloop signature verification: dtlp.us/YP0I-LVH-6MOZ

DocuSign Envelope ID: C76DD33E-0B4A-4B5B-8799-5313DEBA9F88

C O M P A S S



 

## Inclusions/Exclusions Disclosure and/or Addendum
*Required for use with GCAAR Listing Agreement & Sales Contract*

**PROPERTY ADDRESS:** 1077 Paper Mill Ct NW, Washington, DC  20007-3619

**PERSONAL PROPERTY AND FIXTURES:** The Property includes the following personal property and fixtures, if existing: built-in heating and central air conditioning equipment, plumbing and lighting fixtures, sump pump, attic and exhaust fans, storm windows, storm doors, screens, installed wall-to-wall carpeting, shutters, window shades, blinds, window treatment hardware, mounting brackets for electronics components, smoke and heat detectors, TV antennas, exterior trees and shrubs. Unless otherwise agreed to herein, all surface or wall mounted electronic components/devices **DO NOT CONVEY. The items checked below convey.** If more than one of an item conveys, the number of items shall be noted in the blank.

### KITCHEN APPLIANCES
- [ ] _____ Stove/Range
- [x] _____ Cooktop
- [x] _____ Wall Oven
- [x] _____ Microwave
- [x] _____ Refrigerator
- [x] _____ w/ Ice Maker
- [ ] _____ Wine Refrigerator
- [x] _____ Dishwasher
- [x] _____ Disposer
- [ ] _____ Separate Ice Maker
- [ ] _____ Separate Freezer
- [ ] _____ Trash Compactor

### LAUNDRY
- [x] _____ Washer
- [x] _____ Dryer

### ELECTRONICS
- [ ] _____ Alarm System
- [ ] _____ Intercom
- [ ] _____ Satellite Dishes

### LIVING AREAS
- [x] _2_ Fireplace Screen/Door
- [ ] _____ Gas Log
- [ ] _____ Ceiling Fans
- [ ] _____ Window Fans
- [x] _____ Window Treatments

### WATER/HVAC
- [ ] _____ Water Softener/Conditioner
- [ ] _____ Electronic Air Filter
- [ ] _____ Furnace Humidifier
- [ ] _____ Window A/C Units

### RECREATION
- [ ] _____ Hot Tub/Spa, Equipment & Cover
- [ ] _____ Pool Equipment & Cover
- [ ] _____ Sauna
- [ ] _____ Playground Equipment

### OTHER
- [ ] _____ Storage Shed
- [ ] _____ Garage Door Opener
- [ ] _____ Garage Door Remote/Fob
- [ ] _____ Back-up Generator
- [ ] _____ Radon Remediation System
- [ ] _____ Solar Panels
- [ ] _____ _____
- [ ] _____ _____
- [ ] _____ _____

**EXCLUSIONS:** *All above items convey in "as is" condition.*

**LEASED ITEMS, LEASED SYSTEMS & SERVICE CONTRACTS:** Leased items/systems or service contracts, including but not limited to: solar panels & systems, appliances, fuel tanks, water treatment systems, lawn contracts, pest control contracts, security system and/or monitoring, and satellite contracts **DO NOT CONVEY** unless disclosed here: _____

**CERTIFICATION:** Seller certifies that Seller has completed this checklist disclosing what conveys with the Property.

*Kyle E Skopic*　　　　　　　10/4/18
Seller Kyle E Skopic　　　　　　Date
*as Commissioner y Sale*

Seller　　　　　　　　　　　　　Date

**2. ACKNOWLEDGEMENT AND INCORPORATION INTO CONTRACT:** *(Completed only after presentation to the Buyer)*
The Contract of Sale dated ___10/04/2018___　and Seller Kyle E Skopic *as Commissioner y Sale*
　　　　　　　　　　　　　　　and Buyer ___Calvin Minasian___　___Hasmik Martirosyan___
_____ for the Property referenced above is hereby amended by the incorporation of this Addendum.

*Calvin Minasian*
dotloop verified
10/04/18 5:03PM EDT
K8HX-AMDQ-TPPX-I8PJ

Seller *(sign only after Buyer)*　　Date　　Buyer　　　　　　　　　　Date

*Hasmik Martirosyan*
dotloop verified
10/04/18 5:03PM EDT
ECDA-AJF0-TVDP-C905

Seller *(sign only after Buyer)*　　Date　　Buyer　　　　　　　　　　Date

©2017 The Greater Capital Area Association of REALTORS®, Inc.
This Recommended Form is the property of the Greater Capital Area Association of REALTORS®, Inc. and is for use by REALTOR® members only.
Previous editions of this Form should be destroyed.

dotlooo signature verification: https://www.dottloo.us/NP9i-LVII-6NGZ

dotloop signature verification: dtlp.us/YP0h-LVii-6KOZ

DocuSign Envelope ID: C76DD83F-0B44-4BEB-8799-5313DEBA9F88

COMPASS



## SELLER'S DISCLOSURE STATEMENT
### Instructions to the Seller for Seller's Disclosure Statement

These Instructions are to assist the Seller in completing the required Seller's Disclosure Statement in order to comply with the District of Columbia Residential Real Property Seller Disclosure Act.

**1. Who must complete the Seller's Disclosure Statement?** The Seller, not the broker and not the management company, condominium association, cooperative association or homeowners association.

**2. In what types of transactions must the Seller provide the Seller's Disclosure Statement to the Purchaser?** The Act applies to the following types of transfers or sales of District of Columbia real estate:
   (a) where the property consists of <u>one</u> to <u>four</u> residential dwelling units, <u>and</u>,
   (b) the transactions a sale, exchange, installment land contract, lease with an option to purchase, or any other option to purchase, <u>and</u>,
   (c) the purchaser expresses, in writing, an interest to reside in the property to be transferred.

**However, the Act does <u>not</u> apply to:**
   (a) court ordered transfers;
   (b) transfers to a mortgagee by a mortgagor in default;
   (c) transfers by sale under a power of sale in a deed of trust or mortgage or any foreclosure sale under a decree of foreclosure or deed in lieu of foreclosures;
   (d) transfers by a non-occupant fiduciary administering a decedent's estate, guardianship, conservatorship or trust;
   (e) transfers between co-tenants;
   (f) transfers made to the transferor's spouse, parent, grandparent, child, grandchild or sibling (or any combinations of the foregoing);
   (g) transfer between spouses under a divorce judgment incidental to such a judgment;
   (h) transfers or exchanges to or from any governmental entity; and
   (i) transfers made by a person of newly constructed residential property that has not been inhabited.

**3. When does the Seller's Disclosure Statement have to be provided to the Purchaser?** In a sale, before or at the time the prospective transferee executes a purchase agreement with the transferor. In an installment sales contract (where a binding purchase contract has not been executed), or in the case of a lease with no option to purchase, before or at the time the prospective transferee executes the installment sales contract or lease with the transferor.

**4. What information must the Seller disclose?** Answer ALL questions on the Seller's Disclosure Statement. If some items do not apply to your property, check "N/A" (not applicable). If you do not know the facts, check "UNKNOWN". Report actually known conditions referred to in the questions. Each disclosure must be made in "good faith" (honesty in fact in the making of the disclosure). Attach additional pages with your signature if additional space is required.

**The Seller of a condominium unit, cooperative unit, or a lot in a homeowners association, is to provide information only as to the Seller's unit or lot, and not as to any common elements, common areas or other areas outside of the unit or lot.**

Arlington Office, 3001 Washington Blvd, Suite 400 Arlington VA 22401
Phone: 703.850.9100    Fax:        Nicholas Dorcon                     1077 Paper Mill Ct
Produced with zipForm® by zipLogix 18070 Fifteen Mile Road, Fraser, Michigan 48026  www.zipLogix.com

'dotloop signature verification: [illegible]
DocuSign Envelope ID: C76DD03F-0BA4-4BEB-8799-5313DEBA9F88
Authentisign ID: 27792BE4-DBE7-4A71-9AE1-F2E0FE3E28B7

COMPASS

 

# SELLER'S DISCLOSURE STATEMENT
## Instructions to the Seller for Seller's Disclosure Statement

**5. What is the remedy if the Seller does not provide the Seller's Disclosure Statement to the Transferee?** If the Seller's Disclosure Statement is delivered <u>after</u> the purchaser executes the purchase agreement, installment sales contract or lease with an option to purchase, the purchaser may terminate the transaction by written notice to the seller not more than five (5) calendar days after receipt of the Seller's Disclosure Statement by the purchaser, and the deposit must be returned to the purchaser. The right to terminate is waived if not exercised before the earliest of:

    (a) the making of an application for a mortgage loan (if the lender discloses that the right to rescind terminates on submission of the application); or

    (b) settlement or date of occupancy in the case of a sale; or

    (c) occupancy in the case of a lease with an option to purchase.

**6. If the Seller finds out different information after providing the Seller's Disclosure Statement to the Purchaser, how does this impact a ratified contract?** If information becomes inaccurate after delivery of the disclosure form, the inaccuracy shall not be grounds for terminating the transaction.

**7. How must a Seller deliver the Seller's Disclosure Statement to the Transferee?** The Seller's Disclosure Statement must be delivered by personal delivery, facsimile delivery, or by registered mail to the transferee. Execution by the transferor of a facsimile is considered execution of the original.

This is the required Seller's Disclosure Statement approved by the Washington, DC Board of Real Estate.

GCAAR Form #919 – DC Seller's Disclosure      Page 2 of 7      Revised October 2011

Produced with zipForm® by zipLogix 18070 Fifteen Mile Road, Fraser, Michigan 48026   www.zipLogix.com      1077 Paper Mill Ct

dotloop signature verification: dtlp.us/YPUH-LVH-6XOZ

DocuSign Envelope ID: C76DD03F-0B04-4BEB-8799-5313DEBA9F88
AriiniSign Envelope ID: C76DD03F-0B04-4BEB-8799-5313DEBA9F88

# SELLER'S PROPERTY CONDITION STATEMENT
## For Washington, DC
### 1077 Paper Mill Ct NW
**Property Address:** Washington, DC  20007-3619

Is the property included in a:

condominium association?  ☒ Yes  ☐ No
cooperative?  ☐ Yes  ☐ No
homeowners association with mandatory participation and fee?
☐ Yes  ☐ No

If this is a sale of a condominium unit or cooperative unit, or in a homeowners association, this disclosure form provides information only as to the unit (as defined in the governing documents of the association) or lot (as defined in the covenants applicable to the lot), and not as to any common elements, common areas or other areas outside of the unit or lot.

**Purpose of Statement:** This Statement is a disclosure by the Seller of the defects or information actually known by the Seller concerning the property, in compliance with the District of Columbia Residential Real Property Seller Disclosure Act. Unless otherwise advised, the Seller does not possess an expertise in construction, architecture, engineering, or any other specific area related to the construction of the improvements on the property or the land. Also, unless otherwise advised, the Seller has not conducted any inspection of generally inaccessible areas such as the foundation or roof. THIS STATEMENT IS NOT A WARRANTY OF ANY KIND BY THE SELLER OR BY ANY AGENT REPRESENTING THE SELLER IN THIS TRANSACTION, AND IS NOT A SUBSTITUTE FOR ANY INSPECTIONS OR WARRANTIES THE BUYER MAY WISH TO OBTAIN.

**Seller Disclosure:** The Seller discloses the following information with the knowledge that, even though this is not a warranty, the Seller specifically makes the following statements based on the seller's actual knowledge at the signing of this document. Upon receiving this statement from the Seller, the Seller's agent is required to provide a copy to the Buyer or the agent of the Buyer. The Seller authorizes its agent (s) to provide a copy of this statement to any prospective buyer or agent of such prospective buyer in connection with any actual or anticipated sale of property. The following are statements made solely by the Seller and are not the statements of the Seller's agent (s), if any. This information is a disclosure only and is not intended to be a part of any contract between Buyer and Seller.

The seller(s) completing this disclosure statement have owned the property from  08/18/2008
to  10/04/2018  .
The seller(s) completing this disclosure have occupied the residence from  N/A - rental
to _____ .
property until recently and
owner(s) have not occupied for many years .

## A. Structural Conditions

1. **Roof** ☐ roof is a common element maintained by condominium or cooperative (no further roof disclosure required).

   Age of Roof  ☐ 0-5 years  ☐ 5-10 years  ☐ 10-15 years  ☐ 15+ years  ☐ Unknown
   Does the seller have actual knowledge of any current leaks or evidence of moisture from roof?
   ☐ Yes  ☐ No  If yes, comments: _____
   _____

   Does the seller have actual knowledge of any existing fire retardant treated plywood?
   ☐ Yes  ☐ No  If yes, comments: _____
   _____

2. **Fireplace/Chimney(s)**
   Does the seller have actual knowledge of any defects in the working order of the fireplaces?
   ☐ Yes  ☐ No  ☐ No Fireplace(s)
   If yes, comments: _____
   _____

   Does the seller know when the chimney(s) and/or flue were last inspected and/or serviced?
   ☐ Yes  ☐ No  ☐ No chimneys or flues
   If yes, when were they last serviced or inspected? _____

This is the required Seller's Disclosure Statement approved by the Washington, DC Board of Real Estate.

'dotloop signature verification: dtlp.us/YP0E-VilE-BKOZ

DocuSign Envelope ID: C76DD03F-0BA4-4BEB-8799-5313DEBA9F88

3. **Basement**
Does the seller have actual knowledge of any current leaks or evidence of moisture in the basement?

☐ Yes ☐ No ☐ Not Applicable

If yes, comments: _____

Does the seller have actual knowledge of any structural defects in the foundation?

☐ Yes ☐ No

If yes, comments: _____

4. **Walls and floors**
Does the seller have actual knowledge of any structural defects in walls or floors?

☐ Yes ☐ No

If yes, comments: _____

5. **Insulation**
Does the seller have actual knowledge of presence of urea formaldehyde foam insulation?

☐ Yes ☐ No

If yes, comments: _____

6. **Windows**
Does the seller have actual knowledge of any windows not in normal working order?

☐ Yes ☐ No

If yes, comments: _____

## B. Operating Condition of Property Systems

1. **Heating System** ☐ heating system is a common element maintained by condominium or cooperative (no further disclosure on heating system required).

Type of system ☐ Forced Air ☐ Radiator ☐ Heat Pump
☐ Electric baseboard ☐ Other

Heating Fuel ☐ Natural Gas ☐ Electric ☐ Oil ☐ Other
Age of system ☐ 0-5 years ☐ 5-10 years ☐ 10-15 years ☐ Unknown

Does the seller have actual knowledge that heat is not supplied to any finished rooms?

☐ Yes ☐ No

If yes, comments: _____

Does the seller have actual knowledge of any defects in the heating system?

☐ Yes ☐ No

If yes, comments: _____

Does the heating system include:
Humidifier ☐ Yes ☐ No ☐ Unknown
Electronic air filter ☐ Yes ☐ No ☐ Unknown

If installed, does the seller have actual knowledge of any defects with the humidifier and electronic filter?

☐ Yes ☐ No ☐ Not Applicable

If yes, comments: _____

2. **Air Conditioning System** ☐ air conditioning is a common element maintained by condominium or cooperative (no further disclosure on air conditioning system required).

Type of system: ☐ Central AC ☐ Heat Pump ☐ Window/wall units
☐ Other ☐ Not Applicable

Air Conditioning Fuel ☐ Natural Gas ☐ Electric ☐ Oil ☐ Other
Age of system ☐ 0-5 years ☐ 5-10 years ☐ 10-15 years ☐ Unknown

This is the required Seller's Disclosure Statement approved by the Washington, DC Board of Real Estate.

GCAAR Form #919 – DC Seller's Disclosure    Page 4 of 7    Revised October 2011

Produced with zipForm® by zipLogix 18070 Fifteen Mile Road, Fraser, Michigan 48026   www.zipLogix.com    1077 Paper Mill Ct

dotlooo signature verification: dsls.us/yPY-EVB-GKGW
DocuSign Envelope ID: C76DDA3F-9BA4-4B5B-8799-5313DEBA9F88

If central AC, does the seller have actual knowledge that cooling is not supplied to any finished rooms? ☐ Yes ☐ No ☐ Not Applicable

If yes, comments: _____

Does the seller have actual knowledge of any problems or defects in the cooling system?
☐ Yes ☐ No ☐ Not Applicable

If yes, comments: _____

**3. Plumbing System**

Type of system ☐ Copper ☐ Galvanized ☐ Plastic Polybutelene ☐ Unknown

Water Supply ☐ Public ☐ Well

Sewage Disposal ☐ Public ☐ Well

Water Heater Fuel ☐ Natural Gas ☐ Electric ☐ Oil ☐ Other

Does the seller have actual knowledge of any defects with the plumbing system?
☐ Yes ☐ No

If yes, comments: _____

**4. Electrical System**

Does the seller have actual knowledge of any defects in the electrical system, including the electrical fuses, circuit breakers, outlets, or wiring?
☐ Yes ☐ No

If yes, comments: _____

## C. Appliances

Does the seller have actual knowledge of any defects with the following appliances?

| Appliance | Yes | No | Not Applicable |
|---|---|---|---|
| Range/Oven | ☐ Yes | ☐ No | ☐ Not Applicable |
| Dishwasher | ☐ Yes | ☐ No | ☐ Not Applicable |
| Refrigerator | ☐ Yes | ☐ No | ☐ Not Applicable |
| Range hood/fan | ☐ Yes | ☐ No | ☐ Not Applicable |
| Microwave oven | ☐ Yes | ☐ No | ☐ Not Applicable |
| Garbage Disposal | ☐ Yes | ☐ No | ☐ Not Applicable |
| Sump Pump | ☐ Yes | ☐ No | ☐ Not Applicable |
| Trash compactor | ☐ Yes | ☐ No | ☐ Not Applicable |
| TV antenna/controls | ☐ Yes | ☐ No | ☐ Not Applicable |
| Central vacuum | ☐ Yes | ☐ No | ☐ Not Applicable |
| Ceiling fan | ☐ Yes | ☐ No | ☐ Not Applicable |
| Attic fan | ☐ Yes | ☐ No | ☐ Not Applicable |
| Sauna/Hot tub | ☐ Yes | ☐ No | ☐ Not Applicable |
| Pool heater & equip. | ☐ Yes | ☐ No | ☐ Not Applicable |
| Security System | ☐ Yes | ☐ No | ☐ Not Applicable |
| Intercom System | ☐ Yes | ☐ No | ☐ Not Applicable |
| Garage door opener | ☐ Yes | ☐ No | ☐ Not Applicable |
| & remote controls | ☐ Yes | ☐ No | ☐ Not Applicable |
| Lawn sprinkler system | ☐ Yes | ☐ No | ☐ Not Applicable |
| Water treatment system | ☐ Yes | ☐ No | ☐ Not Applicable |
| Smoke Detectors | ☐ Yes | ☐ No | ☐ Not Applicable |
| Carbon Monoxide Detectors | ☐ Yes | ☐ No | ☐ Not Applicable |
| Other Fixtures | ☐ Yes | ☐ No | ☐ Not Applicable |
| Or Appliances | ☐ Yes | ☐ No | ☐ Not Applicable |

If yes to any of the above, describe defects: _____

This is the required Seller's Disclosure Statement approved by the Washington, DC Board of Real Estate.

GCAAR Form #919 – DC Seller's Disclosure        Page 5 of 7        Revised October 2011

Produced with zipForm® by zipLogix 18070 Fifteen Mile Road, Fraser, Michigan 48026   www.zipLogix.com        1077 Paper Mill Ct

dotloop signature verification: dtlp.us/LYH-SN-QZ
DocuSign Envelope ID: C76DD33F-0B0A-4BEB-8799-5313DEBA9F88

## D. Exterior/Environmental Issues

1. **Exterior Drainage**
   Does the seller have actual knowledge of any problem with drainage on the property?
   ☐ Yes   ☐ No
   If yes, comments: _____

2. **Damage to property**
   Does the seller have actual knowledge whether the property has previously been damaged by:
   Fire        ☐ Yes   ☐ No
   Wind        ☐ Yes   ☐ No
   Flooding    ☐ Yes   ☐ No
   If yes, comments: _____
   _____
   _____

3. **Wood destroying insects or rodents?**
   Does the seller have actual knowledge of any infestation or treatment for infestations?
   ☐ Yes   ☐ No
   If yes, comments: _____

   Does the seller have actual knowledge of any prior damage or repairs due to a previous infestation?
   ☐ Yes   ☐ No
   If yes, comments: _____

4. **Does the seller have actual knowledge of any substances, materials or environmental hazards (including but not limited to asbestos, radon gas, lead based paint, underground storage tanks, formaldehyde, contaminated soil, or other contamination) on or affecting the property?**
   ☐ Yes   ☐ No
   If yes, comments: _____

5. **Does the seller have actual knowledge of any zoning violations, nonconforming uses, violation of building restrictions or setback requirements, or any recorded or unrecorded easement, except for utilities, on or affecting the property?**
   ☐ Yes   ☐ No
   If yes, comments: _____

6. **Does the seller have actual knowledge that this property is a D.C. Landmark included in a designated historic district or is designated a historic property?**
   ☐ Yes   ☐ No
   If yes, comments: _____

7. **Has the property been cited for a violation of any historic preservation law or regulation during your ownership?**
   ☐ Yes   ☐ No
   If yes, comments: _____

This is the required Seller's Disclosure Statement approved by the Washington, DC Board of Real Estate.
GCAAR Form #919 – DC Seller's Disclosure     Page 6 of 7     Revised October 2011
Produced with zipForm® by zipLogix 18070 Fifteen Mile Road, Fraser, Michigan 48026   www.zipLogix.com     1077 Paper Mill Ct

dotloop signature verification: dtlp.us/7YUl-6XJ-6XJZ

DocuSign Envelope ID: C76DD835-DBA4-4BEB-8799-5313DEBA9F88

8. **Does the seller have actual knowledge if a façade easement or a conservation easement has been placed on the property?**

☐ Yes      ☐ No

If yes, comments: _On behalf of owner (s) Commissioner y Sale_

~~The seller(s)~~ certifies that the information in this statement is true and correct to the best of their knowledge as known on the date of signature _and Commissioner y Sale has no_ _actual knowledge of conditions y property_

_Kyle E_ _____      10/4/18_____

Seller                                   Date

Kyle E Skopic

_Commissioner y Sale_

_____      _____

Seller                                   Date


Buyer(s) have read and acknowledge receipt of this statement and acknowledge that this statement is made based upon the seller's actual knowledge as of the above date. This disclosure is not a substitute for any inspections or warranties which the buyer(s) may wish to obtain. This disclosure is NOT a statement, representation, or warranty by any of the seller's agents or any sub-agents as to the presence or absence of any condition, defect or malfunction or as to the nature of any condition, defect or malfunction.

_Calvin Minasian_    dotloop verified
                     10/04/18 5:03PM EDT
                     UNHL-9MYP-CVTJ-XUP7         _____

Buyer                                     Date

_Hasmik Martirosyan_    dotloop verified
                     10/04/18 5:03PM EDT
                     RNR2-LMP0-G0QE-LDTA         _____

Buyer                                       Date


This is the required Seller's Disclosure Statement approved by the Washington, DC Board of Real Estate.

Produced with zipForm® by zipLogix 18070 Fifteen Mile Road, Fraser, Michigan 48026    www.zipLogix.com      1077 Paper Mill Ct

dotloop signature verification: dtlp.us/YPJi-LvfI-FNOZ
DocuSign Envelope ID: C76DD43F-08A4-4BEB-8799-5313DEBA9F88




---

**THIS NOTICE IS REQUIRED BY LAW AND IS NOT A CONTRACT.**

**THIS DISCLOSURE DOES NOT CREATE A BROKERAGE RELATIONSHIP.**

---

## Disclosure of Brokerage Relationship
## District of Columbia

Prior to providing specific real estate assistance, District of Columbia law requires that a licensee disclose to any party who the licensee does **NOT** represent the identity of the party to the proposed transaction which the licensee does represent. Even though a licensee may not represent you, that licensee must still treat you honestly in the transaction.

---

We, the undersigned ☑ Buyer(s)/Tenant(s) or ☐ Seller(s)/Landlord(s) acknowledge receipt of this Disclosure, and understand we are **NOT** represented by the licensee identified below.

Nicholas Dorcon    SP98376228       and Compass
<div style="text-align:center">(Licensee & License #)             (Brokerage Firm)</div>

The licensee and brokerage firm named above represent the following party in the real estate transaction:

☑ **Seller(s)/Landlord(s)** (The licensee has entered into a written listing agreement with the seller(s) or landlord(s) or is acting as a sub-agent of the listing broker.)

☐ **Buyer(s)/Tenant(s)** (The licensee has entered into a written agency agreement with the buyer/tenant.)

☐ **Designated Agent of the** ☐ Buyer(s)/Tenant(s) or ☐ Seller(s)/Landlord(s)
(Both the buyers and sellers have previously consented to "Designated Agency", and the licensee listed above is indicating the parties represented.

| Signature | Date |
|---|---|
| *[signature]* | 10/5/2018 |
| Acknowledged | Date |
| Hasmik Martirosyan | 10/5/2018 |
| Acknowledged | Date |

---

Name of Person(s):    **Nicholas Dorcon**

I certify on this date that I, the real estate agent, have delivered a copy of this disclosure to the person(s) identified above.

| Signature | Date |
|---|---|
| *Nicholas Dorcon* | 10/07/2018 |
| Signed (Licensee) | Date |

---

<div style="text-align:center">Previous editions of this form should be destroyed.</div>

# EXHIBIT E





CHRISTIE'S
INTERNATIONAL REAL ESTATE

## GCAAR Sales Contract

### TIME IS OF THE ESSENCE AS TO ALL TERMS OF THIS CONTRACT.

*The Circuit Court of Fairfax County, VA* **MB**

This SALES CONTRACT ("Contract") is made on _____ **10/10/18** _____ ("Date of Offer")
between **Mehrunnisa Bashir** _____ ("Buyer")
and **Ben Pourbabai** by Kyle E. Skopic, Commissioner of Sale by appointment Of ("Seller"), who
among other things, hereby confirm and acknowledge by their initials and signatures herein that by prior disclosure
in this real estate transaction _____ **Long & Foster Real Estate, Inc.** _____ ("Listing Company")
represents Seller, and **Long & Foster Real Estate, Inc.** _____ ("Selling Company")
represents ☒ Buyer OR ☐ Seller. The Listing Company and Selling Company are collectively referred to as "Broker."
(If the Broker is acting as a dual representative for both Seller and Buyer, then the appropriate disclosure form is attached to
and made a part of this Contract.) In consideration of the mutual promises and covenants set forth below, and other good
and valuable consideration the receipt and sufficiency of which is acknowledged, the parties agree as follows:

1. **REAL PROPERTY:** Buyer will buy and Seller will sell for the sales price ("Sales Price"), Seller's entire interest in
in the real property (with all improvements, rights and appurtenances) described as follows ("Property"):
Street Address **3628 RESERVOIR RD NW** _____
Unit # _____ City **WASHINGTON** State **DC** Zip Code **20007**
Condominium/Cooperative Project Name **The Cloisters** _____
Parking Space(s) # _____ Storage Unit # _____
Legal Description: Lot(s) **1131** Block/Square **1292** Section **1292**
Subdivision **GEORGETOWN** Tax Account # **1292//1131**

2. **JURISDICTIONAL ADDENDUM:** The following Jurisdictional Addendum, if ratified and attached, is made a part of
this Contract. Jurisdictional Addendum for ☒ DC ☐ MD/County: **Washington DC**

3. **PRICE AND FINANCING:** (All percentages refer to percent of Sales Price.)
   A. **Down Payment** _____ 0 %
   B. **Financing** 1. First Trust (if applicable) _____ 0 % $ **1,517,500**
        2. Second Trust (if applicable) _____ 0 %
        3. Seller Held Trust _____ 0 %
          (if applicable, addendum attached)
       TOTAL FINANCING _____ 0 %
       SALES PRICE $ ~~1,500,000.00~~   **MB**

   C. **First Deed of Trust** Purchaser will ☐ Obtain OR ☐ Assume a ☐ Fixed OR an ☐ Adjustable rate First Deed
   of Trust loan of the following type:

   ☐ Conventional   See Addendum Attached    ☒ This contract is not contingent on Financing.
   ☐ FHA   See Addendum Attached    ☒ Other: **Cash Sale**
   ☐ VA   See Addendum Attached

   D. **Second Deed of Trust** Buyer will ☐ Obtain OR ☐ Assume a ☐ Fixed OR an ☐ Adjustable rate Second Deed
   of Trust loan.

   E. **Assumption** Only Assumption fee, if any, and all charges related to the assumption will be paid by the Buyer.

   If Buyer assumes Seller's loan(s): (i) Buyer and Seller ☐ will OR ☐ will not obtain a release of Seller's liability to the
   financial institution or U.S. Government for the repayment of the loan by Settlement, (ii) Buyer and Seller ☐ will OR
   ☐ will not obtain substitution of Seller's VA entitlement by Settlement. Balances of any assumed loans, secondary
   financing and cash down payments are approximate.

Initials: Seller _____ as Commissioner of sale   Buyer **MB**

4. **DEPOSIT:** Buyer's deposit ("Deposit") in the amount of _____ $20,000.00 _____ shall be held by **RGS Title** _____ ("Escrow Agent"). Buyer ☐ has delivered the Deposit OR ☒ Buyer will deliver the Deposit within ____3____ days after Date of Ratification. (If the Property is in Maryland and Broker is the Escrow Agent, the Deposit must be delivered to Escrow Agent within 3 days of the Date of Ratification.) The Deposit will be placed in an escrow account of the Escrow Agent after Date of Ratification in conformance with the laws and regulations of the appropriate jurisdiction and/or, if VA financing applies, as required by Title 38 of the U.S. Code. This account may be interest bearing and all parties waive any claim to interest resulting from the Deposit. The Deposit will be held in escrow until: (i) credited toward the Sales Price at Settlement; (ii) all parties have agreed in writing as to its disposition; (iii) a court of competent jurisdiction orders disbursement and all appeal periods have expired; or, (iv) disposed of in any other manner authorized by the laws and regulations of the appropriate jurisdiction. Seller and Buyer agree that Escrow Agent will have no liability to any party on account of disbursement of the Deposit or on account of failure to disburse the Deposit, except in the event of the Escrow Agent's gross negligence or willful misconduct.

5. **FUNDS DUE AT SETTLEMENT:** The balance of the funds due at Settlement from Buyer and/or Seller will be paid on or before the Settlement Date. Buyer and/or Seller shall verify with Settlement Agent how funds due at Settlement are to be paid. An assignment of funds shall not be used without prior written consent of all parties to the transaction.

6. **SETTLEMENT:** Seller and Buyer will perform in accordance with the terms of this Contract ("Settlement") on **30 days from ratification or sooner** ("Settlement Date") except as otherwise provided in this Contract. Buyer selects **RGS Title** _____ ("Settlement Agent") to conduct the Settlement. Buyer agrees to contact the Settlement Agent within 10 Days after the Date of Ratification to schedule Settlement and to place a title order.

7. **PROPERTY MAINTENANCE AND CONDITION:** Except as otherwise specified herein, Seller will deliver the Property at Settlement vacant, free and clear of trash and debris, broom clean and in substantially the same physical condition to be determined as of ☐ Date of Offer OR ☒ Date of home inspection OR ☐ Other: _____ _____. Seller will have all utilities in service through Settlement or as otherwise agreed. Buyer and Seller will not hold the Broker liable for any breach of this paragraph.

Buyer acknowledges, subject to Seller acceptance, that this Contract may be contingent upon home inspection(s) and/or other inspections to ascertain the physical condition of the Property. If Buyer desires one or more inspection contingencies, such contingencies must be included in an addendum to this Contract.

☒ This Contract is contingent upon home inspection(s) and/or other inspections. (Addendum Attached)

    OR

☐ Buyer declines the opportunity to make Contract contingent upon home inspection(s) and/or other inspections. Buyer acknowledges that except as otherwise specified in this Contract, the Property, including electrical, plumbing, existing appliances, heating, air conditioning, equipment and fixtures shall convey in its AS-IS CONDITION as of the date specified above. Buyer further acknowledges that neither the Brokers and/or their agents nor subagents are responsible for Property defects.

8. **ACCESS TO PROPERTY:** Seller will provide the Broker, Buyer, inspectors representing Buyer and representatives of lending institutions for Appraisal purposes reasonable access to the Property to comply with this Contract. In addition, Buyer and/or Buyer's representative will have the right to make a final inspection within 5 days prior to Settlement and/or occupancy, unless otherwise agreed to by Buyer and Seller.

9. **INCLUSIONS/EXCLUSIONS:** The Property includes the personal property and fixtures as defined and identified in the attached Inclusions/Exclusions Disclosure and Addendum.

10. **HOME WARRANTY:** ☐ Yes OR ☒ No

Home warranty policy paid for and provided at Settlement by: ☐ Buyer OR ☐ Seller

Cost not to exceed $ _____. Warranty provider to be _____

**11. BUYER'S REPRESENTATIONS:** Buyer ☒ will OR ☐ will not occupy the Property as Buyer's principal residence. Unless specified in a written contingency, neither this Contract nor the financing is dependent or contingent on the sale and settlement or lease of other real property. The Selling Company ☒ is OR ☐ is not authorized to disclose to the Listing Company, Seller and any lender the appropriate financial or credit information statement provided to the Selling Company by Buyer. Buyer acknowledges that Seller is relying upon all of Buyer's representations, including without limitation, the accuracy of financial or credit information given to Seller, Broker or the Lender by Buyer.

**12. WOOD-DESTROYING INSECT INSPECTION:** Buyer at Buyer's expense (except under VA financing, then at Seller's expense) may choose to obtain a wood-destroying insect inspection of the Property by a licensed pest control firm. If Buyer elects to do so, Buyer will furnish to Seller a written report from the licensed pest control firm dated not more than 60 days prior to Settlement showing that all dwelling(s) and/or garage(s) within the Property are free of visible evidence of any wood-destroying insects, and free from visible insect damage. Any treatment and/or repairs for damage recommended in the licensed pest control firm's report will be made at Seller's expense. Said treatment shall be completed by a licensed pest control firm and said repairs shall be completed by a contractor licensed in the appropriate jurisdiction.

**13. LEAD-BASED PAINT REGULATIONS:** Federal law requires sellers of properties built before 1978 to provide buyers with the required federal disclosure regarding lead paint (GCAAR form "Lead Paint--Federal Disclosure") and the EPA pamphlet "Protect Your Family from Lead in Your Home". In addition, for District of Columbia properties built before 1978, sellers are required to provide buyers the District of Columbia Lead Disclosure (GCAAR form "Lead Paint--DC Disclosure"). A seller who fails to provide the required local and federal lead-based paint forms, including the EPA pamphlet, may be liable under the law for three times the amount of damages and may be subject to both civil and criminal penalties. Seller and any agent involved in the transaction are required to retain a copy of the completed lead-based paint disclosure forms for a period of six (6) years following the date of Settlement. If the dwelling(s) was built prior to 1978 or if the building date is uncertain and the Property is not exempt from the Residential Federal Lead-Based Paint Hazard Reduction Act of 1992, this Contract is voidable by Buyer until Buyer acknowledges receipt of the required federal lead-based paint form, including the EPA pamphlet, and DC Lead Disclosure if applicable, and has either taken the opportunity to incorporate a Lead-Based Paint Inspection contingency or waived such right. Buyer retains the right to unconditionally, and without risk of loss of Deposit or other adverse effects, declare Contract void until said acknowledgement occurs. Seller and Buyer acknowledge by their respective initials below that they have read and understand the provisions of this paragraph.

_(initials)_ / _____ Seller's Initials    _MB_ / _____ Buyer's Initials

**Completed Lead-Based Paint forms are attached.**    ☒ Yes    ☐ No    ☐ N/A

In accordance with the Lead Renovation, Repair and Painting Rule ("RRP") as adopted by the Environmental Protection Agency ("the EPA"), effective April 22, 2010, if the improvements on the Property were built before 1978, contractor(s) engaged by Seller to renovate, repair or paint the Property must be certified by the EPA where such work will disturb more than six square feet of lead-based paint per room for interior projects, more than 20 square feet of lead-based paint for any exterior project, or includes window replacement or demolition ("Covered Work"). Before and during any Covered Work, contractor(s) must comply with all requirements of the RRP. A seller who personally performs any Covered Work on a rental property is required to be certified by the EPA prior to performing such Covered Work. No certification is required for a seller who personally performs Covered Work on a seller's principal residence. However, seller has the ultimate responsibility for the safety of seller's family or children while performing such Covered Work. For detailed information regarding the RRP, Seller should visit http://www2.epa.gov/lead/renovation-repair-and-painting-program. The Seller and Buyer acknowledge that they have read and understand the provisions of this section.

_(initials)_    Seller's Initials    _MB_ / _____ Buyer's Initials

**14. FINANCING APPLICATION:** If this Contract is contingent on financing, Buyer will make written application for the Specified Financing and any Lender required property insurance no later than 7 days after the Date of Ratification. Buyer grants permission for the Selling Company and the Lender to disclose to the Listing Company and Seller general information about the progress of the loan application and loan approval process. If Buyer fails to settle except due to any Default by Seller, then the provisions of the DEFAULT paragraph shall apply. Seller agrees to comply with reasonable Lender requirements except as otherwise provided in the LENDER REQUIRED REPAIRS paragraph of the applicable financing contingency addendum.

**15. ALTERNATE FINANCING:** Buyer may substitute alternate financing and/or an alternate lender for Specified Financing provided: (a) Buyer is qualified for alternative financing; (b) there is no additional expense to Seller; (c) the Settlement Date is not delayed; and (d) if Buyer fails to perform at Settlement except due to any Default by Seller, then the provisions of the DEFAULT paragraph shall apply.

**16. DAMAGE OR LOSS:** The risk of damage or loss to the Property by fire, act of God, or other casualty remains with Seller until the execution and delivery of the Deed of conveyance to Buyer at Settlement.

**17. TITLE:** The title report and survey, if required, will be ordered pursuant to the terms in Settlement paragraph and, if not available on the Settlement Date, then Settlement may be delayed for up to 10 Business Days to obtain the title report and survey after which this Contract, at the option of Seller, may be terminated and the Deposit will be refunded in full to Buyer according to the terms of the DEPOSIT paragraph. Fee simple title to the Property, and everything that conveys with it, will be sold free of liens except for any loans assumed by Buyer. Title is to be good and marketable, and insurable by a licensed title insurance company with no additional risk premium. Title may be subject to commonly acceptable easements, covenants, conditions and restrictions of record, if any; otherwise, Buyer may declare this Contract void, unless the defects are of such character that they may be remedied within 30 Days beyond the Settlement Date. In case action is required to perfect the title, such action must be taken promptly by Seller at Seller's expense. The Broker is hereby expressly released from all liability for damages by reason of any defect in the title. Seller will convey the Property by Special Warranty Deed or by Personal Representative's Deed in the event Seller is a decedent's estate ("Deed"). Seller will sign such affidavits, lien waivers, tax certifications, and other documents as may be required by the Lender, title insurance company, Settlement Agent, or government authority, and authorizes the Settlement Agent to obtain pay-off or assumption information from any existing lenders. The manner of taking title may have significant legal and tax consequences. Buyer is advised to seek the appropriate professional advice concerning the manner of taking title. Unless otherwise agreed to in writing, Seller will pay any special assessments and will comply with all orders or notices of violations of any county or local authority, condominium unit owners' association, and/or homeowners' association or actions in any court on account thereof, against or affecting the Property on the Settlement Date. The parties authorize and direct the Settlement Agent to provide a copy of the Combined Settlement Statement to Seller, Buyer, Listing Company, Selling Company, Homeowner/Condominium Association, Relocation Company and/or any third-party payees reflected on the Settlement Statement.

**18. POSSESSION DATE:** Unless otherwise agreed to in writing between Seller and Buyer, Seller will give possession of the Property at Settlement, including delivery of keys, if any. If Seller fails to do so and occupies the Property beyond Settlement, Seller will be a tenant at sufferance of Buyer and hereby expressly waives all notice to quit as provided by law. Buyer will have the right to proceed by any legal means available to obtain possession of the Property. Seller will pay any damages and costs incurred by Buyer including reasonable Legal Expenses.

**19. FEES:** Fees for the preparation of the Deed, that portion of the Settlement Agent's fee billed to Seller, costs of releasing existing encumbrances, Seller's legal fees and any other proper charges assessed to Seller will be paid by Seller. Fees for the title exam (except as otherwise provided), survey, recording (including those for any purchase money trusts) and that portion of the Settlement Agent's fee billed to Buyer, Buyer's legal fees and any other proper charges assessed to Buyer will be paid by Buyer. Fees to be charged will be reasonable and customary for the jurisdiction in which the Property is located. (Recording and Transfer Taxes are covered in the appropriate jurisdictional addendum.)

**20. BROKER'S FEE:** Seller irrevocably instructs the Settlement Agent to pay the Broker compensation ("Broker's Fee") at Settlement as set forth in the listing agreement and to disburse the Broker's Fee offered by the Listing Company to the Selling Company as set forth in the multiple listing service as of the Date of Offer, and any remaining amount of Broker's Fee to the Listing Company.

**21. ADJUSTMENTS:** Adjustments, including but not limited to, rents, taxes, water and sewer charges, front foot benefit and house connection charges, condominium/cooperative unit owners' association and/or homeowners' association regular periodic assessments (if any), are to be adjusted to the day of Settlement. Any heating or cooking fuels remaining in supply tank(s) at Settlement will become the property of Buyer. Taxes are to be adjusted according to the information provided by

the collector of taxes except that recorded assessments for improvements completed prior to Settlement, whether the collector of taxes except that recorded assessments for improvements completed prior to Settlement, whether assessments have been levied or not, will be paid by Seller. If a loan is assumed, interest will be adjusted to the Settlement Date and Buyer will reimburse Seller for any existing escrow accounts.

**22. DISPUTES:** In the event of any dispute between Seller and Broker and/or Buyer and Broker resulting in Broker or any agents, subagents or employees of Broker being made a party to such dispute, including but not limited to, any litigation, arbitration, or complaint and claim before the applicable Real Estate Commission, whether as defendant, cross-defendant, third-party defendant or respondent, Seller and Buyer, jointly and severally, agree to indemnify and hold Broker and any agents, subagents and employees of Broker harmless from any liability, loss, cost, damage or expense (including but not limited to, filing fees, service of process fees, transcript fees and Legal Expenses), resulting therefrom, provided that such dispute does not result in a judgment or decision against Broker, Broker's agents, subagents or employees for acting improperly.

**23. LEGAL EXPENSES:**
  **A.** In any action or proceeding between Buyer and Seller based, in whole or in part, upon the performance or non-performance of the terms and conditions of this Contract, including but not limited to, breach of contract, negligence, misrepresentation or fraud, the prevailing party in such action or proceeding shall be entitled to receive reasonable Legal Expenses from the other party as determined by the Court or arbitrator.
  **B.** In the event a dispute arises resulting in the Broker (as used in this paragraph to include any agent, licensee, or employee of the Broker) being made a party to any litigation by Buyer or by Seller, the parties agree that the party who brought the Broker into litigation shall indemnify the Broker for all of its reasonable Legal Expenses incurred, unless the litigation results in a judgment against the Broker.

**24. PERFORMANCE:** Delivery of the required funds and executed documents to the Settlement Agent will constitute sufficient tender of performance. Funds from this transaction at Settlement may be used to pay off any existing liens and encumbrances, including interest, as required by lender(s) or lienholders.

**25. SELLER RESPONSIBILITY:** Seller agrees to keep existing mortgages free of default through Settlement. All violations of requirements noted or issued by any governmental authority, or actions in any court on account thereof, against or affecting the Property at Settlement, shall be complied with by Seller and the Property conveyed free thereof.

**26. DEFAULT:** Buyer and Seller are required and agree to perform at Settlement in accordance with the terms of this Contract and acknowledge that failure to do so constitutes a breach hereof. If Buyer fails to complete Settlement for any reason other than Default by Seller, at the option of Seller, the Deposit may be forfeited as liquidated damages (not as a penalty) in which event Buyer will be relieved from further liability to Seller. If Seller does not elect to accept the Deposit as liquidated damages, the Deposit may not be the limit of Buyer's liability in the event of a Default. If the Deposit is forfeited, or if there is an award of damages by a court or a compromise agreement between Seller and Buyer, the Broker may accept and Seller agrees to pay the Broker one-half of the Deposit in lieu of the Broker's Fee, (provided Broker's share of any forfeited Deposit will not exceed the amount due under the listing agreement).

If Seller fails to perform or comply with any of the terms and conditions of this Contract or fails to complete Settlement for any reason other than Default by Buyer, Buyer will have the right to pursue all legal or equitable remedies, including specific performance and/or damages.

If either Seller or Buyer refuses to execute a release of Deposit ("Release") when requested to do so in writing and a court finds that such party should have executed the Release, the party who refused to execute the Release will pay the expenses, including without limitation, reasonable Legal Expenses, incurred by the other party in the litigation. Seller and Buyer agree that Escrow Agent will have no liability to any party on account of disbursement of the Deposit or on account of failure to disburse the Deposit, except in the event of the Escrow Agent's gross negligence or willfull misconduct. The parties further agree that the Escrow Agent will not be liable for the failure of any depository in which the Deposit is placed and that Seller and Buyer each will indemnify, defend and save harmless the Escrow Agent from any loss or expense arising out of the holding, disbursement or failure to disburse the Deposit, except in the case of the Escrow Agent's gross negligence or willful misconduct.

DocuSign Envelope ID: BB0DECCF-DE89-4A43-9EC5-4E32AA6FBA12

DocuSign Envelope ID: 7A6F3B66-D11E-4DA5-97CA-66E14944F8BB

If either Buyer or Seller is in Default, then in addition to all other damages, the defaulting party will immediately pay the Broker's Fee in full, as well as the costs incurred for the title examination, Appraisal, and survey.

27. **DISCLOSURES TO THE PARTIES:** Buyer and Seller should carefully read this Contract to be sure that the terms accurately express their respective understanding as to their intentions and agreements. By signing this Contract, Buyer and Seller acknowledge that they have not relied on any representations made by the Brokers, or any agents, subagents or employees of the Brokers, except those representations expressly set forth in this Contract. Further, Brokers, their agents, subagents and employees do not assume any responsibility for the performance of this Contract by any or all parties hereto. The Broker can counsel on real estate matters, but if legal advice is desired by either party, such party is advised to seek legal counsel. Buyer and Seller are further advised to seek appropriate professional advice concerning the condition of the Property or tax and insurance matters. The following provisions disclose some matters which the parties may investigate further. These disclosures are not intended to create a contingency. Any contingency must be specified by adding appropriate terms to this Contract. The parties acknowledge the disclosures contained herein and that the Brokers, their agents, subagents and employees, make no representations nor assume any responsibility with respect to the following:

A. **PROPERTY CONDITION** Various inspection services and home warranty insurance programs are available. The Broker is not advising the parties as to certain other issues, including without limitation: condition of real or personal property, water quality and quantity (including but not limited to, lead and other contaminants); sewer or septic; public utilities; lot size and exact location; soil condition; flood hazard areas; possible restrictions of the use of the Property due to restrictive covenants, zoning, subdivision, or environmental laws, easements; airport or aircraft noise; planned land use, roads or highways; and construction materials and/or hazardous materials, including without limitation, flame-retardant treated plywood (FRT), radon, urea formaldehyde foam insulation (UFFI), mold, polybutylene pipes, synthetic stucco (EIFS), underground storage tanks, defective Chinese drywall, asbestos and lead-based paint. Information relating to these issues may be available from appropriate government authorities.

B. **LEGAL REQUIREMENTS** All contracts for the sale of real property must be in writing to be enforceable. Upon ratification and Delivery, this Contract becomes a legally binding agreement. Any changes to this Contract must be made in writing, agreed to by all parties to the Contract, and Delivered to all parties for such changes to be enforceable.

C. **FINANCING** Mortgage rates and associated charges vary with financial institutions and the marketplace. Buyer has the opportunity to select the lender and the right to negotiate terms and conditions of the financing subject to the terms of this Contract.

D. **BROKER** Buyer and Seller acknowledge that the Broker is being retained solely as a real estate agent and not as an attorney, tax advisor, lender, appraiser, surveyor, structural engineer, mold or air quality expert, home inspector or other professional service-provider. The Broker may from time to time engage in the general insurance, title insurance, mortgage loan, real estate settlement, home warranty and other real estate-related businesses and services. Therefore, in addition to the Broker's Fee specified herein, the Broker may receive compensation related to other services provided in the course of this transaction pursuant to the terms of a separate agreement/disclosure.

E. **PROPERTY TAXES** Your property tax bill could substantially increase following Settlement. For more information on property taxes, contact the appropriate taxing authority in the jurisdiction where the Property is located.

F. **PROPERTY INSURANCE** Obtaining property insurance is typically a requirement of the lender in order to secure financing. Insurance rates and availability are determined in part by the number and nature of claims and inquiries made on a property's policy as well as the number and nature of claims made by a prospective buyer. Property insurance has become difficult to secure in some cases. Seller should consult an insurance professional regarding maintaining and/or terminating insurance coverage.

G. **TITLE INSURANCE** Buyer may, at Buyer's expense, purchase owner's title insurance. The coverage afforded by such title insurance would be governed by the terms and conditions thereof, and the premium for obtaining such title insurance coverage will be determined by the extent of its coverage. Buyer may purchase title insurance at either "standard" or "enhanced" coverage and rates. For purposes of owner's policy premium rate disclosure by Buyer's Lender(s), if any, Buyer and Seller require that enhanced rates be quoted by Buyer's Lender(s). Buyer understands that nothing herein obligates Buyer to obtain any owner's title insurance coverage at any time, including at Settlement, and that the availability of enhanced coverage is subject to underwriting criteria of the title insurer.

**28. ASSIGNABILITY:** This Contract may not be assigned without the written consent of Buyer and Seller. If Buyer and Seller agree in writing to an assignment of this Contract, the original parties to this Contract remain obligated hereunder until Settlement.

**29. FOREIGN INVESTMENT TAXES – FIRPTA:** Section 1445 of the United States Internal Revenue Code of 1986 provides that a buyer of a residential real property located in the United States must withhold federal income taxes from the payment of the purchase price if (a) the purchase price exceeds Three Hundred Thousand Dollars ($300,000.00) or the purchase price is less than or equal to Three Hundred Thousand Dollars ($300,000.00) and the property will not be owner occupied, and (b) seller is a foreign person for purposes of U.S. income taxation. A foreign person includes, but is not limited to, a non-resident alien, foreign corporation, foreign partnership, foreign trust or foreign estate (as those terms are defined by the Internal Revenue Code and applicable regulations). In the event Seller is a foreign person (as described above), the Seller will be subject to the withholding provisions of FIRPTA. If Seller is not a foreign person, Seller agrees to execute an affidavit to this effect at Settlement.

**30. DEFINITIONS:**
    A. "Appraisal" means a written appraised valuation of the Property.
    B. "Day(s)" or "day(s)" means calendar day(s) unless otherwise specified in this Contract.
    C. "Business Days", whenever used, means Monday through Friday, excluding federal holidays.
    D. For the purpose of computing time periods, the first Day will be the Day following Delivery and the time period will end at 6 p.m. on the Day specified.
    E. If the Settlement Date falls on a Saturday, Sunday, or legal holiday, then the Settlement will be on the prior Business Day.
    F. "Date of Ratification" This Contract shall be deemed ratified when the Contract, all addenda and any modifications thereto have been signed and initialed, where required, by all parties, and Delivered to the other party pursuant to the Notices paragraph.
    G. The masculine includes the feminine and the singular includes the plural. "Buyer" means "Purchaser" and vice versa.
    H. "Legal Expenses" means attorney fees, court costs, and litigation expenses, if any, including but not limited to, expert witness fees and court reporter fees.
    I. "Specified Financing" means the financing as set forth in the financing addendum attached hereto.

**31. NOTICES:** Notice means a unilateral communication from one party to another. All Notices required under this Contract will be in writing. Notices to Seller shall be effective when Delivered to Seller or an agent of Seller named in the Contract or that agent's supervising Manager. Notices to Buyer shall be effective when Delivered to Buyer or an agent of Buyer named in the Contract or that agent's supervising Manager. "Delivery" means sent by wired or electronic medium which produces a tangible record of the transmission (such as "fax" or email which includes an attachment with an actual copy of the executed instruments being transmitted), hand carried, sent by overnight delivery service or U.S. Postal mailing. In the event of overnight delivery service, Delivery will be deemed to have been made on the next Business Day following the sending, unless earlier receipt is acknowledged in writing. In the event of U.S. Postal mailing, Delivery will be deemed to have been made on the third Business Day following the mailing, unless earlier receipt is acknowledged in writing. The provisions of this paragraph regarding Delivery of Notices shall also be applicable to Delivery of resale packages for condominiums, co-operatives and/or homeowners associations as may be required in a separate addendum. Resale packages may also be Delivered to the parties identified above by Seller or agent of Seller through an electronic link provided by the management association.

**32. MISCELLANEOUS:** This Contract may be signed in one or more counterparts, each of which is deemed to be an original, and all of which together constitute one and the same instrument. Documents obtained via fax or as a PDF attachment to an email will also be considered as originals. Typewritten or handwritten provisions included in this Contract will supersede all pre-printed provisions that are in conflict.

**33. VOID CONTRACT:** If this Contract becomes void and of no further force and effect, without Default by either party, party, both parties will immediately execute a Release directing that the Deposit be refunded in full to Buyer according to the terms of the DEPOSIT paragraph.

**34. ENTIRE AGREEMENT:** This Contract will be binding upon the parties and each of their respective heirs, executors, administrators, successors and permitted assigns. The provisions not satisfied at Settlement will survive the delivery of the Deed and will not be merged therein. This Contract, unless amended in writing, contains the final and entire agreement of the parties and the parties will not be bound by any terms, conditions, oral statements, warranties or representations not herein contained. The interpretation of this Contract will be governed by the laws of the jurisdiction where the Property is located.

35. [Below]

_Benburbabaiby_     10/14/18     _Melumunisa Bashir_     10/11/2018

Seller   _Kyle E. Skyper_     Date     Buyer   25202A7CA1244C...     Date

    _Commissioner of Sale_

Seller          Date     Buyer          Date

| Date of Ratification (see **DEFINITIONS**) |
| --- |

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

**For informational purposes only:**

Seller's Address                 Buyer's Address

Seller's Email Address            Buyer's Email Address

Seller's Telephone Number        Buyer's Telephone Number

Listing Company's Name and Address:      Selling Company's Name and Address:

**Long & Foster Real Estate, Inc.**       Long & Foster Real Estate, Inc.

**1680 WISCONSIN AVE NW**          1680 Wisconsin Avenue NW

**WASHINGTON**    **DC**   **20007**        Washington     DC   20007

Office #     **(202) 944-8400**        Office #     **(202) 944-8400**

Agent Name   Theresa Nielson        Agent Name    **Adrienne Szabo**

Agent Cell #                 Agent Cell # (202) 445-0206

Agent Email Address           Agent Email Address ADRIENNE.SZABO@Longandfoster.com

Agent License # and Jurisdiction   AB600329     Agent License # and Jurisdiction SP98363986

Broker License # and Jurisdiction        Broker License # and Jurisdiction MD:   38712   DC: PB98367770

Team Leader/Agent              Team Leader/Agent

©2017 This is a suggested form owned by certain REALTOR® Associations ("Associations"). This form has been created and printed exclusively for the use of REALTORS® and members of the Associations, who may copy or otherwise reproduce this form in identical form with the addition of their company logo and with any other changes being set forth in a clearly marked separate addendum. Any other use of this form is prohibited without prior written authorized consent of the Associations.

35  A. Date of ratification is date of acceptance by Court.

B. Contract subject to review and approval of Circuit Court in Fairfax County, VA. Date of review is 10/18/2018, or as soon thereafter as possible.





GCAAR



EQUAL HOUSING
OPPORTUNITY

## Addendum of Clauses—A
### *(For use with GCAAR Sales Contract and MAR Residential Contract of Sale)*

The Contract of Sale dated **10/10/18** between **Mehrunnisa Bashir** _of Sale_ _____ (Buyer)

and **Ben Pourbabai** _by Kyle E. Skopic, Commission_ (Seller) for the purchase of the real property located at

Address **3628 RESERVOIR RD NW** _____ Unit # _____

City **WASHINGTON** State **DC** Zip Code **20007** , Parking Space(s) # _____

Storage Unit # _____ with the legal description of Lot **1131** Block/Square **1292** Section **1292**

Subdivision/Project Name **GEORGETOWN** Tax Account # **1292//1131**

is hereby amended by the incorporation of this Addendum, which shall supersede any provisions to the contrary in
this Contract.

It is agreed that only the numbered paragraphs which are checked and initialed by all parties shall be made a part of said
Contract.

☐ **1. SELLER'S CREDIT(S) TO BUYER:** In addition to any other amount(s) Seller has agreed to pay under other provisions of this
Contract, Seller shall credit Buyer at the time of Settlement with the sum of $ _____ towards Buyer's settlement costs. It is
Buyer's responsibility to confirm with Lender, if applicable, that the entire credit provided for herein may be utilized. If Lender prohibits
Seller from payment of any portion of this credit, then said credit shall be reduced to the amount allowed by Lender

☑ **2. INSPECTION CONTINGENCY:** The Contract is contingent until 6 p.m. on the **10 days** Day after the Date of
Ratification ("*Deadline*") for inspections of the Property, not including radon, lead-based paint, well or septic inspections (*which require
separate contingencies*), by Buyer, a home inspection firm and/or other representative(s) at Buyer's discretion and expense. Seller will
have all utilities in service at the time of inspection(s).

Select option(s) A, B OR **BOTH** below. Failure to select either A or B below will result in BOTH being selected.

☑ **A. RIGHT TO NEGOTIATE:** This right will terminate at the Deadline unless by the Deadline Buyer Delivers to
Seller a copy of the report(s) from the inspection(s) of the Property together with a Home Inspection Notice
(such as *GCAAR Form 1344: Inspection Notice and/or Addendum* ) listing home inspection conditions or items that
Buyer requires Seller to repair and/or stipulating a dollar credit, as allowed by Lender, to be paid at Settlement by Seller toward
Buyer's charges to buy the Property. Upon such Delivery, 2.B, if selected below, shall NO LONGER be an option.

If the Seller elects not to perform in accordance with the Home Inspection Notice or makes another offer, Seller
will Deliver Notice to Buyer of such decision within 3 Days after Delivery of the Home Inspection Notice.

Within 3 Days after Delivery of a Notice from one party, the other party may:
1. Deliver Notice accepting the terms contained in the other party's Notice; OR
2. Deliver Notice continuing negotiations by making another offer; OR
3. Deliver Notice that this Contract will become void at 6 p.m. on the 3rd Day following Delivery, UNLESS the
recipient Delivers to the other party Notice of the acceptance of the last Delivered offer prior to that date
and time, in which case the Contract will remain in full force and effect. Seller may not exercise this option
as the first response to Buyer.

Failure of either party to respond within 3 Days after Delivery of Notice from the other party will result in acceptance by both
parties of the terms of the most recent Notice.

☑ **B. RIGHT TO CANCEL:** This right will terminate at the Deadline unless by the Deadline Buyer Delivers to Seller a Notice
declaring the Contract void.

© 2017 The Greater Capital Area Association of REALTORS®, Inc.
This Recommended Form is property of the Greater Capital Area Association of REALTORS®, Inc. and is for use by members only.
Previous editions of this Form should be destroyed.

1142A6A GCAAR Form # 1332 Addendum of Clauses A                                        7/2017

3. **ADDITIONAL "AS-IS" PROVISIONS:** All clauses in this Contract pertaining to termites and wood-destroying insects, private well and/or private sewage systems, and compliance with city, state or county regulations are hereby deleted from this Contract. Smoke detectors will be installed as required by the laws or regulations of the appropriate jurisdictions. The provisions of the Property Maintenance and Condition Paragraph will remain in full force and effect.

4. **RADON INSPECTION CONTINGENCY:** The Contract is contingent until 6 p.m. on the __10 Days__ Day after the Date of Ratification ("Deadline") to allow Buyer, at Buyer's discretion and expense, to have the Property inspected for the presence of radon by a testing firm listed with the National Radon Safety Board ("NRSB") or the National Environmental Health Association ("NEHA") using a U.S. Environmental Protection Agency ("EPA") approved testing method. Testing and retesting devices, if applicable, to be placed and retrieved by an NRSB or NEHA-listed technician or their authorized subcontractor. This contingency will terminate at the Deadline unless by the Deadline, Buyer Delivers to Seller a copy of the radon testing report which confirms the presence of radon that equals or exceeds the action level established by the EPA together with either   A or B:

A. Radon Testing Notice (GCAAR Form "Radon Testing Notice and/or Addendum/Release") requiring Seller at Seller's expense prior to Settlement to remediate the radon condition; or stipulating a dollar credit, as allowed by the Lender, to be paid at Settlement by Seller towards Buyer's charges to buy the Property. In the event that Seller agrees to remediate the radon condition, such work shall be performed by a NRSB or NEHA-listed remediation firm who will provide written verification that the required remediation has been performed, including test results demonstrating that the presence of radon is below the action level established by EPA.

If Seller elects not to perform in accordance with the Radon Testing Notice or makes another offer, Seller will Deliver Notice to Buyer of such decision within 3 Days after Delivery of the Radon Testing Notice.

Within 3 Days after Delivery of Notice from one party, the other party may:
1) Deliver Notice accepting the terms contained in the other party's Notice; OR
2) Deliver Notice continuing negotiations by making another offer; OR
3) Deliver Notice that this Contract will become void at 6 p.m. on the 3rd Day following Delivery, unless the recipient Delivers to the other party Notice of the acceptance of the last Delivered offer prior to that date and time, in which case the Contract will remain in full force and effect. Seller may not exercise this option as the first response to Buyer.

Failure of either party to respond within 3 Days after Delivery of a Notice from the other party will result in acceptance by both parties of the terms of the most recent Notice.

B. Notice declaring the Contract void.

5. **APPRAISAL CONTINGENCY:** *NOT TO BE USED WITH FHA OR VA FINANCING.* IF THE CONTRACT IS CONTINGENT UPON FINANCING AND SUCH FINANCING IS DECLINED BASED UPON THE APPRAISAL, THE BUYER WILL NOT BE IN DEFAULT, EVEN IF THIS APPRAISAL CONTINGENCY HAS BEEN REMOVED.

The Contract is contingent until 6:00 p.m. on the _____ day after the Date of Ratification ("Deadline") for  Buyer to obtain a written appraised valuation of the Property ("Appraisal") certifying the value of the Property to be no less than the Sales Price (check with your Lender, if applicable, to confirm that the Appraisal will be completed by the Deadline). If Buyer is obtaining financing, Lender shall select the appraiser. If this is a cash sale, Buyer shall select the appraiser. The appraiser shall be licensed to perform Appraisals in the jurisdiction in which the Property is located. Seller shall make the Property available for inspection by such appraiser.

In the event that the Appraisal is lower than the Sales Price, Buyer has the option of proceeding with the Contract at the stated Sales Price without regard to the Appraisal. However, should Buyer decline to proceed with the Contract at the stated Sales Price (due to the Appraisal being lower than the stated Sales Price), Buyer shall Deliver to Seller, by the Deadline, a Notice (GCAAR Form "Appraisal Notices and/or Addendum"), requesting that the Sales Price be reduced to a specified lower amount of not less than the appraised value, together with a copy of the written Appraisal ("Buyer's Appraisal Notice"). This Contingency will terminate at the Deadline, unless by the Deadline Buyer Delivers to Seller Buyer's Appraisal Notice.

All Notices Delivered under this Appraisal Contingency shall be treated as follows:

Within 3 Days after Delivery of a Notice from one party, the other party may:
A. Deliver Notice accepting the terms contained in the other party's Notice; OR
B. Deliver Notice continuing negotiations by making another offer; OR
C. Deliver Notice that this Contract will become void at 6:00 p.m. on the 3rd Day following Delivery, unless the recipient Delivers to the other party Notice of the acceptance of the last Delivered offer prior to that date and time, in which case, this Contract will remain in full force and effect.

FAILURE OF EITHER PARTY TO RESPOND WITHIN 3 DAYS AFTER NOTICE DELIVERY WILL RESULT IN THE CONTRACT BECOMING VOID.

© 2017 The Greater Capital Area Association of REALTORS®, Inc.
This Recommended Form is property of the Greater Capital Area Association of REALTORS®, Inc. and is for use by members only.
Previous editions of this Form should be destroyed.

DocuSign Envelope ID: BB0DECCF-DE89-4A43-9EC5-4E32AA6FBA12

DocuSign Envelope ID: 7A6F3B66-D11E-4DA5-97CA-66E14944F8BB

6. **HOLDING DEPOSIT CHECK** *WARNING: THIS CLAUSE MAY NOT BE USED FOR A MARYLAND TRANSACTION WHEN A REAL ESTATE BROKER IS THE ESCROW AGENT.* It is understood and agreed by all parties that the Buyer has instructed the Escrow Agent to hold and not deposit the above described deposit check until _____ Days after Ratification at which time said check shall be deposited.

7. **PRIVATE WELL AND SEPTIC:** If the property is on well and/or septic system, ☐ Buyer, at Buyer's expense, OR ☐ Seller, at Seller's expense will:
   A. Provide Buyer on or before Settlement with a certificate, dated not more than 30 days prior to Settlement, from a private water testing laboratory certified by the Maryland Department of Health and Mental Hygiene that the well water is potable. If Buyer is obtaining FHA or VA financing, chemical and lead tests will be required.
   B. Provide Buyer on or before Settlement with a report, dated not more than 30 days prior to Settlement, from a private company, which has followed the Maryland Department of Environment standardized procedure for the inspection of the septic system(s), that the septic system is not malfunctioning, is functioning satisfactorily, or is in operating condition.
   C. If either system does not meet the requirements of A or B above, Seller, at Seller's expense, will take appropriate remedial action to rectify the deficiency and provide Buyer with above required documents outlined in A and B on or before Settlement.

8. **POST-SETTLEMENT OCCUPANCY ADDENDUM:** The parties agree that the Seller shall occupy the property for a period of _____ days beginning at Settlement at the rate of $ _____ per day. Seller shall pay a security deposit of $ _____ at Settlement. Seller and Buyer acknowledge that they have read and executed, or will execute at Settlement, the GCAAR Post-Settlement Occupancy Addendum and agree to be bound by its terms and provisions. In the event that this is a Maryland transaction and any mortgage on the property has 60 days or more in default, Seller has the right to rescind the Contract within 5 days of all parties signing a Statement of Tenancy (GCAAR Form "Statement About Tenancy").

9. **LICENSEE RELATIONSHIP DISCLOSURE:** The parties acknowledge that _____ _____ is a licensed real estate agent in _____ (MD/DC/VA) associated with _____ (Company) and is the ☐ Buyer ☐ Seller or is ☐ related to one of the parties hereto in the following way: _____ and may share in the Broker's Fee.

10. **ADDITIONAL PROVISIONS:** _____

All other terms of the Contract remain in full force and effect.

PARTIES ACKNOWLEDGE THEY HAVE BEEN AFFORDED THE OPPORTUNITY TO REVIEW AND INCORPORATE THE ADDITIONAL PROVISIONS CONTAINED IN ADDENDUM OF CLAUSES-B AND HAVE AGREED TO INCORPORATE ONLY THOSE PROVISIONS ATTACHED HERETO.

| | |
|---|---|
| *Kyle E. Scopic* | *Mehrunnisa Bashir* 10/11/2018 |
| Seller Ben Pourbabai by Kyle E. Scopic, Date Commissioner of Sale | Buyer Mehrunnisa Bashir Date |
| _____ | _____ |
| Seller Date | Buyer Date |

© 2017 The Greater Capital Area Association of REALTORS®, Inc.
This Recommended Form is property of the Greater Capital Area Association of REALTORS®, Inc. and is for use by members only.
Previous editions of this Form should be destroyed.

LF216A  GCAAR Form # 1312-Addendum of Clauses  A                                                1/2017

DocuSign Envelope ID: BB0DECCF-DE89-4A43-9EC5-4E32AA6FBA12

DocuSign Envelope ID: 7A6F3B66-D11E-4DA5-97CA-66E14944F8BB

  

# Jurisdictional Disclosure and Addendum to the Sales Contract for District of Columbia
### *(Required for the Listing Agreement and required for the GCAAR Sales Contract)*

The Contract of Sale dated **09/24/18** between _____ Mehrunnisa Bashir _____ (Buyer)

and _____ **Ben    Pourbabai by Kyle E. Skopic** __ Commissioner of Sale __ (Seller) for the purchase of the real property located at

Address _____ **3628 Reservoir Road NW** _____ Unit # _____

City _____ **Washington** _____ State **DC** __ Zip Code ___ **20007** ___ , Parking Space(s) # _____

Storage Unit # _____ with the legal description of Lot ___ **20007** ___ Block/Square _____ Section _____

Subdivision/Project Name **Georgetown** _____ Tax Account # _____

is hereby amended by the incorporation of this Addendum, which shall supersede any provisions to the contrary in this Contract.

---

**PART I. SELLER DISCLOSURE - AT TIME OF LISTING:**
The information contained in this Disclosure was completed by Seller, is based on the Seller's actual knowledge and belief, and is current as of the date hereof.

1. **SELLER DISCLOSURE:** Pursuant to D.C. Code §42-1301, Seller is exempt from property condition disclosure.
☒ Yes ☐ No

2. **DC SOIL DISCLOSURE REQUIREMENTS:** The characteristic of the soil on the Property as described by the Soil Conservation Service of the United States Department of Agriculture in the Soil Survey of the District of Columbia published in 1976 and as shown on the Soil Maps of the District of Columbia at the back of that publication is _____
**URBAN LAND SASSAFRASS**
For further information, Buyer can contact a soil testing laboratory, the District of Columbia Department of Environmental Services, or the Soil Conservation Service of the Department of Agriculture.

3. **TENANCY:** Seller represents that property ☐ is/was OR ☒ is not/was not subject to an existing residential lease or tenancy at the time Seller decided to sell. District of Columbia broadly defines a tenant as "a tenant, subtenant, lessee, sublessee, or other person entitled to the possession, occupancy, or the benefits of any rental unit within a housing accommodation." If applicable, the following required Addendum shall be incorporated into the Contract.
☐ Tenancy Addendum for District of Columbia (Single-Family Accommodation)
☐ Tenancy Addendum for District of Columbia (2 to 4 Rental Units)
☐ Multi-Unit or Non-Residential Addendum

4. **CONDOMINIUM/CO-OPERATIVE/HOMEOWNERS ASSOCIATION:** Seller represents that this Property
☒ is OR ☐ is not subject to a condominium, co-operative or homeowners association. If applicable, the following required addendum is attached:
☐ Condominium Seller Disclosure/Resale Addendum for District of Columbia,
☐ Co-operative Seller Disclosure/Resale Addendum for Maryland and \District of Columbia, or HOA
☒ Seller Disclosure/Resale Addendum for District of Columbia

5. **UNDERGROUND STORAGE TANK DISCLOSURE: (Applicable to single family home sales only)**
In accordance with the requirements of the District of Columbia Underground Storage Tank Management Act of 1990 [D.C. [D.C Code §8-113.02(g)], as amended by the District of Columbia Underground Storage Tank Management Act of 1990 Amendment Act of 1992 (the "Act") and the regulations adopted thereunder by the District of Columbia (the "Regulations"), Seller hereby informs Buyer that Seller has no knowledge of the existence or removal during Seller's ownership of the Property of any underground storage tanks as that term is defined in the Act and the Regulations, except as follows:

6. **PROPERTY TAXES:** Future property taxes may change. To determine the applicable rate, see
https://www.taxpayerservicecenter.com/RP_Search.jsp?search_type=Assessment . Additional information regarding property tax relief and tax credit information (tax reductions for seniors, homestead exemptions, property tax abatements and others) can be found at: http://otr.cfo.dc.gov/page/real-property-tax-credits-frequently-asked-questions-faqs.

_Kyle Skopic Commissioner of Sale_ 9/27/2018 _____
Seller _____ Date    Seller    Date

© 2018 The Greater Capital Area Association of REALTORS®, Inc.
This Recommended Form is property of the Greater Capital Area Association of REALTORS®, Inc. and is for use by members only.
Previous editions of this Form should be destroyed.

## PART II. RESALE ADDENDUM

The Contract of Sale dated   **09/24/18**  , between Seller     **Ben    Pourbabai by**
**Kyle E. Skopic   Commissioner of Sale** and Buyer   Mehrunnisa Bashir             ,
is hereby amended by the incorporation of Parts I and II herein,
which shall supersede any provisions to the contrary in the Contract.

1. **SELLER DISCLOSURE:** Pursuant to D.C. Code §42-1302, prior to the submission of the offer, Buyer is
entitled to a Seller's Disclosure Statement (if Seller is not exempt) and hereby acknowledges receipt of same.
☐ Yes ☐ No ☒ Not applicable

2. **RECORDATION AND TRANSFER TAXES:** Rates vary with the sales price and based on property type. See
http://otr.cfo.dc.gov/service/recorder-deeds-frequently-asked-questions-faqs , In limited circumstances, an exemption from
Recordation Tax may be available to Buyer, if Buyer meets the requirements for the Lower Income Home
Ownership Exemption Program ("Tax Abatement Program"). See below for additional information.
Unless otherwise negotiated, the following will apply:

    A. <u>Real Property:</u> Recordation Tax will be paid by Buyer and Transfer Tax will be paid by Seller.

    B. <u>Co-operatives:</u> The Economic Interest Deed Recordation Tax will be split equally between Buyer and
Seller. There is no Transfer Tax for Co-operatives.

    C. <u>Tax Abatement Program:</u> Additional information (including the required Application Form) for the Tax
Abatement Program can be obtained at: https://otr.cfo.dc.gov/page/real-property-tax-relief-and-tax-credits.
If Buyer meets the requirements of this program, Buyer will be exempt from Recordation Tax. Additionally,
Seller shall credit Buyer an amount equal to what would normally be paid to the District of Columbia as
Sellers Transfer Tax to be applied towards Buyers settlement costs. This credit shall be in addition to any
other amount(s) Seller has agreed to pay under the provisions of this Contract. It is Buyers responsibility
to confirm with Lender, if applicable, that the entire credit provided for herein may be utilized. If Lender
prohibits Seller from payment of any portion of this credit, then said credit shall be reduced to the amount
allowed by Lender.

    Buyer ☐ is OR ☐ is not applying for the Tax Abatement Program.

    D. <u>First-Time Homebuyer Recordation Tax Credit:</u> Buyer ☐ is OR ☐ is not a District of Columbia First-
Time Homebuyer and may be eligible for a reduced recordation tax. It is the Buyers responsibility to confirm
their eligibility. (See https://otr.cfo.dc.gov/node/1272871.)

3. The principals to the Contract mutually agree that the provisions hereof shall survive the execution and delivery
of the Deed and shall not be merged herein.

| | | |
|---|---|---|
| _Kyle E. Skopic_ as   10/14/18 | _Mehrunnisa Bashir_ | 10/11/2018 |
| Seller _Commissioner of Sale_   Date | Buyer   F9A9202A76A1244C...   Date | |
| Seller      Date | Buyer      Date | |

© 2018 The Greater Capital Area Association of REALTORS®, Inc.
This Recommended Form is property of the Greater Capital Area Association of REALTORS®, Inc. and is for use by members only.
Previous editions of this Form should be destroyed.

  

## GCAAR
GREATER CAPITAL AREA ASSOCIATION OF REALTORS®

### Inclusions/Exclusions Disclosure and/or Addendum
*Required for use with GCAAR Listing Agreement & Sales Contract*

**PROPERTY ADDRESS:** 3628 Reservoir Road NW     Washington DC 20007

**PERSONAL PROPERTY AND FIXTURES:** The Property includes the following personal property and fixtures, if existing: built-in heating and central air conditioning equipment, plumbing and lighting fixtures, sump pump, attic and exhaust fans, storm windows, storm doors, screens, installed wall-to-wall carpeting, shutters, window shades, blinds, window treatment hardware, mounting brackets for electronics components, smoke and heat detectors, TV antennas, exterior trees and shrubs. Unless otherwise agreed to herein, all surface or wall mounted electronic components/devices **DO NOT CONVEY. The items checked below convey.** If more than one of an item conveys, the number of items shall be noted in the blank.

**KITCHEN APPLIANCES**
- [ ] ___ Stove/Range
- [x] 1 Cooktop
- [x] 1 Wall Oven
- [ ] ___ Microwave
- [x] 1 Refrigerator
- [x] ___ w/ Ice Maker
- [ ] ___ Wine Refrigerator
- [x] ___ Dishwasher
- [x] ___ Disposer
- [ ] ___ Separate Ice Maker
- [ ] ___ Separate Freezer
- [ ] ___ Trash Compactor

**LAUNDRY**
- [ ] ___ Washer
- [ ] ___ Dryer

**ELECTRONICS**
- [ ] ___ Alarm System
- [ ] ___ Intercom
- [ ] ___ Satellite Dishes

**LIVING AREAS**
- [x] ___ Fireplace Screen/Doors
- [ ] ___ Gas Logs
- [ ] ___ Ceiling Fans
- [ ] ___ Window Fans
- [ ] ___ Window Treatments

**WATER/HVAC**
- [ ] ___ Water Softener/Conditioner
- [ ] ___ Electronic Air Filter
- [ ] ___ Furnace Humidifier
- [ ] ___ Window AC Units

**RECREATION**
- [ ] ___ Hot Tub/Spa, Equipment & Cover
- [ ] ___ Pool Equipment & Cover
- [ ] ___ Sauna
- [ ] ___ Playground Equipment

**OTHER**
- [ ] ___ Storage Shed
- [x] 1 Garage Door Opener
- [x] 1 Garage Door Remote/Fob
- [ ] ___ Back-up Generator
- [ ] ___ Radon Remediation System
- [ ] ___ Solar Panels
- [ ] _____
- [ ] _____
- [ ] _____
- [ ] _____

**LEASED ITEMS, LEASED SYSTEMS & SERVICE CONTRACTS:** Leased items/systems or service contracts, including but not limited to: solar panels & systems, appliances, fuel tanks, water treatment systems, lawn contracts, pest control contracts, security system and/or monitoring, and satellite contracts **DO NOT CONVEY** unless disclosed here
**All Personal Property and Fixtures convey 'AS IS'.**

**CERTIFICATION:** Seller certifies that Seller has completed this checklist disclosing what conveys with the Property.

| | | |
|---|---|---|
| *Kyle Skopic Commissioner of Sale* | | 9/27/2018 |
| Seller   Ben Pourbabai by | Date | Seller   Kyle E. Skopic   Commissioner of Sale |

**2. ACKNOWLEDGEMENT AND INCORPORATION INTO CONTRACT:** *(Completed only after presentation to the Buyer)*

The Contract of Sale dated **09/24/18** between Seller ___ Ben Pourbabai by Kyle E. Skopic   Commissioner of Sale
and Buyer _____
referenced above is hereby amended by the incorporation of this Addendum.

| | | | |
|---|---|---|---|
| *[signature]*   10/14/18 | | | |
| Seller (signed only after Buyer) | Date | Buyer | Date |
| *Co Commissioner of Sale* | | | |
| Seller (signed only after Buyer) | Date | Buyer | Date |

© 2017 The Greater Capital Area Association of REALTORS®, Inc.

This Recommended Form is the property of the Greater Capital Area Association of REALTORS®, Inc. and is for use by REALTOR® members only. Previous editions of this form should be destroyed.

   

## SELLER'S DISCLOSURE STATEMENT
### Instructions to the Seller for Seller's Disclosure Statement

These Instructions are to assist the Seller in completing the required Seller's Disclosure Statement in order to comply with the District of Columbia Residential Real Property Seller Disclosure Act.

1. **Who must complete the Seller's Disclosure Statement?** The Seller, not the broker and not the management company, condominium association, cooperative association or homeowners association.

2. **In what types of transactions must the Seller provide the Seller's Disclosure Statement to the Purchaser?** The Act applies to the following types of transfers or sales of District of Columbia real estate:
   (a) where the property consists of one to four residential dwelling units, and,
   (b) the transaction is a sale, exchange, installment land contract, lease with an option to purchase, or any other option to purchase, <u>and,</u>
   (c) the purchaser expresses, in writing, an interest to reside in the property to be transferred.

   However, the Act does <u>not</u> apply to:
   (a) court ordered transfers;
   (b) transfers to a mortgagee by a mortgagor in default;
   (c) transfers by sale under a power of sale in a deed of trust or mortgage or any foreclosure sale under a decree of foreclosure or deed in lieu of foreclosures;
   (d) transfers by a non-occupant fiduciary administering a decedent's estate, guardianship, conservatorship or trust;
   (e) transfers between co-tenants;
   (f) transfers made to the transferor's spouse, parent, grandparent, child, grandchild or sibling(or any combinations of the foregoing);
   (g) transfer between spouses under a divorce judgment incidental to such a judgment;
   (h) transfers or exchanges to or from any governmental entity; and
   (i) transfers made by a person of newly constructed residential property that has not been inhabited.

3. **When does the Seller's Disclosure Statement have to be provided to the Purchaser?** In a sale, before or at the time the prospective transferee executes a purchase agreement with the transferor. In an installment sales contract (where a binding purchase contract has not been executed), or in the case of a lease with no option to purchase, before or at the time the prospective transferee executes the installment sales contract or lease with the transferor.

4. **What information must the Seller disclose?** Answer ALL questions on the Seller's Disclosure Statement. If some items do not apply to your property, check "N/A" (not applicable). If you do not know the facts, check "UNKNOWN". Report actually known conditions referred to in the questions. Each disclosure must be made in "good faith" (honesty in fact in the making of the disclosure). Attach additional pages with your signature if additional space is required.

The Seller of a condominium unit, cooperative unit, or a lot in a homeowners association, is to provide information only as to the Seller's unit or lot, and not as to any common elements, common areas or other areas outside of the unit or lot.

This is the required Seller's Disclosure Statement approved by the Washington, DC Board of Real Estate.

DocuSign Envelope ID: BB0DECCF-DE89-4A43-9EC5-4E32AA6FBA12

DocuSign Envelope ID: 7A6F3B66-D11E-4DA5-97CA-66E14944F8BB

   

## SELLER'S DISCLOSURE STATEMENT

### Instructions to the Seller for Seller's Disclosure Statement

5. **What is the remedy if the Seller does not provide the Seller's Disclosure Statement to the Transferee?** If the Seller's Disclosure Statement is delivered _after_ the purchaser executes the purchase agreement, installment sales contract or lease with an option to purchase, the purchaser may terminate the transaction by written notice to the seller not more than five (5) calendar days after receipt of the Seller's Disclosure Statement by the purchaser, and the deposit must be returned to the purchaser. The right to terminate is waived if not exercised before the earliest of:

    (a) the making of an application for a mortgage loan (if the lender discloses that the right to rescind terminates on submission of the application); or

    (b) settlement or date of occupancy in the case of a sale; or

    (c) occupancy in the case of a lease with an option to purchase.

6. **If the Seller finds out different information after providing the Seller's Disclosure Statement to the Purchaser, how does this impact a ratified contract?** If information becomes inaccurate after delivery of the disclosure form, the inaccuracy shall not be grounds for terminating the transaction.

7. **How must a Seller deliver the Seller's Disclosure Statement to the Transferee?** The Seller's Disclosure Statement must be delivered by personal delivery, facsimile delivery, or by registered mail to the transferee. Execution by the transferor of a facsimile is considered execution of the original.

[ʰˢ bSLOS ]

This is the required Seller's Disclosure Statement approved by the Washington, DC Board of Real Estate.

GCAAR Form #919 – DC Seller's Disclosure      Page 2 of 7

GP177      10/2011

DocuSign Envelope ID: BB0DECCF-DE89-4A43-9EC5-4E32AA6FBA12

DocuSign Envelope ID: 7A6F3B66-D11E-4DA5-97CA-66E14944F8BB

## SELLER'S PROPERTY CONDITION STATEMENT
### For Washington, DC

**Property Address:** 3628     Reservoir Road NW          Washington , DC  20007

Is the property included in a:

condominium association?     ☐ Yes     ☐ No
cooperative?     ☐ Yes     ☐ No
homeowners association with mandatory participation and fee?
☐ Yes     ☐ No

If this is a sale of a condominium unit or cooperative unit, or in a homeowners association, this disclosure form provides information only as to the unit (as defined in the governing documents of the association) or lot (as defined in the covenants applicable to the lot), and not as to any common elements, common areas or other areas outside of the unit or lot.

**Purpose of Statement:** This Statement is a disclosure by the Seller of the defects or information actually known by the Seller concerning the property, in compliance with the District of Columbia Residential Real Property Seller Disclosure Act. Unless otherwise advised, the Seller does not possess an expertise in construction, architecture, engineering, or any other specific area related to the construction of the improvements on the property or the land. Also, unless otherwise advised, the Seller has not conducted any inspection of generally inaccessible areas such as the foundation or roof. THIS STATEMENT IS NOT A WARRANTY OF ANY KIND BY THE SELLER OR BY ANY AGENT REPRESENTING THE SELLER IN THIS TRANSACTION, AND IS NOT A SUBSTITUTE FOR ANY INSPECTIONS OR WARRANTIES THE BUYER MAY WISH TO OBTAIN.

Seller Disclosure: The Seller discloses the following information with the knowledge that, even though this is not a warranty, the Seller specifically makes the following statements based on the seller's actual knowledge at the signing of this document. Upon receiving this statement from the Seller, the Seller's agent is required to provide a copy to the Buyer or the agent of the Buyer. The Seller authorizes its agent (s) to provide a copy of this statement to any prospective buyer or agent of such prospective buyer in connection with any actual or anticipated sale of property. The following are statements made solely by the Seller and are not the statements of the Seller's agent (s) if any. This information is a disclosure only and is not intended to be a part of any contract between Buyer and Seller.

The seller(s) completing this disclosure statement have owned the property from _____ to _____.

The seller(s) completing this disclosure have occupied the residence from _____ to _____.

### A. Structural Conditions

1. Roof  ☐ roof is a common element maintained by condominium or cooperative (no further roof disclosure required)

   Age of Roof     ☐ 0-5 years  ☐ 5-10 years  ☐ 10-15 years  ☐ 15+ years  ☐ Unknown

   Does the seller have actual knowledge of any current leaks or evidence of moisture from roof?
   ☐ Yes     ☐ No     . If yes, comments:_____

   Does the seller have actual knowledge of any existing fire retardant treated plywood?
   ☐ Yes     ☐ No     If yes, comments:_____
   _____

2. Fireplace/Chimney(s)
   Does the seller have actual knowledge of any defects in the working order of the fireplaces?
   ☐ Yes     ☐ No     ☐ No fireplace(s)
   If yes, comments:_____

   Does the seller know when the chimney(s) and/or flue were last inspected and/or serviced?
   ☐ Yes     ☐ No     ☐ No chimneys or flues
   If yes, when were they last serviced or inspected? _____

This is the required Seller's Disclosure Statement approved by the Washington, DC Board of Real Estate.

3. **Basement**

Does the seller have actual knowledge of any current leaks or evidence of moisture in the basement? ☐ Yes ☐ No ☐ Not Applicable

If yes, comments: _____

Does the seller have actual knowledge of any structural defects in the foundation?

☐ Yes ☐ No

If yes, comments: _____

4. **Walls and floors**

Does the seller have actual knowledge of any structural defects in walls or floors?

☐ Yes ☐ No

If yes, comments: _____

5. **Insulation**

Does the seller have actual knowledge of presence of urea formaldehyde foam insulation?

☐ Yes ☐ No

If yes, comments: _____

6. **Windows**

Does the seller have actual knowledge of any windows not in normal working order?

☐ Yes ☐ No

If yes, comments: _____

B. **Operating Condition of Property Systems**

1. **Heating System** ☐ heating system is a common element maintained by condominium or cooperative (no further disclosure on heating system required).

| Type of system | ☐ Forced Air | ☐ Radiator | ☐ Heat Pump |
| | ☐ Electric baseboard | ☐ Other | |
| Heating Fuel | ☐ Natural Gas | ☒ Electric | ☐ Oil | ☐ Other |
| Age of system | ☐ 0-5 years | ☐ 5-10 years | ☐ 10-15 years | ☐ Unknown |

Does the seller have actual knowledge that heat is not supplied to any finished rooms?

☐ Yes ☐ No

If yes, comments: _____

Does the seller have actual knowledge of any defects in the heating system?

☐ Yes ☐ No

If yes, comments: _____

Does the heating system include:

| Humidifier | ☐ Yes | ☐ No | ☐ Unknown |
| Electronic air filter | ☒ Yes | ☐ No | ☐ Unknown |

If installed, does the seller have actual knowledge of any defects with the humidifier and electronic filter? ☐ Yes ☐ No ☐ Not Applicable

If yes, comments: _____

2. **Air Conditioning System** ☐ air conditioning is a common element maintained by condominium or cooperative (no further disclosure on air conditioning system required).

| Type of system: | ☐ Central AC | ☐ Heat Pump | ☐ Window/wall units |
| | ☐ Other | ☐ Not Applicable | |
| Air Conditioning Fuel | ☐ Natural Gas | ☐ Electric | ☐ Oil | ☐ Other |
| Age of system | ☐ 0-5 years | ☐ 5-10 years | ☐ 10-15 years | ☐ Unknown |

This is the required Seller's Disclosure Statement approved by the Washington, DC Board of Real Estate.

If central AC, does the seller have actual knowledge that cooling is not supplied to any finished rooms? ☐ Yes ☐ No ☐ Not Applicable

If yes, comments: _____

Does the seller have actual knowledge of any problems or defects in the cooling system?
☐ Yes ☐ No ☐ Not Applicable

If yes, comments: _____

3. **Plumbing System**

Type of system: ☐ Copper ☐ Galvanized ☐ Plastic Polybutelene ☐ Unknown

Water Supply: ☐ Public ☐ Well

Sewage Disposal ☐ Public ☐ Well

Water Heater Fuel ☐ Natural Gas ☐ Electric ☐ Oil ☐ Other

Does the seller have actual knowledge of any defects with the plumbing system?
☐ Yes ☐ No

If yes, comments: _____

4. **Electrical System**

Does the seller have actual knowledge of any defects in the electrical system, including the electrical fuses, circuit breakers, outlets, or wiring?
☐ Yes ☐ No

If yes, comments: _____

C. **Appliances**

Does the seller have actual knowledge of any defects with the following appliances?

| Appliance | Yes | No | Not Applicable |
|---|---|---|---|
| Range/Oven | ☐ | ☐ | ☐ |
| Dishwasher | ☐ | ☐ | ☐ |
| Refrigerator | ☐ | ☐ | ☐ |
| Range hood/fan | ☐ | ☐ | ☐ |
| Microwave oven | ☐ | ☐ | ☐ |
| Garbage Disposal | ☐ | ☐ | ☐ |
| Sump Pump | ☐ | ☐ | ☐ |
| Trash compactor | ☐ | ☐ | ☐ |
| TV antenna/controls | ☐ | ☐ | ☐ |
| Central vacuum | ☐ | ☐ | ☐ |
| Ceiling fan | ☐ | ☐ | ☐ |
| Attic fan | ☐ | ☐ | ☐ |
| Sauna/Hot tub | ☐ | ☐ | ☐ |
| Pool heater & equip. | ☐ | ☐ | ☐ |
| Security System | ☐ | ☐ | ☐ |
| Intercom System | ☐ | ☐ | ☐ |
| Garage door opener | ☐ | ☐ | ☐ |
| & remote controls | ☐ | ☐ | ☐ |
| Lawn sprinkler system | ☐ | ☐ | ☐ |
| Water treatment system | ☐ | ☐ | ☐ |
| Smoke Detectors | ☐ | ☐ | ☐ |
| Carbon Monoxide Detectors | ☐ | ☐ | ☐ |
| Other Fixtures Or Appliances | ☐ | ☐ | ☐ |

If yes to any of the above, describe defects: _____

_____

This is the required Seller's Disclosure Statement approved by the Washington, DC Board of Real Estate.

## D. Exterior/Environmental Issues

1. **Exterior Drainage**
   Does the seller have actual knowledge of any problem with drainage on the property?
   ☐ Yes ☐ No
   If yes, comments: _____

2. **Damage to property**
   Does the seller have actual knowledge whether the property has previously been damaged by:
   Fire ☐ Yes ☐ No
   Wind ☐ Yes ☐ No
   Flooding ☐ Yes ☐ No
   If yes, comments: _____
   _____
   _____

3. **Wood destroying insects or rodents:**
   Does the seller have actual knowledge of any infestation or treatment for infestations?
   ☐ Yes ☐ No
   If yes, comments: _____
   Does the seller have actual knowledge of any prior damage or repairs due to a previous
   infestation? ☐ Yes ☐ No
   If yes, comments: _____

4. **Does the seller have actual knowledge of any substances, materials or environmental**
   **hazards (including but not limited to asbestos, radon gas, lead based paint, underground**
   **storage tanks, formaldehyde, contaminated soil, or other contamination) on or affecting**
   **the property?**
   ☐ Yes ☐ No
   If yes, comments: _____

5. **Does the seller have actual knowledge of any zoning violations, nonconforming uses,**
   **violation of building restrictions or setback requirements, or any recorded or unrecorded**
   **easement, except for utilities, on or affecting the property?**
   ☐ Yes ☐ No
   If yes, comments: _____

6. **Does the seller have actual knowledge that this property is a DC Landmark, included in a**
   **designated historic district or is designated a historic property?**
   ☐ Yes ☐ No
   If yes, comments: _____

7. **Has the property been cited for a violation of any historic preservation law or regulation**
   **during your ownership?** ☐ Yes ☐ No

   If yes, comments: _____

This is the required Seller's Disclosure Statement approved by the Washington, DC Board of Real Estate.

8. **Does the seller have actual knowledge if an façade easement or a conservation easement has been placed on the property?**

☐ Yes  ☐ No

If yes, comments: _____

The seller(s) certifies that the information in this statement is true and correct to the best of their knowledge as known on the date of signature.

_____      _____
Seller                                   Date

_____      _____
Seller                                   Date

Buyer(s) have read and acknowledge receipt of this statement and acknowledge that this statement is made based upon the seller's actual knowledge as of the above date. This disclosure is not a substitute for any inspections or warranties which the buyer(s) may wish to obtain. This disclosure is NOT a statement, representation, or warranty by any of the seller's agents or any sub-agents as to the presence or absence of any condition, defect or malfunction or as to the nature of any condition, defect or malfunction.

_____      _____
Buyer                                   Date

_____      _____
Buyer                                   Date

This is the required Seller's Disclosure Statement approved by the Washington, DC Board of Real Estate.

# Disclosure of Information on Lead-Based Paint
## and Lead-Based Paint Hazards SALES



For the sale of Property at: **3628 Reservoir Road NW**
**Washington DC 20007**

I. SELLER REPRESENTS AND WARRANTS TO LONG & FOSTER, INTENDING THAT SUCH BE RELIED UPON REGARDING THE ABOVE PROPERTY, THAT (each Seller initial ONE of the following and state Year Constructed):

_____ ksLoS _____ Property (all portions) was constructed **after January 1, 1978.** (If initialed, complete section V only.)

_____ Property (any portion) was constructed before January 1, 1978. (If initialed, complete all sections.)   Year Constructed: **1986**

_____ Seller is unable to represent and warrant the age of the property. (If initialed, complete all sections.)

SELLER AGREES TO COMPLY WITH REQUIREMENTS OF THE FEDERAL RESIDENTIAL LEAD-BASED PAINT HAZARD REDUCTION ACT OF 1992.

**Lead Warning Statement**
*Every purchaser of any interest in residential real property on which a residential dwelling was built prior to 1978 is notified that such property may present exposure to lead from lead-based paint that may place young children at risk of developing lead poisoning. Lead poisoning in young children may produce permanent neurological damage, including learning disabilities, reduced intelligence quotient, behavioral problems, and impaired memory. Lead poisoning also poses a particular risk to pregnant women. The seller of any interest in residential real property is required to provide the buyer with any information on lead-based paint hazards from risk assessments or inspections in the seller's possession and notify the buyer of any known lead-based paint hazards. A risk assessment or inspection for possible lead-based paint hazards is recommended prior to purchase.*

II. Seller's Disclosure (each Seller complete items 'a' and 'b' below)

   a.   Presence of lead-based paint and/or lead-based paint hazards (*initial* and complete (i) or (ii) below):

      (i) _____ _____ Known lead-based paint and/or lead-based paint hazards are present in the housing (explain)

      _____

      _____

      (ii) _____ _____ Seller has no knowledge of lead-based paint and/or lead-based paint hazards in the housing.

   b.   Records and reports available to the Seller (*initial* and complete (i) or (ii) below):

      (i) _____ _____ Seller has provided the purchaser with all available records and reports pertaining to lead-based paint and/or lead-based paint hazards in the housing (list documents below).

      _____

      _____

      (ii) _____ _____ Seller has no reports or records pertaining to lead-based paint and/or lead-based paint hazards in the housing.

III. Purchaser's Acknowledgment (each Purchaser *initial* and complete items c, d, e and f below)

   c.   _MB_ _____ Purchaser has read the Lead Warning Statement above.

   d.   _MB_ _____ Purchaser has received copies of all information listed above. ☒ (If none listed, check here.)

   e.   _MB_ _____ Purchaser has received the pamphlet *Protect Your Family from Lead in Your Home.*

   f.   Purchaser has (each Purchaser *initial* (i) or (ii) below):

      (i) _____ _____ Received a 10-day opportunity (or mutually agreed upon period) to conduct a risk assessment or inspection for the presence of lead-based paint and/or lead-based paint hazards.

      (ii) _MB_ _____ Waived the opportunity to conduct a risk assessment or inspection for the presence of lead-based paint and/or lead-based paint hazards.

IV. Agent's Acknowledgment (*initial* item 'g' below)

   g.   _TS_ _____ Agent has informed the Seller of the Seller's obligations under 42 U.S.C. 4852d and is aware of his/her responsibility to ensure compliance.

V. Certification of Accuracy
The following parties have reviewed the information above and certify, to the best of their knowledge, that the information they have provided is true and accurate.

| | | | |
|---|---|---|---|
| *Kyle Skopic Commissioner of Sale* | 9/27/2018 | *Mehrunnisa Bashir* | 10/11/2018 |
| Seller | Date | Purchaser | Date |
| | | | |
| *[signature]* | 9/28/2018 | *Adrienne Szabo* | 10/10/2018 |
| Agent | Date | Agent | Date |

 

> **THIS NOTICE IS REQUIRED BY LAW AND IS NOT A CONTRACT.**
>
> **THIS DISCLOSURE DOES NOT CREATE A BROKERAGE RELATIONSHIP.**

## Disclosure of Brokerage Relationship
## District of Columbia

Prior to providing specific real estate assistance, District of Columbia law requires that a licensee disclose to any party who the licensee does NOT represent the identity of the party to the proposed transaction which the licensee does represent. Even though a licensee may not represent you, that licensee must still treat you honestly in the transaction.

We, the undersigned ☐ Buyer(s)/Tenant(s) or ☒ Seller(s)/Landlord(s) acknowledge receipt of this Disclosure, and understand we are NOT represented by the licensee identified below.

Adrienne Szabo  SP98363986  and  Long & Foster Real Estate, Inc.

(Licensee & License #)  (Brokerage Firm)

The licensee and brokerage firm named above represent the following party in the real estate transaction:

☐ Seller(s)/Landlord(s) (The licensee has entered into a written listing agreement with the seller(s) or landlord(s) or is acting as a sub-agent of the listing broker.)

☒ Buyer(s)/Tenant(s) (The licensee has entered into a written agency agreement with the buyer/tenant.)

☒ Designated Agent of the ☐ Buyer(s)/Tenant(s) or ☐ Seller(s)/Landlord(s)
(Both the buyers and sellers have previously consented to "Designated Agency", and the licensee listed above is indicating the parties represented.

Acknowledged _Commissioner of Sale_  Date 10/14/18

Acknowledged _____  Date _____

Name of Person(s): _____  _____

I certify on this date that I, the real estate agent, have delivered a copy of this disclosure to the person(s) identified above.

Signed (Licensee) _____  Date _____

Previous editions of this form should be destroyed.

Page 1 of 1

GCAAR Form 2022 DC  Disclosure of Brokerage Relationship.
(formerly form #1431)  10/2011



# Washington, DC Disclosure/Confirmation of
# Dual Representation and/or Designated Representation
### (To be attached to the Regional Sales Contract or Lease Agreement whenever
### Dual Agency or Designated Representation occurs on a DC transaction.)



With respect to the property located at ___3628 RESERVOIR RD NW___ ___WASHINGTON___ ___DC___ ___20007___
the undersigned, having previously consented to Dual Agency of the brokerage firm do hereby acknowledge disclosure that:

___Long & Foster Real Estate, Inc.___
(Name of brokerage firm acting as Dual Representative)

represents more than one party to the real estate transaction as indicated below:

☒ Seller(s) and Buyer(s)　　　　or　　　　☐ Landlord(s) and Tenant(s)

---

The Seller(s) or Landlord(s) and the Buyer(s) or Tenant(s) are proceeding with the transaction
acknowledging: (choose one below)

☒ Designated Representation:

The brokerage firm has assigned ___Theresa Nielson___　　　AB600329
(Name of Licensee and License #)

to act as the Designated Representative of the Seller(s) or Landlord(s) and,

The brokerage firm has assigned ___Adrienne Szabo___　　　SP98363986
(Name of Licensee and License #)

to act as the Designated Representative of the Buyer(s) or Tenant(s)

☐ Dual Representation:　　　　　OR

The Licensee: _____
(Name of Licensee and License #)

And the Brokerage Firm represents more than one party to the contract as indicated above.

---

_(signature)_ 10/14/18　　　_DocuSigned by: Mehrunnisa Bashir_ 10/11/2018
Seller or Landlord　　Date　　　Buyer or Tenant　　　Date

_(signature)_

Seller or Landlord　　Date　　　Buyer or Tenant　　　Date

Previous editions of this form should be destroyed.

DocuSign Envelope ID: BB0DECCF-DE89-4A43-9EC5-4E32AA6FBA12

  

# Homeowners Association (HOA) Seller Disclosure/Resale Addendum for the District of Columbia
*Required for the Listing Agreement and for the GCAAR Contract)*

Address **3628    RESERVOIR RD NW**

City **WASHINGTON** , State **DC**    Zip **20007**   Lot: **1131**

Block/Square: **1292**   Unit:    Section: **1292**   Tax ID # **1292//1131**

Parking Space(s)#    Storage Unit(s) #    Subdivision/Project:

## PART I - SELLER DISCLOSURE:

**1.    CURRENT FEES AND ASSESSMENTS:** Fees and assessments as of the date hereof amount respectively to:

**A.    HOA Fee:** Potential Buyers are hereby advised that the present HOA fee for the subject unit and parking space or storage unit, if applicable, is $ **190.00**    per **month**

**B. Special Assessments:** ☒ **No** ☐ **Yes** (If yes, complete 1-4 below)

1) Reason for Assessment:

2) Payment Schedule: $    per

3) Number of payments remaining    as of    (Date)

4) **Total Special Assessment balance remaining:** $

**C. Fee Includes:** The following are included in the HOA Fee:

☐ **None** ☒ **Trash** ☐ **Lawn Care** ☐ **Other**

**2. PARKING AND STORAGE:** Parking Space(s) and Storage Unit(s) may be designated by the Association Documents as: 1) General Common Elements for general use (possibly subject to a lease or license agreement), 2) Limited Common Elements assigned for the exclusive use of a particular HOA Unit, or 3) Conveyed by Deed. The following Parking and /or Storage Units convey with this property:

☒ Parking Space #(s)    ☐ **is** ☒ **is not** separately taxed.

If separately taxed: Lot    Square    , Lot    Square

☐ Storage Unit #(s)    ☐ **is** ☐ **is not** separately taxed.

If - separately taxes: Lot    Square    , Lot    Square

**3. MANAGEMENT AGENT OR AUTHORIZED PERSON:** The management agent or person authorized by the HOA to provide information to the public regarding the HOA and the Development is as follows:

Name:    Phone:

Address:

**4. HOA DOCUMENTS:** Seller agrees to obtain at their expense from the HOA and deliver to a Buyer, on or prior to the tenth (10th) business day following the date of execution of a Contract by a Buyer, a copy of the HOA instruments (i.e., Articles of Incorporation, the Declaration, Bylaws, covenants and restrictions, plats and plans and all exhibits, schedules, certifications and amendments to any of same) and a certificate setting forth the following:

**A.** A statement, which need not be in recordable form, setting forth the amount of any unpaid assessments levied against the Property;

**B.** If applicable, a statement, which need not be in recordable form, certifying to the Board's or Association's waiver of, or failure or refusal to exercise, any rights of first refusal or other restraints on free alienability of the property which may be contained in the HOA instruments;

**C..** A statement of any capital expenditures anticipated by the HOA within the current or succeeding 2 fiscal years;

... ...r capital expenditures, contingencies, and improvements, and any portion of such reserves earmarked for any specified project by the HOA;

**E.** A copy of the statement of financial condition for the HOA for the most recent fiscal year for which such statement is available, and the current operating budget, if any;

**F.** A statement setting forth what insurance coverage is provided for all owners by the HOA and a statement whether such coverage includes public liability, loss or damage, or fire and extended coverage insurance;

**G.** A statement that any improvements or alterations made to the Property, or the limited common elements assigned thereto by the Seller, are not in violation of the HOA instruments;

**H.** A statement of the remaining term of any leasehold estate affecting the HOA of the Property and the provisions governing any extension or renewal thereof; and

**I.** The date of issuance of the certificate.

| _Kyle E. Scopic as_ | _10/16/18_ | | |
|---|---|---|---|
| Seller _Commissioner of Sale_ | Date | Seller | Date |

## PART II - RESALE ADDENDUM

The Contract of Sale dated **10/10/18** , between Seller Ben Pourbabai by Kyle E.Scopic, Commissioner of Sale

and Buyer **Mehrunnisa Bashir**                                                                                                is hereby amended by the incorporation of Parts I and II herein, which shall supersede any provisions to the contrary in the Contract.

1. **TITLE:** Paragraph is amended to include the agreement of the Buyer to take title subject to commonly acceptable easements, covenants, conditions and restrictions of record contained in HOA instruments, and the right of other owners in the Common Elements of the HOA and the operation of the HOA.

2. **PAYMENT OF FEES AND ASSESSMENTS:** Buyer agrees to pay such Monthly Fees and/or other Special Assessments as the Board of Directors or Association of the HOA may from time to time assess against the Unit, Parking Space and Storage Unit (as applicable) for the payment of operating and maintenance or other proper charges. Regarding any existing or levied but not yet collected Special Assessments: **Seller** agrees to pay at the time of Settlement, any Special Assessments as disclosed in the Current Fees and Assessments Paragraph unless otherwise agreed herein: _____

3. **ASSUMPTION OF HOA OBLIGATIONS:** Buyer hereby agrees to assume each and every obligation of, to be bound by and to comply with, the covenants and conditions contained in the HOA instruments and with the Rules and Regulations and covenants and restrictions of the HOA, from and after the date of settlement hereunder.

4. **RIGHT TO CANCEL: Buyer shall have the right for a period of three (3) business days following Buyer's receipt of the HOA documents and statements referred to in the HOA Documents Paragraph to cancel this Contract by giving Notice thereof to Seller. In the event that such HOA documents and statements are delivered to Buyer on or prior to the ratification of this Contract by Buyer, such three (3) business day period shall commence upon ratification of this Contract. If the HOA documents and statements are not delivered to Buyer within the 10 business day time period referred to in the HOA Documents Paragraph, Buyer shall have the option to cancel this Contract by giving Notice thereof to Seller prior to receipt by Buyer of such HOA documents and statements. Pursuant to the provisions of this paragraph, in no event may the Buyer have the right to cancel this Contract after Settlement.**

| _Kyle E. Scopic as_ | _10/16/18_ | _Mehrunnisa Bashir_ | 10/16/2018 |
|---|---|---|---|
| Seller _Commissioner of Sale_ | Date | Buyer<br>325282A76A1244C... | Date |
| Seller | Date | Buyer | Date |

# EXHIBIT F

**VIRGINIA:**

## IN THE CIRCUIT COURT OF FAIRFAX COUNTY

**CHRISTINE POURBABAI,** )
)
    Plaintiff, )
v. )     CL No. 2015-16966
)
**BEN POURBABAI,** )
)
    Defendant. )

## ORDER OF CONFIRMATION OF SALE

THIS CAUSE came to be heard on the 12th day of October, 2018, upon a Third Motion to Approve or Reject Second Contract for Sale of Real Estate related to the property located at 1077 Paper Mill Court, N.W., Washington D.C. filed by the Commissioner of Sale appointed herein; and

IT APPEARING TO THE COURT that on or about October 4, 2018, Sales Contract was submitted to purchase the property located at 1077 Paper Mill Court, N.W., Washington D.C. (hereafter "subject property"). After negotiations, the offer is for sale for $847,000 (with no seller subsidy, both an appraisal and financing contingency, and an inspection contingency without right to negotiate for repair but a right to cancel contract (note home inspection already completed by purchasers at this time)). A copy of the contract was filed with the Court; and

IT FURTHER APPEARING TO THE COURT that Ben Pourbabai, by counsel, represents that he has been trying to sell the property since April 2015; that the lease on the property has ended, the tenants have vacated the property and it is now vacant; that the mortgage and condominium dues are in significant arrears, and it appears to the Court that the offer appears to be fair and reasonable; and

CC: Commissioner 10-12-18

UPON CONSIDERATION WHEREOF and the Court is of the opinion that the offer should be accepted and entry of the following Order is appropriate; and it is therefore

AJUDGED, ORDERED and DECREED as follows:

1.     The Sales Contract (titled GCAAR Sales Contract) submitted by Calvin Minasian and Hasmik Martirosyan dated October 4, 2018, and thereafter modified, for $847,000 is hereby accepted, approved and confirmed by the Court.

2.     The subject property is authorized to be sold to Calvin Minasian and Hasmik Martirosyan, or their assignee, subject to the terms and conditions set forth in the Sales Contract, a copy of which was tendered to the Court and made a part of the record in this cause.

3.     Kyle Elizabeth Skopic, as Commissioner of Sale, is hereby directed and authorized to execute all settlement documents to carry out the transfer of the subject property as set forth herein, however, such sale is subject to the following condition and provisions which are hereby made a part of said Sales Contract, and said Sales Contract is so hereby amended:

A.     The subject property shall convey in "AS IS" condition except for HOA violations, if any, which must be remediated and addressed before closing. If either party advances money to correct existing HOA deficiencies, they shall be reimbursed from the sale proceeds by further Order of the Court.

B.     Conveyance shall be by Special Warranty Deed; and

C.     Settlement on this Sales Contract shall be made and take place on or about November 16, 2018, or at a date to be set at the discretion of the Commissioner of Sale, but in no event less than twenty-one (21) days after the entry of this Order; and

D.     Possession shall be given at time of settlement; and

E.     The Seller's charges in connection with this settlement shall be limited to:     (1)   Real Estate Commission(s) (5% total fees);
(2)   Grantor Taxes and conveyance fees;

(3)  Delinquent and pro-rated Real Estate Taxes;

(4)  Mortgage(s) and other existing liens on the property;

(5)  HOA and other related charges;

(6)  Reasonable Settlement Agent's fees;

(7)  Recording fees for recording Releases of Liens; and

(8)  All other charges are to be approved by the Court.

4.      Christine Pourbabai is hereby directed to execute the Special Warranty Deed conveying the property. She shall appear at the office of the settlement agent on or before November 15, 2018, at such time convenient to her.

5.      Kyle E. Skopic, in her role as Commissioner of Sale, shall have authority to request a payoff of condominium dues and other charges on behalf of the record property owner, Christine Pourbabai.

6.      Ben Pourbabai and Christine Pourbabai shall notify the Commissioner of Sale by email before November 1, 2018, if they assert a claim to any personal property (for example, furniture) left in the subject property and the Commissioner of Sale shall make arrangements for said item(s) to be retrieved at a mutually convenient date and time. Any and all items left in the subject property after November 15, 2018, shall be declared to be abandoned. If there are abandoned items, the Commissioner of Sale can confiscate and destroy the property or take whatever action is needed to make the subject property ready to convey.

7.      At settlement, from the sale proceeds, Kyle E. Skopic shall be paid $21,037.22 for her fees ($19,940) and costs ($1,097.22).

8.      The net proceeds from the sale shall be paid over to John T. Frey, Clerk of the Circuit Court of Fairfax County, who shall hold same in an interest-bearing bank account until further Order of this Court.

9.      Calvin Minasian and Hasmik Martirosyan are hereby made a party to this cause, and shall be given the opportunity to be heard in connection with all further proceedings related

to the sale and conveyance of the property but not as to future hearings regarding the distribution

of the sale proceeds.

This matter is hereby continued.

Entered this 12th day of October , 2018.

_____
JUDGE, PENNEY S. AZCARATE

SEEN AND AGREED:

**Penney S. Azcarate**

_____
Fred M. Rejali, Esquire (VSB #38127)
Law Offices of Fred M. Rejali
1750 Tysons Boulevard, #1500
McLean, Virginia 22102
(703) 383-4848; Fax: (703) 677-3148
fredrejali@gmail.com
Counsel for Plaintiff, Christine Pourbabai

SEEN AND OBJECTED TO NOT AS TO Ben Pourbabai's request
for continuance, and request for an appraisal

_____
Jonathon A. Moseley, Esquire (VSB #41058)
3823 Wagon Wheel Lane
Woodbridge, Virginia 22192
(703) 656-1230; Fax: (703) 783-0449
Contact@Jonmoseley.com
Counsel for Defendant, Ben Pourbabai

SEEN:

_____
Kyle E. Skopic, Esq. (VSB #27836)
Law Office of Kyle E. Skopic, PLLC
10505 Judicial Drive, Suite 102
Fairfax, VA 22030
(703) 246-9530 // (703) 246-9531 (fax)
Kyle@Skopiclaw.com
Commissioner of Sale

A COPY TESTE:
JOHN T. FREY, CLERK
BY: _____
Deputy Clerk
Date: 10-12-18
Original retained in the office of
the Clerk of the Circuit Court of
Fairfax County, Virginia

4

**V I R G I N I A:**

## IN THE CIRCUIT COURT OF FAIRFAX COUNTY

**CHRISTINE POURBABAI,** )
)
     Plaintiff, )
)
v. )    CL No. 2015-16966
)
**BEN POURBABAI,** )
)
     Defendant. )

### ORDER OF CONFIRMATION OF SALE

THIS CAUSE came to be heard on the 7th day of August, 2018, upon a Motion to Approve or Reject Third Contract for Sale of Real Estate related to the property located at 3628 Reservoir Road, N.W., Washington D.C. filed by the Commissioner of Sale appointed herein; and

IT APPEARING TO THE COURT that on or about October 10, 2018, Mehrunnisa Bashir submitted a Sales Contract to purchase the property located at 3628 Reservoir Road, N.W., Washington D.C. (hereafter "subject property"). After negotiations, the offer is for payment of $1,517,500, all cash (with no financing contingency), a home inspection and radon test contingency without right to negotiate for repair but a right to cancel contract. A copy of the contract was filed with the Court; and

UPON CONSIDERATION WHEREOF, Ben Pourbabai, by counsel, represents that he has been trying to sell the property since 2016 and that the property is vacant and the mortgage is in arrears, and it appears to the Court that the offer appears to be fair and reasonable and appears to be in the best interest of the parties; and the Court is of the opinion that the offer should be accepted; it is therefore

AJUDGED, ORDERED and DECREED as follows:

1. The Sales Contract (titled GCAAR Sales Contract) submitted by Mehrunnisa Bashir dated October 10, 2018, and thereafter modified, for $1,517,500 is hereby accepted, approved and confirmed by the Court.

2. The subject property is authorized to be sold to Mehrunnisa Bashir, or her assignee, subject to the terms and conditions set forth in the Sales Contract, a copy of which was tendered to the Court and made a part of the record in this cause.

3. Kyle Elizabeth Skopic, as Commissioner of Sale, is hereby directed and authorized to execute all settlement documents to carry out the transfer of the subject property as set forth herein, however, such sale is subject to the following condition and provisions which are hereby made a part of said Sales Contract, and said Sales Contract is so hereby amended:

    A.    The subject property shall convey in "AS IS" condition except for HOA violations, if any, which must be remediated and addressed before closing. If either party advances money to correct existing HOA deficiencies, they shall be reimbursed from the sale proceeds by further Order of the Court.

    B.    Conveyance shall be by Special Warranty Deed; and

    C.    Settlement on this Sales Contract shall be made and take place on or about November 19, 2018, or at a date to be set at the discretion of the Commissioner of Sale, but in no event less than twenty-one (21) days after the entry of this Order; and

    D.    Possession shall be given at time of settlement; and

    E.    The Seller's charges in connection with this settlement shall be limited to:
        (1) Real Estate Commission(s);
        (2) Grantor Taxes and conveyance fees;
        (3) Delinquent and pro-rated Real Estate Taxes;
        (4) Mortgage(s) and other liens on the property;
        (5) HOA and other related charges;
        (6) Reasonable Settlement Agent's fees;
        (7) Recording fees for recording Releases of Liens; and
        (8) All other charges are to be approved by the Court.

4.     Ben Pourbabai is hereby directed to execute the Special Warranty Deed conveying the property.  He shall appear before this Court on November 2 , 2018, at 9:00 a.m. to execute the deed unless he has already done so, in which case the Commissioner of Sale shall so notify the Court and that matter will be removed from the November 2 , 2018, docket.

5.     All occupants shall vacate the property by midnight on November 19, 2018 and Ben Pourbabai shall remove any items (for example, furniture and rugs) that do not convey to the purchaser by that deadline.  Any and all items left in the subject property after it has been have vacated shall be declared to be abandoned.  If there are abandoned items, the Commissioner of Sale can confiscate and destroy the property or take whatever action is needed to make the subject property ready to convey.

6.     At settlement, from the sale proceeds, Kyle E. Skopic shall be paid $15,175 (which represents one percent (1%) of the sales price and the reduction in realtors commissions).

7.     The net proceeds from the sale shall be paid over to John T. Frey, Clerk of the Circuit Court of Fairfax County, who shall hold same in an interest-bearing bank account until further Order of this Court.

8.     Mehrunnisa Bashir is hereby made a party to this cause, and shall be given the opportunity to be heard in connection with all further proceedings related to the sale of the property but not future hearings regarding the distribution of the sale proceeds.

This matter is hereby continued.

Entered this 18 day of October , 2018.

_____
JUDGE, PENNEY S. AZCARATE

**Penney S. Azcarate**

3

SEEN AND AGREED:

_____
Fred M. Rejali, Esquire (VSB #38127)
Law Offices of Fred M. Rejali
1750 Tysons Boulevard, #1500
McLean, Virginia 22102
(703) 383-4848
Fax: (703) 677-3148
fredrejali@gmail.com
Counsel for Plaintiff, Christine Pourbabai

SEEN AND *OBJECTED* TO for The reasons stated

_____
Jonathon A. Moseley, Esquire (VSB #41058)
3823 Wagon Wheel Lane
Woodbridge, Virginia 22192
(703) 656-1230
Fax: (703) 783-0449
Contact@Jonmoseley.com
Counsel for Defendant, Ben Pourbabai

SEEN:

_____
Kyle E. Skopic, Esq. (VSB #27836)
Law Office of Kyle E. Skopic, PLLC
10505 Judicial Drive, Suite 102
Fairfax, VA 22030
(703) 246-9530 // (703) 246-9531 (fax)
Kyle@Skopiclaw.com
Commissioner of Sale

4