UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF VIRGINIA
Alexandria Division

In re: )
 )
BEN POURBABAI, ) Case No. 18-13560-BFK
 ) Chapter 11
Debtor. )

**FINDINGS OF FACT AND
CONCLUSIONS OF LAW**

This matter comes before the Court on the Motion of Christine Pourbabai to Appoint a Chapter 11 Trustee or to Convert this bankruptcy case, and on the U.S. Trustee's Motion to Convert or Dismiss. Docket Nos. 126, 137. The Court heard the evidence and the parties' arguments on March 8 and 14, 2019. For the reasons stated below, the Court will enter a separate Order converting this case to Chapter 7.

**Findings of Fact**

The Court, having heard the evidence, makes the following findings of fact.

1. The Debtor is an individual residing in the District of Columbia. He has been unemployed since 2010.

2. The Debtor and his wife were, as of the filing of this bankruptcy case, the owners of the following properties:

(a) 9896 Sunnybrook Dr., Great Falls, VA 22066.

(b) 1077 Papermill Ct., NW, Washington D.C. 20007.

(c) 3628 Reservoir Rd., NW, Washington D.C. 20007.

(d) 3661 Winfield Lane, NW, Washington, D.C. 20007.

1

3. The Debtor owned an additional property located at 3629 Winfield Lane, NW, Washington, D.C. 20007 (the parties refer to this property as "Winfield No. 1"), which was sold in September 2017, before the bankruptcy case was filed. Movant's Ex. N[1]. Ms. Pourbabai alleges that Mr. Pourbabai has never accounted for the net proceeds of sale in the amount of $295,903.97. *Id.*

4. The parties refer to the property at 3661 Winfield Lane as "Winfield No. 2."

A. *Mr. and Ms. Pourbabai's Divorce.*

5. The Debtor and Ms. Pourbabai were married in 2002. They have three children.

6. On July 26, 2017, the Circuit Court of Fairfax County entered a Final Decree of Divorce. Movant's Ex. A. Among other things, the Final Decree of Divorce provided:

- All the properties were to be sold and the proceeds split 50/50. *Id.*, ¶ 3(A).

- The parties were to divide their Persian rugs evenly and if there was an uneven number they were to sell the last rug and split the proceeds. *Id.*, ¶ 3(C).

- Mr. Pourbabai was ordered to pay $126.00 per month in child support. *Id.*, ¶ 4(B).

7. Mr. Pourbabai appealed the Final Order of Divorce. In August 2018, the Court of Appeals of Virginia affirmed the Order. Movant's Ex. F. Mr. Pourbabai has filed a Petition for a Writ of Appeal with the Virginia Supreme Court.

8. In the Final Order of Divorce, and again on December 15, 2017 the Circuit Court appointed Kyle Skopic as Commissioner of Sale to sell the parties' real property. Movant's Exs. A, ¶ 3(A), B.

---

[1] Ms. Pourbabai's Exhibits will be referred to as "Movant's Ex. __." The U.S. Trustee's Exhibits will be referred to as "UST Ex. __." The Debtor's Exhibits will be referred to as "DR Ex. __."

9.  Ms. Skopic testified that she encountered a great deal of difficulty and a lack of cooperation from Mr. Pourbabai in selling the properties. For example:

- Ms. Skopic alleges that the locks were changed at the Sunnybrook Dr. property.

- She alleges that Mr. Pourbabai engaged realtors to list one or more of the properties without her approval.

- She alleges that Mr. Pourbabai rented the Papermill Court property and the Winfield No. 2 property without her consent.

- She alleges that the electricity was turned off at the Sunnybrook Dr. property, resulting in the development of mold during the humid Virginia summer. Further, she alleges that Mr. Pourbabai refused to provide her with an account number for Dominion Power so that the electricity could be restored.

- She further alleges that Mr. Pourbabai blocked access to realtors and prospective purchasers at the Sunnybrook Dr. property.

- In all, she testified that she was required to file six (6) Motions for Aid and Direction with the Circuit Court.

10. Ms. Skopic obtained contracts for the sale of Reservoir Rd. and 3661 Winfield Lane. Movant's Exs. H, I. She obtained an Order approving the sale of Reservoir Rd. Movant's Ex. E. The Circuit Court approved the sale contract for Winfield No. 2, as well. Movant's Ex. J.

11. Ms. Skopic testified that, in her view, although she was under a duty to sell the properties, she had no authority to sign the Deeds for the properties located in the District of

Columbia.[2] She therefore sought the aid of the Circuit Court to compel Mr. Pourbabai to execute the Deeds for the conveyance of the D.C. properties.

12. On January 31, 2019, Mr. Pourbabai executed Deeds for Reservoir Rd. and for Winfield No. 2, in the Circuit Court, under a threat of being held in contempt of court. Movant's Exs. K, L.

13. On the very same day, at 3:30 p.m., Mr. Pourbabai wrote an e-mail to the title company repudiating the Deeds and threatening litigation. Movant's Ex. M ("if the sale goes through, litigation will follow… I urge you to consult with your legal department before proceeding with this transaction.") He later claimed that he was "ambushed and coerced" to sign the documents, and that he was "intimidated, misled and coerced" to sign the documents. *Id*. (E-mail 2/4/2019).

14. As a result, the sales did not go to closing.

*B. The Debtor's Bankruptcy Case.*

15. The Debtor filed a Voluntary Petition under Chapter 13 on October 23, 2018. Docket No. 1.

16. On November 6, 2018, Judge Mann of the Circuit Court stayed all proceedings owing to the bankruptcy filing and the automatic stay. DR Ex. 14.

---

[2] *See Hicks v. Wynn*, 119 S.E. 133, 137 (Va. 1923) (court "could compel [a party] to execute a conveyance, but could not confer any extraterritorial power on its commissioner to make such conveyance. So much of the decree, therefore, as appoints a commissioner and directs him to execute the deed is erroneous") (internal citations omitted).

      *(i)*      *The Debtor's Petition and Schedules.*

17.      In his Petition, the Debtor used the address of 9896 Sunnybrook Dr., Great Falls, Virginia 22066, as his residence. UST Ex. 2, ¶ 5. He also certified that "[o]ver the last 180 days before filing this petition, I have lived in this District longer than in any other district." *Id*., ¶ 6.

18.      In his Schedules, the Debtor did not list any property in Iran or any expectancy of an inheritance from his father's properties in Iran. Nor did he list any Persian rugs. He listed the total value of his personal property (including "carpets") at $3,000.00. UST Ex. 3, Schedule A/B ¶ 6. He listed Ms. Pourbabai with a priority domestic support claim in the amount of $882.00 ($126.00 per month for seven months). *Id*., Schedule E/F.

19.      At the continued meeting of creditors Mr. Pourbabai was asked if he read his Amended Schedules and Statements before they were filed. His answer: "I trusted Ms. Edrington." UST Ex. 1, p. 12.

20.      When pressed as to whether he went over these documents carefully, he answered "No." *Id*., p. 13. He acknowledged that he "didn't pay attention to the details." *Id*., p. 13.

      *(ii)*      *Ms. Pourbabai's Relief from Stay Motion.*

21.      On November 13, 2018, Ms. Pourbabai filed a Motion for Relief from the Automatic Stay with respect to the properties at 1077 Papermill Court, NW, Washington D.C., and 3628 Reservoir Road, NW, Washington D.C. Docket No. 19. Later that day Ms. Pourbabai filed an Amended Motion. Docket No. 22. The Court heard this Motion on an expedited basis on November 21, 2018 (which was the day before Thanksgiving; the Order that resulted from the hearing therefore became known as the Thanksgiving Order).

22. The Court granted Ms. Pourbabai's Motion and allowed Ms. Skopic to proceed to closing on the Papermill Court property as well as the other properties. Docket No. 42.

23. Ms. Pourbabai as the Seller (the property was titled in her name) and the buyers went to closing immediately after the hearing. Movant's Ex. G. The net proceeds of $269,705.24 have been escrowed with the Clerk of the Circuit Court of Fairfax County. *Id.*[3]

24. Mr. Pourbabai claims that the sale of the Papermill property occurred before the Court granted relief from the automatic stay on November 21, 2018. Docket No. 117 (Motion for Contempt), ¶ 17 ("it appears that Respondents signed the settlement documents, escrow checks, and deeds in violation of the automatic stay.")

25. Ms. Pourbabai testified in this hearing that the sale on Papermill closed after the Court ruled that it would grant relief from the automatic stay.

26. As a result of this Court's November 21st Order, Judge Azcarate of the Circuit Court entered an Order on December 14, 2018, vacating the Stay Order entered by Judge Mann on November 6, 2018. DR Ex. 18.

    *(iii)    The Debtor's Mother's Relief from Stay Motion.*

27. On December 6, 2018, Robabeh Adjudan Garakani, the Debtor's mother, filed a Motion for Relief from the Automatic Stay to pursue her claims against her son, alleged to be in the amount of $1.3 million. Docket No. 51. The Motion alleged that Ms. Garakani filed a Lis Pendens in the District of Columbia on September 18, 2018, about a month before the bankruptcy case was filed. *Id.*, ¶ 6.

---

[3] The Court has reminded the parties that the proceeds are property of the bankruptcy estate over which this Court has exclusive jurisdiction. 11 U.S.C. § 541(a)(6) (property of the estate includes proceeds and profits of property of the estate).

28. The Debtor did not oppose his mother's relief from stay motion. Christine Pourbabai filed an Opposition. Docket No. 124.

29. The Court denied Ms. Garakani's Motion on the ground that she did not have a perfected lien on any of the properties, and that to allow her to proceed would result in the kind of "race to the courthouse" that bankruptcy law eschews. Docket No. 153 (Motion Denied).

> (iv) *The Termination of Ms. Skopic as Commissioner of Sale, and The Appointment of Mr. Garver.*

30. On February 11, 2019, Circuit Court Judge Azcarate entered an Order under which Ms. Skopic was "relieved of further duties and the parties shall proceed as they deem appropriate." Docket No. 120, Ex. B.

31. This Court, therefore, vacated the Thanksgiving Relief from Stay Order, as the Relief from Stay Order was premised on Ms. Skopic continuing to market and sell the properties. The Court entered an Order vacating the Relief from Stay Order on February 22, 2019, but stayed its Order for 14 days from its entry. Docket No. 136.

32. Ms. Pourbabai filed a Motion to Reconsider in the Circuit Court. On March 4, 2019, Circuit Judge Gardiner appointed Steven Mr. Garver as a Special Commissioner of Sale. Movant's Ex. Q.

> (v) *The Debtor's Domestic Support Obligations.*

33. The Debtor has not paid any child support to Ms. Pourbabai since he filed his Petition in October 2018.

34. Mr. Pourbabai submitted to the Court a copy of a cashier's check in the amount of $1,134.00 dated January 19, 2019. DR Ex. 33.

35. However, this check was obtained by the Debtor's sister, Farah Naz Barnes, and there was no evidence that Ms. Barnes ever delivered the check to Ms. Pourbabai.

36. Ms. Pourbabai testified convincingly that she never received the check.

37. Further, the check is dated January 19, 2019, and represents 9 months of child support. There was no evidence that the Debtor paid his child support for the months of February and March 2019.

*(vi)   The Persian Rugs.*

38. Ms. Pourbabai testified that she and Mr. Pourbabai own approximately thirty Persian rugs. She testified that ten of the rugs have a value of $10,000.00 or more each. The remainder of the rugs, she testified, have a value of approximately $3,000.00 to $5,000.00 each.

39. Mr. Pourbabai, on the other hand, acknowledged that there are Persian rugs in storage, but he testified that the rugs had been ruined by mold and that they are all worthless. Before they were ruined, however, Mr. Pourbabai estimated that the rugs had a value of approximately $200,000.00.

40. Other than a reference to "carpets" in his Schedule B as part of a total of $3,000.00 in personal property, the Debtor did not list any Persian rugs in his Schedules.

*(vii)   The Land in Iran/The Debtor's Inheritance from His Father.*

41. Ms. Pourbabai also alleged that the Debtor owns real property in Iran, which was not listed in his Schedules.

42. When questioned about this, the Debtor acknowledged that his father owned three or four properties in Iran when he passed away in 2007. The Debtor claims that he is entitled to a one-fourth (¼) interest in these properties as an inheritance from his father's estate.

8

43. Section 32 of Schedule A/B requires the Debtor to list "[a]ny interest in property that is due you from someone who has died." It goes on to state: "If you are the beneficiary of a living trust, expect proceeds from a life insurance policy, or are currently entitled to receive property because someone has died [No/Yes. Give Specific Information]." The Debtor checked "No" in response to this question in both his original Schedule A/B and his Amended Schedule A/B. UST's Exs. 3, p. 8; 4, p. 8.

*(viii)   The Debtor's Income on Schedule I.*

44. The Debtor's Schedule I states that the Debtor was employed with his sister's company, AVP Lighting, for a period of one month prior to his bankruptcy filing at a salary of $6,000.00 per month. UST Ex. 3, Schedule I.

45. The Debtor testified that he had not been employed since 2010. He further testified that immediately prior to filing for bankruptcy, he asked his sister to give him a 1099 federal income tax form so that he could list AVP as his employer in order to meet the "regular income" requirement for Chapter 13.[4]

46. This was a sham. The Debtor testified that he had the "prospect" of a job when he filed his Petition. He described the money that he received from his sister as "contributions." The Debtor was not employed by AVP and had no regular income when he filed his Voluntary Petition.

---

[4] In an e-mail to his counsel, the Debtor stated that he "did not have adequate verifiable income, and was unqualified to file under Chapter 13." DR Ex. 8, E-mail 2/22/2019.

      *(ix)    The Debtor Moves to Convert His Case to Chapter 11.*

47.    Mr. Pourbabai was not eligible to file under Chapter 13 because the total amount of his secured debts exceeded the limit set forth in Section 109(e) of the Code. The Court issued an Order to Show Cause Why the Bankruptcy Case Should not be Dismissed. Docket No. 31.[5]

48.    In response, Mr. Pourbabai filed a Motion to Convert his case to Chapter 11. Docket No. 36.

49.    The Court granted Mr. Pourbabai's Motion and converted the case to Chapter 11 on December 13, 2018. Docket No. 70.

      *(x)    The Two Motions to Convert or to Appoint a Chapter 11 Trustee and the Debtor's Motion to Dismiss His Case.*

50.    Ms. Pourbabai filed her Motion to Convert or to Appoint a Chapter 11 Trustee on February 15, 2019. Docket No. 126.

51.    The U.S. Trustee filed its Motion to Convert on February 25, 2019. Docket No. 137.

52.    The Debtor filed a Motion to Dismiss his case on February 26, 2019. Docket No. 141. He withdrew this Motion on February 28, 2019. Docket No. 157.

53.    Ms. Edrington filed a Motion to Withdraw as the Debtor's counsel on February 26, 2019. Docket No. 145.

---

[5] In anticipation of the bankruptcy filing the Debtor's counsel sent him an e-mail on October 19, 2018, with a chart of the Debtor's properties and the amounts of the mortgages, taken from a credit report. Debtor's Ex. 8, E-mail 10/19/2018. This chart plainly indicated that the Debtor exceeded the secured debt limit for Chapter 13.

10

54. On March 6, 2019, two days before the hearing on the U.S. Trustee's Motion and Ms. Pourbabai's Motion, Mr. Pourbabai acting *pro se* filed a Motion to Dismiss his case and a Motion to Terminate Ms. Edrington as his counsel. Docket Nos. 173, 175.

55. On the morning of the March 8th hearing, the Court advised Mr. Pourbabai that he could proceed without counsel if he chose to do so, but that the Court would not continue the hearing. The Court also advised Mr. Pourbabai that Ms. Edrington could not be called as a witness and act as his counsel in the same proceeding. After a recess during which he conferred with his counsel, Mr. Pourbabai elected to proceed *pro se*.

## Conclusions of Law

This Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1334 and the Order of Reference of the U.S. District Court for this District entered on August 15, 1984. This is a core proceeding under 28 U.S.C. 157(b)(2)(A) (matters concerning the administration of the estate).

### I.     There is Cause to Convert this Case to Chapter 7.

Bankruptcy Code Section 1112(b) provides that a Chapter 11 case may be converted or dismissed for cause. 11 U.S.C. § 1112(b). The term cause is not defined, but Section 1112(b)(4) gives examples such as the "substantial or continuing loss to or diminution of the estate and the absence of a reasonable likelihood of rehabilitation," and the failure to pay post-petition domestic support obligations. 11 U.S.C. §§ 1112(b)(4)(A), (P). The term "includes," as used in Section 1112(b)(4), is not limiting. 11 U.S.C. § 102(3).

The Court finds that there is cause to convert this case to Chapter 7.

11

A. *The Debtor's Petition, Schedules and Statement of Affairs Contain Material Inaccuracies.*

The Debtor made a number of material misstatements and omissions in his Petition, Schedules and Statement of Financial Affairs.

*(i)   The Debtor's Place of Residence.*

According to Mr. Pourbabai, he has not lived at the Sunnybrook Drive address in Great Falls since Judge Azcarate ordered him to vacate the property in March 2018. He alleges that he has been living in D.C. since then.

The Debtor's representations as to his residence in the Petition, therefore, were demonstrably false. Docket No. 1, ¶¶ 5, 6.[6]

*(ii)   The Persian Rugs.*

Mr. Pourbabai did not list any Persian rugs in his Schedules. He listed the value of all of his personal property (including "carpets") at $3,000.00. Ms. Pourbabai testified that she and the Debtor own thirty Persian rugs. She testified that ten of the rugs have a value exceeding $10,000.00 each, and that the rest of the rugs were worth about $3,000.00 to $5,000.00 each. The Debtor, on the other hand, testified that all the rugs have been ruined by mold and are worthless, though he acknowledged that the rugs had a value of approximately $200,000.00 before they were ruined. The Court did not see any pictures of the rugs' condition and did not hear any expert testimony as to the condition of the rugs.

---

[6] Mr. Pourbabai's Motion to Dismiss alleges that the case should be dismissed because the case never should have been filed in Virginia. This is a matter of venue, not jurisdiction. The Court finds: (a) Mr. Pourbabai is estopped from taking advantage of his own misstatements as to venue at this stage of the case; and (b) Mr. Pourbabai has waived any objection to venue by not raising the issue earlier in the case.

12

Without making any findings as to the value of the rugs, the Court finds that the Debtor should have listed the rugs and stated their value in good faith. At the very least, the Debtor should have listed the rugs in Schedule A/B with an "unknown" value. To omit the rugs from his Schedules altogether was a material misstatement. Further, Question 15 of the Statement of Financial Affairs requires the Debtor to disclose any "theft, fire, other disaster, or gambling" losses suffered within one year of the bankruptcy petition. The Debtor answered "No" in response to this question. UST Ex. 3, p. 29.

The Court finds that the Debtor's failure to list the Persian rugs was a material omission from his Schedules.

       (iii)    *The Land in Iran/ The Debtor's Inheritance from His Father.*

Ms. Pourbabai alleges that Mr. Pourbabai owns land in Iran that he has not listed in his Schedules. Mr. Pourbabai testified that he did not own any land in his own name in Iran. However, he acknowledged that he has a one-fourth (1/4) interest in certain properties in Iran as a beneficiary of his father's estate.

The Debtor's responses to Question 32 in his Schedules and his Amended Schedules ("Any interest in property that is due you from someone who died"), therefore, was materially false. UST's Exs. 3, p. 8; 4, p. 8.

       (iv)    *The Debtor's Statement of Income (Schedule I).*

Finally, the Debtor listed $6,000.00 per month in income from AVP Lighting, his sister's company, on Schedule I. UST Ex. 3, p. 21. The Court finds that this was materially inaccurate. The Debtor testified that he had not been employed since 2010. The Debtor's "employment,"

13

stated in Schedule I to be one month in duration, was a fiction, which Mr. Pourbabai used to satisfy the "regular income" requirement for Chapter 13.[7]

The Court finds that this statement was materially inaccurate.

*B. The Debtor's Failure to Act as a Fiduciary for his Creditors.*

As a debtor in possession, Mr. Pourbabai occupied the position of a fiduciary for all of his creditors. When his mother filed a Motion for Relief from the Automatic Stay so that she could convert her $1.3 million in unsecured debt to secured debt, to the detriment of all the other unsecured creditors, Mr. Pourbabai failed to file any objection and did not appear at the preliminary hearing on his mother's Motion. Ms. Pourbabai filed an Objection to the Motion and after a hearing on the matter the Court denied Ms. Garakani's Motion. Mr. Pourbabai plainly did not act as a fiduciary for all of his creditors.

The Court finds that Mr. Pourbabai's acquiescence in his mother's Relief from Stay Motion constituted gross mismanagement of the estate within the meaning of Section 1112(b)(4)(B).

*C. The Debtor's Pre-Petition Interference with the Sales of the Properties.*

The Debtor unquestionably made a determined effort to interfere with Ms. Skopic's sales of the properties, pre-petition. His interference ranged from allowing the electricity to be turned off at the Sunnybrook property (and refusing to give Ms. Skopic the Dominion account number)

---

[7] On March 22, 2019, the Debtor filed a Motion to Dismiss his bankruptcy case, in which he stated: "On November 6, 2018, Ferlene Edrington demanded Debtor to declare income: 'Can you please provide the information for your sister's business? We need to include it in the schedules? Is she paying you $6,000 a month?' She did know that Debtor was unemployed. However, unknown to Debtor, she was cooking up the records for the bankruptcy Court to fraudulency [sic] suggest that Debtor was employed and eligible for Chapter 13 bankruptcy." Motion to Dismiss, Docket No. 191, pp. 14-15. Rarely does the Court see such a direct admission of fraudulent Schedules on the part of the Debtor, who at the end of the day, signed the Schedules under oath.

14

to repudiating the Deeds that he had just that morning been ordered to sign under pain of contempt.

While not a factor that is listed in Section 1112(b), the Debtor's pre-petition campaign of interference with the sales causes the Court to conclude that the Debtor cannot be expected to act as a fiduciary for the benefit of all of his creditors including his largest creditor, his ex-wife.

### D. Other Continuing Losses to the Estate.

Mr. Pourbabai acknowledges that the mortgages and the real estate taxes are not being paid on any of the investment properties. He argues that this is because the Circuit Court ordered him not to rent out the properties, so that they could be sold by the Commissioner of Sale without having to deal with the rights of any tenants. Regardless of the reason, though, the fact remains that the properties are not being rented and that every month that goes by decreases the equity available to the creditors from each of the properties.

The Court finds that there is a continuing loss to the estate under Section 1112(b)(4)(A). Further, the Court finds that Mr. Pourbabai has not submitted any evidence of his ability to reorganize under Chapter 11, and that there is an absence of a likelihood of rehabilitation.

### E. The Debtor's Failure to Pay His Post-Petition Domestic Support Obligations.

Finally, the Debtor has not made a child support payment since he filed his bankruptcy petition in October 2018. The Court finds Ms. Pourbabai's testimony on this issue, to the effect that she never received the January 19, 2019 cashier's check from the Debtor's sister, to be credible. There was no evidence that the cashier's check was ever delivered to Ms. Pourbabai. Moreover, even if Ms. Pourbabai had received the cashier's check, it was dated January 19,

2019, and there was no evidence that the Debtor has paid his domestic support obligations for the months of February and March 2019.

Pre-petition domestic support obligations are accorded the highest priority in the Bankruptcy Code. 11 U.S.C. § 507(a)(1). The Court cannot confirm a Chapter 11 Plan unless the Debtor is current on all post-petition domestic support obligations as of the confirmation hearing. 11 U.S.C. § 1129(a)(14). The failure to pay post-petition domestic support obligations is cause for conversion or dismissal under Section 1112(b)(4)(P).

The Court finds that the Debtor's failure to pay his post-petition domestic support obligation alone constitutes cause to convert or dismiss the case.

## II.     The Parties are Better Served by a Conversion than a Dismissal.

Once the Court finds that there is cause, it must determine whether a conversion to Chapter 7 or dismissal is in the best interests of the creditors and the estate. *Rollex Corp. v. Associated Materials* (*In re Superior Siding & Window, Inc*.), 14 F.3d 240 (4th Cir. 1994). The Court finds that a conversion is in the best interests of the creditors and the estate. The bankruptcy estate consists of real property that can be sold by a Chapter 7 Trustee. There is no ongoing business and there are no employees to protect. If the Court were to appoint a Chapter 11 Trustee, the bankruptcy estate would continue to incur quarterly fees with the U.S. Trustee's Office and a Disclosure Statement and Plan would have to be prepared, at some cost to the estate.

The Court further finds that a dismissal would not be in the best interests of the creditors. A dismissal would allow Ms. Garakani to reinstate her litigation against the Debtor on her $1.3 million claim and to interfere with the sales of the properties by asserting rights under her Lis

Pendens. Ms. Garakani's Lis Pendens also can be challenged as a preference under Section 547, a remedy not available to the creditors outside of a bankruptcy case. *Id*., at 243 ("The policy of the bankruptcy law to treat creditors in same classifications equally is central to the Bankruptcy Code. For instance, section 547 authorizes a bankruptcy court to set aside a preferential transfer of the debtor's interest 'that enables such creditor to receive more than such creditor would receive if the case were a case under Chapter 7'").

There is also the problem of whether the Commissioner of Sale can sign the Deeds for the D.C. properties. Ms. Skopic testified that she could not sign a Deed for property outside of Virginia. Mr. Pourbabai signed the Deeds under a threat of being held in contempt of Court, and then immediately repudiated them. Movant's Exs. K, L, M. A Chapter 7 Trustee will have the ability to sign Deeds for the properties located in the District of Columbia. Dismissing the case, on the other hand, would simply allow Mr. Pourbabai to sign, and then repudiate, the Deeds all over again.

On balance, the Court finds that a conversion to Chapter 7 is in the best interests of the creditors and other parties in interest. For the same reasons, the Debtor's Motion to Dismiss his case (Docket Nos. 173, 176) will be denied.

**Conclusion**

For the foregoing reasons, the Court will enter a separate Order under which:

1. The U.S. Trustee's Motion and Ms. Pourbabai's Motion are granted, and the case will be converted to Chapter 7.

2. The Debtor's Motion to Dismiss will be denied.

3. The Commissioner of Sale, Mr. Garver, will be required to turn over possession and control of the properties to the Chapter 7 Trustee. 11 U.S.C. § 543(b)(1).

4. The Debtor is advised that he has the right to appeal these Findings and the accompanying Order within 14 days of their entry.

5. The Clerk will mail copies of these Findings and the accompanying Order, or will provide cm-ecf notice, to the parties below.

Date: Mar 25 2019
_____

Alexandria, Virginia

/s/ Brian F. Kenney
_____
Brian F. Kenney
United States Bankruptcy Judge

Entered on Docket: Mar 25 2019

18

<u>Copies to</u>:

Ben Pourbabai
9896 Sunnybrook Dr.
Great Falls, VA 22066
*Chapter 11 Debtor*

Ben Pourbabai
3214 Volta Place, NW
Washington, D.C. 20007
*Chapter 11 Debtor*

Jeffery T. Martin, Jr., Esquire
300 N. Washington St., Suite 204
Alexandria, Virginia 22314
*Counsel for Ms. Pourbabai*

Fenlene H. Edrington, Esquire
Moreton and Edrington, PLC
297 Herndon Parkway
Suite 203
Herndon, VA 20170
*Former Counsel for Debtor*

Steven M. Garver, Esquire
11702 Bowman Green Drive
Reston, VA 20195
*Commissioner of Sale*

Jack Frankel, Esquire
Office of the U.S. Trustee
1725 Duke Street, Suite 650
Alexandria, VA 22314
*Counsel for United States Trustee*